**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STEWART P. NEWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-2129 (RCL) |
| METROPOLIS DEVELOPMENT | ) | |
| COMPANY, LLC, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES AND DOCUMENTS**
**FROM DEFENDANTS METROPOLIS DEVELOPMENT COMPANY, LLC**
**AND ROBERT SCOTT PANNICK**

Plaintiff, Stewart P. Newell ("Newell" or "Plaintiff"), by and through his undersigned attorneys, pursuant to Fed. R. Civ. P. Rule 37(a), hereby files this Motion to Compel Discovery Responses and Documents from Defendants Metropolis Development Company, LLC ("Metropolis") and Robert Scott Pannick ("Pannick") and for grounds in support thereof states as follows:

1.     On February 5, 2008, Plaintiff hand delivered his First Request for Production of Documents to both Defendants Metropolis and Pannick.[1]  On February 8, 2008 Plaintiff hand delivered his First Set of Interrogatories to Defendant Metropolis.  Pursuant to LCvR 5.2(b), true and correct copies of Plaintiff's Discovery Requests are attached hereto as **Exhibit 1**.

2.     As of the filing of this Motion to Compel, Defendants Metropolis and Pannick have failed to serve any responses to Plaintiff's Discovery Requests and no documents have been produced in response to Plaintiff's requests.  Furthermore, Defendants Metropolis and Pannick

---

[1] Although the title to Plaintiff's First Request for Production of Documents identifies only Metropolis, the "To" line of the Requests lists both Defendants Metropolis and Pannick and under the instructions in Section I.(g) the Requests state "each Defendant shall provide separate responses to Plaintiff's First Request for Production of Documents and each Defendant shall separately produce documents…."

have given no indication as to when or even whether said responses and documents will be forthcoming.

3.     On March 12, 2008, counsel for Plaintiff attempted to contact the Law Offices of Andrew J. Kline ("Kline" or "counsel for Metropolis"), to discuss the overdue discovery responses.  Counsel for Metropolis and Pannick failed to respond to counsel for Plaintiff's telephone message.

4.     On March 17, 2008, counsel for Plaintiff contacted Kline by e-mail advising that Metropolis' and Pannick's discovery responses were overdue and indicating his desire to avoid having to seek relief from the Court.  On March 17, 2008, counsel for Metropolis and Pannick responded by e-mail stating, incorrectly, that a settlement had been reached.  Counsel for Plaintiff responded within minutes by e-mail clearly and unambiguously apprising counsel for Metropolis and Pannick that a settlement had not been reached as well as reiterating that any settlement discussions did not suspend Defendants' obligations to respond to discovery and to produce documents.  A true and correct copy of said e-mail exchange is attached hereto as **Exhibit 2**.

5.     Since the March 17, 2008 e-mail exchange between counsel, Kline has failed to respond further[2] to counsel for Plaintiff and has failed to confirm that Metropolis' and Pannick's discovery would be forthcoming.

6.     As had been clearly explained to counsel for Defendants, the requested discovery is time sensitive in light of, *inter alia*, the pending sale of a retail unit in one of the Company Projects intended for repayment to Plaintiff, which unauthorized sale may require use of the

---

[2] Recently, a bankruptcy attorney with another firm called counsel for Plaintiff, but he too was informed that settlement discussions did not and would not suspend Defendants' discovery obligations in this case.

sought after information in connection with emergency relief that Plaintiff may need to seek from this Court.

7.     Pursuant to Fed. R. Civ. P. Rule 37(a)(3)(B):

A party seeking discovery may move for an Order compelling an answer, designation, production or inspection.  This motion may be made if:

\* \* \* \*

(iii) a party fails to answer an interrogatory submitted under Rule 33; or

(iv) a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."

8.     Also pursuant to Fed. R. Civ. P. Rule 37(a)(3)(B), and under the circumstances set forth herein whereby Metropolis and Pannick have failed to respond appropriately to Plaintiff's Discovery Requests, Plaintiff should be entitled to an Order compelling Metropolis and Pannick to serve responses to Plaintiff's Discovery Requests and to produce responsive documents within seven (7) days.

9.     Furthermore, by virtue of Defendants' failure to serve timely responses, this Court should deem any objections relating to the requested information as having been waived.  See Fed. R. Civ. P. Rule 33(b)(4) ("[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

**WHEREFORE**, Plaintiff Stewart P. Newell respectfully requests that this Court enter an Order (i) compelling Defendants Metropolis Development Company, LLC and Robert Scott Pannick to respond to Plaintiff's overdue Discovery Requests and to produce documents responsive to Plaintiff's Discovery Request within seven (7) days of the entry of the Order, and (ii) deeming any objections by Defendants to the discovery requests as waived.

Respectfully submitted,


 /s/ James A. Sullivan, Jr._____
James A. Sullivan, Jr.
(D.C. Bar No. 475145)
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850
Telephone (301) 762-1600
Facsimile (301) 762-0363
E-mail:  jsullivan@milesstockbridge.com


/s/ Richard A. DeTar_____
Richard A. DeTar
(*Pro Hac Vice* Admission)
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
Telephone (410) 820-0224
Facsimile (410) 822-5450
E-mail:  rdetar@milesstockbridge.com


Attorneys for Plaintiff Stewart P. Newell

## RULE 37(a)(1) CERTIFICATE

Undersigned counsel for Plaintiff, Stewart P. Newell, hereby certifies that he, in good faith, conferred, or attempted to confer, with counsel for Defendants, Metropolis Development Company, LLC and Robert Scott Pannick regarding their failure to respond to Plaintiff's Discovery Requests and their failure to produce documents in an effort to obtain such responses and documents without seeking relief from this Court.

/s/ Richard A. DeTar_____
Richard A. DeTar

## STATEMENT OF POINTS AND AUTHORITIES

1.    Fed. R. Civ. P. Rule 33
2.    Fed. R. Civ. P. Rule 34
3.    Fed. R. Civ. P. Rule 37
4.    LCvR 5.2

/s/ Richard A. DeTar_____
Richard A. DeTar

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEWART P. NEWELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 07-2129 (RCL) |
| ) | |
| METROPOLIS DEVELOPMENT ) | |
| COMPANY, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**
**TO DEFENDANT METROPOLIS DEVELOPMENT, LLC**

TO:     DEFENDANTS METROPOLIS DEVELOPMENT COMPANY, LLC AND
        ROBERT SCOTT PANNICK
        c/o    Scott H. Rome, Esquire
             Law Offices of Andrew J. Kline
             1225 19th Street, N.W., Suite 320
             Washington, D.C. 20036

FROM:  PLAINTIFF STEWART P. NEWELL
        c/o    James A. Sullivan, Jr., Esquire
             Miles & Stockbridge P.C.
             11 N. Washington Street, Suite 700
             Rockville, Maryland 20850

             Richard A. DeTar, Esquire
             Miles & Stockbridge P.C.
             101 Bay Street
             Easton, MD 21601

I.    <u>INSTRUCTIONS</u>

Pursuant to Fed. R. Civ. P. Rule 34, you are requested to serve within thirty (30) days a

written response to each of the following requests for production of documents, and to produce all

documents and items within your possession, custody or control for inspection and copying in the

offices of Miles & Stockbridge, P.C., 11 North Washington Street, Suite 700, Rockville, Maryland

**EXHIBIT**

1

20850. In responding to this Request for Production of Documents, please comply with the following instructions:

(a)    If any Document responsive to this request was, but is no longer, in your possession, custody or control, please furnish a description of each such Document and indicate the manner and circumstances under which it left your possession, custody or control and state its present location and custodian, if known.

(b)    These requests are continuing in nature and include Documents which you locate or which come into your possession after the date of production.

(c)    If the requested documents are maintained in a file, please produce the file folder or container with the Documents.

(d)    Each definition and instruction set forth herein shall be fully applicable to each Request, notwithstanding that a definition or instruction may in whole or in part be reiterated in a particular Request or a particular Request may incorporate supplemental instructions or definitions.

(e)    Unless otherwise specified, these Requests seek documents from January 1, 2003 through the date that trial commences.

(f)    These Requests are not intended to seek production of privileged communications but if any documents within the scope of these Requests are being withheld based on privilege, all such documents should be identified by author, addressee, if applicable, date and a sufficient description of subject matter to explain the basis of the privilege claimed.

(g)    Each Defendant shall provide separate responses to Plaintiff's First Request for Production of Documents and each Defendant shall separately produce documents within his or its possession, custody and control that are responsive to Plaintiff's First Request for Production of Documents.

## II.    DEFINITIONS

In responding to this Request for Production of Documents, please apply the following definitions to each Request:

(a)    The pronoun "you" refers to the party to whom this request is addressed and that party's agents, employees, representatives, and unless privileged, attorneys.

(b)    The word "Documents" (referred to in this Request for Production of Documents in all cases as "Documents") or words of like or similar import refers to any and all material produced or reproduced by any and every means by which information is recorded and/or transmitted, including, but not limited to, any recorded, transcribed, punched, computerized, filmed and/or graphic matter, however produced and/or reproduced.

2

(c)     The word "person" means any natural person and/or any corporation, partnership, association, joint venture, limited partnership, committee, any government and/or governmental body, commission, board and/or agencies, and/or other business association and/or entity, including both the singular and plural.

(d)     The term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons.

(e)     The word "Plaintiff" means the named Plaintiff and the agents, employees, representatives and attorneys of Plaintiff.

(f)     Defendant Metropolis Development Company, LLC shall be referred to as the "Company" or "Metropolis."

(g)     Defendant Robert Scott Pannick shall be referred to as "Pannick."

(h)     Plaintiff Stewart P. Newell shall be referred to as "Newell" or "Plaintiff."

(i)     The term "Redemption Agreement" shall refer to the agreement dated September 29, 2003, pursuant to which Pannick and the Company agreed to purchase all of Newell's right, title, and interest in and to his Membership Interest and Percentage Interest in the Company.

(j)     The term "Newell's Interest" shall refer to Newell's right, title and interest in and to his Membership Interest and Percentage Interest in the Company.

(k)     The term "First Amended Redemption Agreement" shall refer to the amendment to the Redemption Agreement dated February 7, 2004.

(l)     The term "Redemption Agreements" shall refer to the Redemption Agreement and First Amended Redemption Agreement, collectively.

(m)     The term "Company Projects" shall refer to the development projects, collectively, that were in progress when the Redemption Agreement was executed, as identified in Exhibit A to the Redemption Agreement.

(o)     The term "Remaining Company Projects" refer to Unit C1 at 1400 Church Street and Unit C1 at 1401 Church Street, collectively.

(p)     The term "Lofts 14" shall refer to the Company Project at 1401 Church Street wherein retail Unit C1 is or was being used by the Company as the sales center for projects, other than the Company Projects, including, but not limited to, Metropole.

(q)    The term "**Project C**" shall refer to the Company Project at the Cooper Lewis Condominiums located at 14th & P Streets.

(r)    The term "**Langston Project**" shall refer to the Company Project at the Langston Hughes Condominium.

(s)    The term "**Lofts 14 II**" shall refer to the Company Project involving, *inter alia*, retail Units C1 and C2 occupied and/or previously occupied by The Garden District and Federal Express, respectively, at 1400 Church Street, N.W, Washington, D.C.

(t)    Uptown Partners, LLC, a development entity for Langston Lofts shall be referred to as "**Uptown**."

(u)    Mid City Development Holding Company, LLC, a development entity for Lofts 14, Lofts 14 II and Cooper Lewis shall be referred to as "**Mid City.**"

(v)    The term "**Lofts 14 – Unit C1**" shall refer to Unit C1 retail unit within Lofts 14 that is being used by Metropolis as a sales center for other projects.

(w)    The term "**Lofts 14 II – Unit C1**" shall refer to the retail unit occupied or previously occupied by The Garden District.

(x)    The term "**Loft 14 II – Unit C2**" shall refer to the retail unit occupied or previously occupied by Federal Express.

## DOCUMENTS TO BE PRODUCED

1.    All documents relating to negotiations between or among Metropolis and/or Pannick and Newell and/or between their attorneys and Newell's attorneys in any way relating to the Redemption Agreements.

2.    All documents relating in any way to payments of money and/or other consideration received by Metropolis for the sale or transfer of a partial or complete interest in any retail units within any of the Company Projects after September 29, 2003.

3.    All documents explaining or in any way relating to any money or other consideration received by any persons or entities from Metropolis for the sale or transfer of a

4

partial or a complete interest in any retail units within any of the Company Projects after September 29, 2003.

4.     All documents relating to, explaining, or in any way accounting for any use or occupation by Metropolis of a retail unit or retail units within any of the Company Projects for little or no consideration after September 29, 2003.

5.     All documents relating to, explaining, or accounting for any and all instances when a partial or complete interest in any retail unit or units within any of the Company Projects have been transferred to any person or entity on or after September 29, 2003 for little or no consideration being paid or distributed to Metropolis.  For purposes of this request "little consideration" is intended to mean a value substantially below fair market value.

6.     All documents relating to any transfers by Metropolis of a partial or complete interest in any retail unit or units within any of the Company Projects to a third person or entity for little or no consideration.  For purposes of this request "little consideration" is intended to mean a value substantially below fair market value.

7.     All documents identifying, explaining or in any way relating to distributions of cash or any other consideration received by Pannick, either directly or through an entity owned in whole or in part by him (including, but not limited to a trust but excluding Metropolis), in any way attributable to the sale or transfer of any retail units within any of the Company Projects after September 29, 2003.

8.     All documents relating to any transactions through which Pannick and/or an entity owned in whole or in part by Pannick (including, but not limited to, a trust but excluding Metropolis) has purchased or acquired a partial or complete interest in any retail units within any of the Company Projects from Metropolis after September 29, 2003.

5

9.     All documents relating to any sale or transfer by Pannick and/or an entity owned in whole or in part by Pannick (including, but not limited to, a trust but excluding Metropolis) of any retail units formerly within any of the Company Projects after September 29, 2003.

10.     All documents explaining, describing or in any way accounting for any payments made by Metropolis to any person or entity from the proceeds of a sale or transfer of a partial or complete interest in any retail units within any of the Company Projects after September 29, 2003.

11.     All documents relating in any way to any service fees paid to Metropolis in connection with its management agreements for any Company Project after September 29, 2003.

12.     All documents relating in any way to any sale, lease or financing of any retail units within any Company Project on or after September 29, 2003.

13.     All documents relating to payments that Metropolis has made to any person or entity from the proceeds of a sale, lease or financing of any retail units within any of the Company Projects after September 29, 2003.

14.     A true and correct copy of the "RFP I Revocable Trust" and all documents relating to the formation of that trust and any ownership interest it possesses or possessed in any retail units within the Company Projects.

15.     All tax returns and related schedules filed by Metropolis for the tax years from January 1, 2003 forward.

16.     All balance statements, asset/liability statements, financial statements and financial forecasts prepared or provided by Metropolis to its lenders and/or prospective lenders from January 1, 2003 forward.

17.    All documents relating to, evidencing or reporting payments or other forms of consideration that Pannick has received from Metropolis from September 29, 2003 to the present.

18.    All documents relating to any accounting or other financial record itemizing or memorializing payments made to Newell from the sale, lease or financing of each unit within a Company Project pursuant to the Redemption Agreement on or after September 29, 2003.

19.    All documents relating to any accounting or other financial records itemizing or memorializing payments made to any person or entity other than Newell from the sale, lease or financing of each retail unit within the Company Projects on or after September 29, 2003.

20.    All documents relating in any way to any liens or encumbrances against any of the retail units within any of the Company Projects that are owned in whole or in part by Metropolis, Pannick or an entity owned in whole or in part by either Metropolis or Pannick.

21.    All documents that refer to, relate to, evidence or record any communications by and between you and any lender, potential lender, potential equity partner or buyer, including, but not limited to BB&T, concerning any sale, proposed sale, lease, financing or proposed financing or forecast attributable to any the retail units within any of the Company Projects.

22.    All reports and tax information required to be provided by the Manager to Members under the Metropolis Development Company, LLC Limited Liability Company Agreement after September 29, 2003.

23.    All reports given to lenders or partners in Company Projects after September 29, 2003.

24.    All documents relating to performance of your obligation to "keep monies received from Company Projects separate and apart from monies received from any other

projects" pursuant to Section III.a.(i) of the Redemption Agreement. Please note that Sub-section (i) referred to in this Request is the second Sub-section (i) contained in Section III.a. of the Redemption Agreement.

25.    All documents constituting and/or relating to the maintenance of "separate books and records for each Company Project and any other projects the Company may have" as provided for in Section III.a.(ii) of the Redemption Agreement.

26.    All written or recorded statements of any party, or of any agent, representative, or employee of any party, concerning in any way the facts and matters set forth in the Complaint and Answer.

27.    All documents which refer to, relate to, any evidence or record of any statements of persons having knowledge of the facts and matters set forth in the Complaint and Answer.

28.    All documents which refer to, relate to, evidence or record any admissions or statements made by any party to this case relative to the facts and matters set forth in the Complaint and Answer.

29.    All documents relating in any way to your defense(s) to Count I of the Complaint.

30.    All documents relating in any way to your defense(s) to Count II of the Complaint.

31.    All documents relating in any way to your defense(s) to Count III of the Complaint.

32.    All documents relating in any way to your contention that "Plaintiff's claims are barred by his own breaches, negligence, and wrongful and/or fraudulent conduct."

33.    All documents relating in any way to your contention that "Plaintiff's claims are barred by the doctrines of estoppel, waiver, and/or ratification."

34.    All documents relating in any way to your contention that "Plaintiff's claims are barred by the doctrine of laches."

35.    All documents relating in any way to your contention that "Plaintiff's claims are barred by the Statute of Frauds."

36.    All documents relating in any way to your contention that "Plaintiff's claims are barred by the doctrines of merger and parol evidence."

37.    All documents relating in any way to your contention that "Plaintiff's claims are barred by the rule against perpetuities."

38.    All documents not previously requested that have anything whatsoever to do with the facts and matters alleged in the Complaint and Answer.

Respectfully submitted,

_James A. Sullivan, Jr._  (R. c. D. )
James A. Sullivan, Jr.
(D.C. Bar No. 475145)
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850
Telephone (301) 762-1600
Facsimile (301) 762-0363
E-mail: jsullivan@milesstockbridge.com

_RcDS_
Richard A. DeTar
(*Pro Hac Vice* Admission)
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
Telephone (410) 820-0224
Facsimile (410) 822-5450
E-mail: rdetar@milesstockbridge.com

Attorneys for Plaintiff Stewart P. Newell

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was mailed this 4th day of February,

2008, by first-class mail, postage prepaid, to:

> Andrew Kline, Esquire
> Scott H. Rome, Esquire
> Law Offices of Andrew J. Kline
> 1225 19[th] Street, N.W., Suite 320
> Washington, D.C. 20036

Richard A. DeTar

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STEWART P. NEWELL,          )
                            )
            Plaintiff,      )
    v.                      )
                            )        Civil Action No. 07-2129 (RCL)
                            )
METROPOLIS DEVELOPMENT      )
COMPANY, LLC, *et al.*,     )
                            )
            Defendants.     )
_____)

**PLAINTIFF, STEWART P. NEWELL'S FIRST SET OF INTERROGATORIES**
**TO DEFENDANT, METROPOLIS DEVELOPMENT COMPANY**

TO:     DEFENDANT METROPOLIS DEVELOPMENT COMPANY, LLC
        c/o   Scott H. Rome, Esquire
              Law Offices of Andrew J. Kline
              1225 19th Street, N.W., Suite 320
              Washington, D.C. 20036

FROM:   PLAINTIFF, STEWART P. NEWELL
        c/o   James A. Sullivan, Jr., Esquire
              Miles & Stockbridge P.C.
              11 N. Washington Street, Suite 700
              Rockville, Maryland 20850

              Richard A. DeTar, Esquire
              Miles & Stockbridge P.C.
              101 Bay Street
              Easton, MD 21601

    These Interrogatories are propounded pursuant to the provisions of Fed. R. Civ. P. Rule

33, and you are required to file written answers to these Interrogatories, under oath, within thirty

(30) days next following the date upon which they are served upon you. In answering these

interrogatories, you are required to comply with the following instructions and definitions:

I.     INSTRUCTIONS

a.     In accordance with Rule 33, your response shall set forth each Interrogatory and its Answer, and your response shall answer separately and fully in writing each Interrogatory, or shall state fully the grounds for refusal to answer.

b.     Also in accordance with Rule 33, these Interrogatories request, and your Answers shall include, all information available to you or through your agents, representatives and, unless privileged, your attorneys.

c.     These Interrogatories are continuing in character so as to require you to promptly amend or supplement your answers if you obtain further responsive information before trial.

d.     If, pursuant to Rule 33(c), you elect to specify and produce business records in answer to any Interrogatory, then in accordance with that Rule your "specification shall be in sufficient detail to permit the interrogating party to locate and identify the records from which the answer may be ascertained."

e.     The terms "identify," "identifying," "identity," or "identities" when used in reference to a natural person, require you to state that person's full name, and, if known, last known address, home and business telephone numbers and present business affiliation. When used in reference to a person other than a natural person, the terms "identify," "identifying," "identity," or "identities" require you to describe the nature of such person (that is, whether it is a corporation, partnership, etc. under the definition of "person" above), and to state that person's last known address, telephone number, the identity of an officer or managerial employee and principal place of business. Once any person has been identified properly, it shall be sufficient thereafter when identifying that same person to state the name only.

2

f.    If, in answering these Interrogatories, you content any ambiguities exist regarding either a question, instruction or definition, respond to the Interrogatory in full, setting forth the matter deemed ambiguous and the construction used in answering.

g.    If a complete Answer to a particular Interrogatory is not possible, the Interrogatory should be answered to the extent possible and a statement should be made indicating why only a partial Answer is provided.

h.    If, in connection with the Answer to any Interrogatory, reference is made to meetings, acts, discussions or conversations, set forth, in words or substance, identify each person involved and explain, in summary, what each person participating or present is alleged to have said or done.

i.    If any of the Interrogatories cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information you have concerning the unanswered portions. If your Answer is qualified in any particular way, please set forth the details of such qualification.

j.    If you contend that an Answer to an Interrogatory is privileged, in whole or in part, or otherwise object to any part of any Interrogatory, then the Interrogatory should be answered to the extent it is not objectionable, and the following information should also be provided:

(i)    the basis for each objection and grounds for your objection or refusal to answer, including the nature of any privilege asserted,

(ii)    the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

1.      For oral communications:

(a)      the name of the person making the communication and the names of persons present while the communication was made; where not apparent the relationship of the persons present to the person making the communication;

(b)      the date and place of the communication; and

(c)      the general subject matter of the communication.

2.      For documents:

(a)      the type of document;

(b)      general subject matter of the document;

(c)      the date of the document; and

(d)      such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author, addressee, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, and any other recipient to each other; and

(iii)  the identity of each person having knowledge of the factual basis, if any, on which the privilege, objection or other ground is based.

## II.      DEFINITIONS

In answering these Interrogatories, please apply the following definitions to each Interrogatory:

(a)      The pronoun "you" refers to the party to whom this request is addressed and that party's agents, employees, representatives, and unless privileged, attorneys.

(b)      The word "Documents" (referred to in this Request for Production of Documents in all cases as "Documents") or words of like or similar import refers to any and all material produced or reproduced by any and every means by which information is recorded and/or transmitted, including, but not limited to, any recorded, transcribed, punched, computerized, filmed and/or graphic matter, however produced and/or reproduced.

4

(c)    The word "person" means any natural person and/or any corporation, partnership, association, joint venture, limited partnership, committee, any government and/or governmental body, commission, board and/or agencies, and/or other business association and/or entity, including both the singular and plural.

(d)    The term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons.

(e)    The word "Plaintiff" means the named Plaintiff and the agents, employees, representatives and attorneys of Plaintiff.

(f)    Defendant Metropolis Development Company, LLC shall be referred to as the "**Company**" or "**Metropolis.**"

(g)    Defendant Robert Scott Pannick shall be referred to as "**Pannick.**"

(h)    Plaintiff Stewart P. Newell shall be referred to as "Newell" or "**Plaintiff.**"

(i)    The term "**Redemption Agreement**" shall refer to the agreement dated September 29, 2003, pursuant to which Pannick and the Company agreed to purchase all of Newell's right, title, and interest in and to his Membership Interest and Percentage Interest in the Company.

(j)    The term "**Newell's Interest**" shall refer to Newell's right, title and interest in and to his Membership Interest and Percentage Interest in the Company.

(k)    The term "**First Amended Redemption Agreement**" shall refer to the amendment to the Redemption Agreement dated February 7, 2004.

(l)    The term "**Redemption Agreements**" shall refer to the Redemption Agreement and First Amended Redemption Agreement, collectively.

(m)    The term "**Company Projects**" shall refer to the development projects, collectively, that were in progress when the Redemption Agreement was executed, as identified in Exhibit A to the Redemption Agreement.

(o)    The term "**Remaining Company Projects**" refer to Unit C1 at 1400 Church Street and Unit C1 at 1401 Church Street, collectively.

(p)    The term "**Lofts 14**" shall refer to the Company Project at 1401 Church Street wherein retail Unit C1 is or was being used by the Company as the sales center for projects, other than the Company Projects, including, but not limited to, Metropole.

(q)    The term "**Project C**" shall refer to the Company Project at the Cooper Lewis Condominiums located at 14th & P Streets.

(r)    The term "**Langston Project**" shall refer to the Company Project at the Langston Hughes Condominium located at 1390 V Street.

(s)    The term "**Lofts 14 II**" shall refer to the Company Project involving, *inter alia*, retail Units C1 and C2 occupied or previously occupied by The Garden District and Federal Express, respectively

(t)    Uptown Partners, LLC, the development entity for Langston Lofts shall be referred to as "**Uptown Partners.**"

(u)    Mid City Development Holding Company, LLC, the development entity for Lofts 14, Lofts 14 II and Cooper Lewis shall be referred to as "**Mid City.**"

(v)    The term "**Lofts 14 – Unit C1**" shall refer to the retail unit occupied or previously occupied by Metropolis.

(w)    The term "**Lofts 14 II – Unit C1**" shall refer to the retail unit occupied or previously occupied by the Garden District.

(x)    The term "**Loft 14I II- Unit C2**" shall refer to the retail unit occupied or previously occupied by Federal Express.

## INTERROGATORIES

**INTERROGATORY NO. 1:**    Please provide an accounting with respect to the retail unit known as "Lofts 14 II – Unit C2" within the Company Projects on or after September 29, 2003 , including, but not limited to, the following information:

(a)    The price or other consideration that Metropolis paid to acquire this retail unit, the name of the Seller and the date of the transfer of this unit to Metropolis;

(b)    The price that Metropolis sold this unit for, the name of the purchaser and the date of the transfer of this unit from Metropolis;

6

(c)    The amount that Metropolis paid to Newell from the net proceeds of Metropolis' sale of this unit; and

(d)    A complete accounting of how the proceeds of Metropolis' sale or conveyance of this unit were distributed including, but not limited to: (i) the identity of each person or entity to whom Metropolis made  or directed a payment from the proceeds, (ii) the amount of each such payment, and (iii) an explanation of the specific nature of Metropolis' financial obligation to each such person or entity giving rise to a payment made to this person or entity from the sale or conveyance of this particular retail unit within the Company Projects.   To the extent that payments or distributions were made to any person or entity on behalf of, or for the benefit of, Metropolis or Pannick, your answer to (d) (iii) should include this information.

**INTERROGATORY NO. 2:**    Please provide an accounting with respect to the retail units known as Units C1 and C2 within the Company Project known as Project C (Cooper Lewis Condominium) on or after September 29, 2003, including, but not limited to, the following information : (a)    The price or other consideration that Metropolis paid to acquire this retail unit, the name of the Seller and the date of the transfer of this unit to Metropolis;

(b)    The price that Metropolis sold this unit for, the name of the purchaser and the date of the transfer of this unit from Metropolis;

(c)    The amount that Metropolis paid to Newell from the net proceeds of Metropolis' sale of this unit; and

(d)    A complete accounting of how the proceeds of Metropolis' sale or conveyance of this unit were distributed including, but not limited to: (i) the identity of each person or entity to whom Metropolis made  or directed a payment from the proceeds, (ii) the amount of each such

payment, and (iii) an explanation of the specific nature of Metropolis' financial obligation to each such person or entity giving rise to a payment made to this person or entity from the sale or conveyance of this particular retail unit within the Company Projects.   To the extent that payments or distributions were made to any person or entity on behalf of, or for the benefit of, Metropolis or Pannick, your answer to (d) (iii) should include this information.

**INTERROGATORY NO. 3:**    Please provide an accounting with respect Uptown Partner's use of any proceeds from the sale or conveyance of any units within the Langston Project on or after September 29, 2003 to make payments or distributions to, or for the benefit of, Metropolis and/or Pannick, including, but not limited to, the following information:

(a) The identity of each person or entity to whom Uptown Partners made or directed a payment from the proceeds  from the sale or conveyance of any units within the Langston Project on or after September 29, 2003  , including, but not limited to, the brokerage firm known as Julian J. Studley, Inc., or any affiliates thereof, and

(b) The date and amount of each such payment.

**INTERROGATORY NO. 4:**    Please provide a complete explanation for all income and/or other consideration that Metropolis has, or could have, derived, or will derive, from Lofts 14 – Unit C1 on an annual basis from September 29, 2003 through the date of trial, including, but not limited to, the following information;

(a)    The price or other consideration that Metropolis paid to acquire this retail unit, the name of the seller or transferor and the date of the transfer of this unit to Metropolis;

8

(b)    The approximate fair market sales value of this retail unit at the time it was acquired by Metropolis and its approximate fair market sales value as of the date of your answer to this Interrogatory (you may provide a reasonable range for your estimates);

(c)    The date when this retail unit was first ready for occupancy;

(d)    Explain your efforts to sell or lease this unit since you acquired it including whether it has ever been listed for sale and the list price;

(e)    If you have never listed this unit for sale or otherwise attempted to sell it explain why not;

(f)    What is your estimate of the fair market rental value for this Unit on an annual basis since it was first ready for occupancy through the date of trial (you may provide a reasonable range for your estimate);

(g)    What, if any, rental payments or other economic benefit(s) have you received attributable to this retail unit for each year requested;

(h)    Who has been occupying this retail unit for each of the years requested;

(i)    In the event that Metropolis has been occupying this retail unit, explain the purpose or purposes for which Metropolis has been occupying this retail unit for each year requested including, but not limited to, whether Metropolis has been using this retail unit as a sales center for projects other than the Company Projects and when, if ever, Metropolis intends to vacate this retail unit and offer it for sale; and

(j)    In the event that Metropolis sells this unit, explain whether you contend that Newell is entitled to any of the proceeds of the sale pursuant to the Redemption Agreement and if so what, if any, proceeds you claim should be paid to any other person or entity ahead of Metropolis' obligation to Newell.

9

**INTERROGATORY NO. 5:**        Please provide an accounting with regard to Lofts 14 II– Unit C1 including, but not limited to, the following information on an annual basis commencing on January 1, 2004 through the date of trial:

      (a)        The price or other consideration that Metropolis paid to acquire this retail unit, the name of the seller or transferor and the date of the transfer of this unit to Metropolis;

      (b)        The approximate fair market sales value of this retail unit at the time it was acquired by Metropolis and its approximate fair market sales value as of the date of your answer to this Interrogatory (you may provide a reasonable range for your estimate);

      (c)        The annual rental income or other economic benefit(s) received by Metropolis and/or Pannick for this retail space for each of the requested years;

      (d)        Identify the person or entity occupying this retail space for each of the requested years; and

      (e)        A complete accounting of how the rental proceeds collected for this retail unit have been distributed by you including, but not limited to, the name of each person or entity to whom Metropolis has made a payment from the rental proceeds, the amount of each such payment for each calendar year and an explanation of the specific nature of Metropolis' financial obligation to each such person or entity giving rise to a payment made to this person or entity from the rental income generated from this particular unit within the Company Projects.

      (f)        In the event that Metropolis sells this unit, explain whether you contend that Newell is entitled to any of the proceeds of the sale pursuant to the Redemption Agreement and if so what, if any, proceeds you claim should be paid to any other person or entity ahead of Metropolis' obligation to Newell.

**INTERROGATORY NO. 6:**      Commencing on or after September 29, 2003, itemize and explain all payments that you contend have been made to Newell from Metropolis as a result of its sale or leasing of any of the units within the Company Projects that satisfy or reduce Metropolis' obligation pursuant to the Redemption Agreements  including within your answer the following:

(a)      The amount paid to Newell from Metropolis' sale and/or leasing of each particular unit within the Company Projects;

(b)      The total sales price and/or rental income received by Metropolis for each particular unit sold or leased giving rise to a payment to Newell under the Redemption Agreements; and

(c)      An accounting identifying the persons and/or entities to whom Metropolis has paid the remaining funds from Metropolis' sale of each unit it acquired within the Company Projects, the amount paid to each such person or entity and an explanation as to why Newell was not paid those proceeds.

**INTERROGATORY NO. 7:**      With regard to units acquired by Metropolis within the Company Projects, provide an accounting of all financing that you have obtained (either new financing and/or drawing on an existing line of credit) that involves pledging any of the units within the Company Projects as collateral from September 29, 2003 to the present including, but not limited to, the following information within your answer;

(a)      Identify each loan by stating the financial institution that has provided you with borrowed funds since September 29, 2003, the dates and amounts of all such loans by

11

institution and account number, the current balances on each such loan and identify each unit within a Company Project that is owned by Metropolis that is encumbered by each loan account number; and

      (b)    Provide a complete accounting as to your use of any loan proceeds including, but not limited to, identifying each person or entity to whom loan proceeds were distributed, the amount of loan proceeds distributed to each person or entity, the date of each such payment and an explanation of the specific nature of Metropolis' financial obligation and/or purpose for distributing loan proceeds to each person or entity identified in response to this Interrogatory.

      **INTERROGATORY NO. 8:**    Explain whether the provision within Section III.a.(i) of the Redemption Agreement has been satisfied, in whole or in part, concerning the extent to which "the first Five Hundred Thousand Dollars ($500,000) available from Company Projects [has been] distributed to Pannick...." Your answer should explain how much money you have distributed to Pannick pursuant to this term of the Redemption Agreement and the dates and amounts of each such payment to Pannick.

Respectfully submitted,

*J. C. Sullivan Jr RcD*

James A. Sullivan, Jr.
(D.C. Bar No. 475145)
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850
Telephone (301) 762-1600
Facsimile (301) 762-0363
E-mail: jsullivan@milesstockbridge.com


*RcDeTar*

Richard A. DeTar
(*Pro Hac Vice* Admission)
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
Telephone (410) 820-0224
Facsimile (410) 822-5450
E-mail: rdetar@milesstockbridge.com

Attorneys for Plaintiff Stewart P. Newell

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was hand delivered this 8th day of February, 2008, via Federal Express and Electronic Mail to:

Andrew Kline, Esquire
Scott H. Rome, Esquire
Law Offices of Andrew J. Kline
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036

*RcDeTar*

Richard A. DeTar

13

## Sullivan, James

| | |
|---|---|
| **From:** | DeTar, Richard |
| **Sent:** | Monday, March 17, 2008 3:02 PM |
| **To:** | Scott H. Rome; Andrew J. Kline |
| **Cc:** | Sullivan, James; aubrey@gladstoneconsulting.com |
| **Subject:** | RE: Newell v. Metropolis et al |

The litigation is separate from the settlement discussions. No discovery obligation is waived unless and until a settlement is consummated and the case is dismissed --which has not occurred. In fact, I am advised that your firm was to make arrangements to discuss the settlement terms with Mr. Gladstone and I. In particular, your firm was supposed to provide certian representations that are highly material to the settlement discussions. One of the reasons that we are not waiving discovery obligations during settlement discussions is to avoid this very circumstance where a settlement promise is made but not delivered.

Regards, Rad DeTar

MILES&STOCKBRIDGE P.C.
Richard A. DeTar

Direct Dial: 410.820.0224
Fax: 410.822.5450
rdetar@milesstockbridge.com
101 Bay Street, Easton, Maryland 21601-2718
www.milesstockbridge.com

*bio    vcard    location*

**From:** Scott H. Rome [mailto:srome@klinelawdc.com]
**Sent:** Monday, March 17, 2008 2:52 PM
**To:** DeTar, Richard; Andrew J. Kline
**Cc:** Sullivan, James
**Subject:** RE: Newell v. Metropolis et al

It is my understanding that our clients have come to an agreement on the settlement of this action.  Let me know if you understand differently.

Thanks,
Scott

**From:** DeTar, Richard [mailto:RDETAR@MilesStockbridge.com]
**Sent:** Monday, March 17, 2008 12:42 PM
**To:** Andrew J. Kline; Scott H. Rome
**Cc:** Sullivan, James
**Subject:** Newell v. Metropolis et al

Dear Mssrs. Kline and Rome:

**EXHIBIT**

**2**

As you know, the Defendants responses to written discovery are past due and there have been no agreements, nor even a request, for an extension of time. The discovery is time sensitive because of, among other reasons, the possible sale of a retail unit which may require use of the sought after information in connection

with emergency relief that Mr. Newell may need from the Court. The time sensitive need for this information was disclosed at the outset of the case and resulted in an invitation from the Court to hold a TRO hearing on December 31.

I called and left a message for Mr. Kline to discuss the over due discovery on Wednesday, March 12 but did not receive a response. The purpose of this communication is to place you on clear notice that the discovery is over due prior to filing an appropriate motion with the Court. I understand that our clients continue to directly discuss the possibility of a settlement. Any settlement discussions between our clients, which have been occurring for well over a year, are completely separate from the litigation.

Please immediately advise me when I can expect to receive discovery. While no extension for discovery has been granted, as a practical matter, if it is received today or tomorrow it will obviate the need to file a motion seeking relief from the Court.

Regards, Rad DeTar

MILES&STOCKBRIDGE P.C.
Richard A. DeTar

Direct Dial: 410.820.0224
Fax: 410.822.5450
rdetar@milesstockbridge.com
101 Bay Street, Easton, Maryland 21601-2718
www.milesstockbridge.com

*bio      vcard      location*

=============================================
In accordance with Internal Revenue Service rules, any federal tax advice provided in this communication is not intended or written by the author to be used, and cannot be used by the recipient, for the purpose of avoiding penalties which may be imposed on the recipient by the IRS. Please contact the author if you would like to receive written advice in a format which complies with IRS rules and may be relied upon to avoid penalties.

Confidentiality Notice:
This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly indicated.
=============================================

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STEWART P. NEWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-2129 (RCL) |
| | ) | |
| METROPOLIS DEVELOPMENT | ) | |
| COMPANY, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER</u>

Upon consideration of Plaintiff's Motion to Compel Discovery Responses and Documents from Defendants, Metropolis Development Company, LLC and Robert Scott Pannick, and any opposition thereto, and for good cause having been shown, it is on this ____ day of _____, 2008, by the United States District Court for the District of Columbia

ORDERED, that Plaintiff's Motion to Compel Discovery Responses be, and the same is hereby GRANTED; and it is further

ORDERED, that Defendants, Metropolis Development Company, LLC and Robert Scott Pannick shall respond to Plaintiff's overdue Discovery Requests and produce documents responsive to Plaintiff's Discovery Request within seven (7) days of the entry of this Order; and it is further

ORDERED, that any objections by Defendants to the discovery requests are hereby waived.

SO ORDERED.

_____                    _____
Date                           ROYCE C. LAMBERTH
                               United States District Judge