## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**STEWART P. NEWELL**

    **Plaintiff,**

               **v.**

**METROPOLIS DEVELOPMENT
COMPANY, LLC et. al.**

    **Defendants.**

Case Number 1:07CV02129
Judge: Royce C. Lamberth

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S
### MOTION TO COMPEL DISCOVERY RESPONSES AND DOCUMENTS

Defendants, Metropolis Development Company, LLC ("Metropolis") and Robert Scott Pannick ("Pannick"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 37(a), hereby oppose Plaintiff's Motion to Compel Discovery.

In support thereof, Defendants assert that the Motion is now moot as Defendants have responded to all pending discovery requests.   The responses are appended hereto as Exhibit 1, and were served on counsel for Plaintiff by electronic mail and e-service on this date, April 9, 2008.  Furthermore, Defendants note that the delay in serving discovery responses was caused by the recent diagnosis of Defendant Pannick with a recurring brain tumor.

WHEREFORE, Defendants Metropolis Development Company, LLC and Robert Scott Pannick, hereby respectfully request that this Court Deny the Motion to Compel Discovery Responses and Documents, as moot.

Respectfully submitted,


_____/s/ Scott H. Rome_____
/s/ Scott H. Rome
Scott H. Rome, Esq. [D.C. Bar # 476677]
Andrew J. Kline, Esq.  [D.C. Bar # ???]
LAW OFFICES OF ANDREW J. KLINE
1225 19 th Street, NW, Suite 320
Washington, D.C. 20036
(202) 686-7600
Attorneys for Defendants

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STEWART P. NEWELL** | |
| **Plaintiff,** | Case Number 1:07CV02129 |
| | Judge: Royce C. Lamberth |
| **v.** | |
| **METROPOLIS DEVELOPMENT COMPANY, LLC et. al.** | |
| **Defendants.** | |

**ORDER DENYING DEFENDANTS' MOTION
TO COMPEL DISCOVERY RESPONSES AND DOCUMENTS**

UPON CONSIDERATION OF the Plaintiff's Motion to Compel Discovery Responses

and Documents, and Defendants opposition tehreto, it is thereupon, this _____ day of _____

2008,

**ORDERED** that the Motion is **DENIED.**

_____

Judge Royce C. Lamberth
United States District Judge

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEWART P. NEWELL** | |
| **Plaintiff,** | Case Number 1:07CV02129 |
| | Judge: Royce C. Lamberth |
| **v.** | |
| **METROPOLIS DEVELOPMENT COMPANY, LLC et. al.** | |
| **Defendants.** | |

### METROPOLIS DEVELOPMENT COMPANY, LLC'S
### <u>RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS</u>

TO:       Stewart P. Newell
             c/o James A. Sullivan, Jr.
             Miles & Stockbridge, P.C.
             11 N. Washington Street, Suite 700
             Rockville, Maryland 20850

FROM:   Metropolis Development Company, LLC & Robert Scott Pannick
             c/o Scott H. Rome, Esquire
             Law Offices of Andrew J. Kline
             1225 Nineteenth Street, NW, Suite 320
             Washington, D.C.  20036

Defendant, Metropolis Development Company, LLC, by and through undersigned

counsel, hereby respond to Plaintiff's First Request for Production of Documents

A.     General Objections

     1. Defendant objects to all document requests to the extent they request the production of

material that is privileged under the attorney mental impression, litigation work product,

attorney-client privilege or other similar protective documents.

     2. Defendant objects to Plaintiffs' Definitions and Instructions which seek to impose

obligations in excess of those required by the Superior Court Rules of Civil Procedure for

production of documents.

3. Defendant objects to Plaintiffs' Instructions and Definitions which seek information beyond that required to substantiate a claim of privilege and seek the production of documents not properly discoverable. To the extent that the instructions are intended to seek a privilege list relating to the content of the mental impressions or legal theories of counsel or the content of any communications between Defendant and counsel in this litigation, Defendant objects on the basis of undue interference with ongoing trial preparation as well as attorney-client privilege and litigation work product. No privilege list will be provided for documents relating to advice or communications by counsel in connection with the current litigation. Defendant will not produce or identify the contents of any attorney files, including working files, notes, drafts or other documents. Defendant does not, of course, claim any privilege for any nonduplicative, nonprivileged documents that may have been placed in attorney's files and such documents will be produced, if otherwise responsive.

4. Defendant objects to Plaintiffs' Instructions and Definitions to the extent they seek the production of anything other than documents or other tangible evidence.

B.      Specific Objections and Responses to Document Requests.

1.      All documents relating to negotiations between or among Metropolis and/or Pannick and Newell and/or between their attorneys and Newell's attorneys in any way relating to the Redemption Agreements.

**RESPONSE:**  Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

2.      All documents relating in any way to payments of money and/or other consideration received by Metropolis for the sale or transfer of a partial or complete interest in any retail units within any of the company Projects after

September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

3.      All documents explaining or in any way relating to any money or other consideration received by any persons or entities from Metropolis for the sale or transfer of a partial or a complete interest in any retail units within any of the Company Projects after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

4.      All documents relating to, explaining, or in any way accounting for any use of occupation by Metropolis fo a retail unit or retail units within any of the Company Projects for little or no consideration after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

5.      All documents relating to, explaining, or accounting for any and all instances when a partial or complete interest in any retail unit or units within any of the Company Projects have been transferred to any person or entity on or after September 29, 2003 for little or no consideration being paid or distributed to metropolis. For purposes of this request "little consideration" is intended to mean a value substantially below fair market value.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

6.      All documents relating to any transfers by Metropolis of a partial or complete

interest in any retail unit or units within any of the Company Projects to a third person or entity for little or no consideration. For purposes of this request "little consideration" is intended to mean a value substantially below fair market value.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

7.      All documents identifying, explaining, or in any way relating to distributions of cash or any other consideration received by Pannick, either directly or through an entity owned in whole or in part by him (including, but not limited to a trust but excluding Metropolis), in any way attributable to the sale or transfer of any retail units within any of the Company Projects after September 29, 2003. \

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

8.      All documents relating to any transactions through which Pannick and/or an entity owned in whole or in part by Pannick (including, but not limited to, a trust but excluding Metropolis) has purchased or acquired a partial or complete interest in any retail units within any of the Company Projects from Metropolis after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

9.      All documents relating to any sale or transfer by Pannick and/or an entity owned in whole or in part by Pannick (including, but not limited to, a trust but excluding Metropolis) of any retail units formerly within any of the Company Projects after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327

14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

10.    All documents explaining, describing or in any way accounting for any payments made by Metropolis to any person or entity from the Proceeds of a sale or transfer of a partial or complete interest in any retail units within any of the Company Projects after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

11.    All documents relating in any way to any service fees paid to Metropolis in connection with its management agreements for any Company Project after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

12.    All documents relating in any way to any sale, lease or financing of any retail units within any Company Project on or after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

13.    All documents relating to payments that Metropolis has made to any person or entity from the proceeds of a sale, lease or financing of any retail units within any of the Company Projects after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

14.    A true and correct copy of the "RFP I Revocable Trust" and all documents relating to the formation of that trust and any ownership interest it possesses or possessed in any retail units within the Company Projects.

**RESPONSE:**Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

15.    All tax returns and related schedules filed by Metropolis for the tax years from January 1, 2003 forward.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

16.    All balance statements, asset/liability statements, financial statements and financial forecasts prepared or provided by metropolis to its lenders and/or prospective lenders from January 1, 2003 forward.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

17.    All documents relating to, evidencing or reporting payments or other forms of consideration that Pannick has received from Metropolis from September 29, 2003 to the present.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

18.    All documents relating to any accounting or other financial record itemizing or memorializing payments made to Newell from the sale, lease or financing of each unit within a Company Project pursuant to the Redemption Agreement on or after

September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

19.    All documents relating to any accounting or other financial records itemizing or memorializing payments made to any person or entity other than Newell from the sale, lease or financing of each retail unit within the Company Projects on or after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

20.    All documents relating in any way to any liens or encumbrances against any of the retail units within any of the Company Projects that are owned in whole or in part by Metropolis, Pannick or an entity owned in whole or in part by either Metropolis or Pannick.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

21.    All documents that refer to, relate to, evidence or record any communications by and between you and any lender, potential lender, potential equity partner or buyer, including, but not limited to BB&T, concerning any sale, proposed sale, lease, financing or proposed financing or forecast attributable to any the retail units within any of the Company Projects.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

22.    All reports and tax information required to be provided by the Manager to

Members under the Metropolis Development Company, LLC Limited Liability Company Agreements after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

23.     All reports given to lenders or partners in Company Projects after September 29, 2003.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

24.     All documents relating to performance of your obligation to "keep monies received from Company Projects separate and apart from monies received from any other projects" pursuant to Section III.a.(I) of the Redemption Agreements. Please note that Sub-section (I) referred to in this Request is the second Sub-section.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

25.     All documents constituting and/or relating to the maintenance of "separate books and records for each Company Project and any other projects the Company may have" as provided for in Section III.a.(ii) of the Redemption Agreements.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

26.     All written or recorded statements of any party, or of any agent, representative, or employee of any party, concerning in any way the facts and matters set forth in the Complaint and Answer.

**RESPONSE:** Defendant incorporates the general objections stated above. Without

waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

27.    All documents which refer to, relate to, any evidence or record of any statements of persons having knowledge of the facts and matters set forth in the Complaint and Answer.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

28.    All documents which refer to, relate to, evidence or record any admissions or statements made by any party to this case relative to the facts and matters set forth in the Complaint and Answer.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

29.    All documents relating in any way to your defense(s) to Count I of the Complaint.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

30.    All documents relating in any way to your defense(s) to Count II of the Complaint.

**RESPONSE:**Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

31.    All documents relating in any way to your defense(s) to Count III of the Complaint.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

       32.     All documents relating in any way to your contention that "Plaintiff's claims are barred by his own breaches, negligence, and wrongful and/or fraudulent conduct."

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

       33.     All documents relating in any way to your contention that "Plaintiff's claims are barred by the doctrines of estoppel, waiver, and/or ratification."

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

       34.     All documents relating in any way to your contention that "Plaintiff's claims are barred by the doctrine of laches."

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

       35.     All documents relating in any way to your contention that "Plaintiff's claims are barred by the Statute of Frauds."

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

36.    All documents relating in any way to your contention that "Plaintiff's claims are barred by the doctrines of merger and parol evidence."

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

37.    All documents relating in any way to your contention that "Plaintiff's claims are barred by the rule against perpetuities."

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

38.    All documents not previously requested that have anything whatsoever to do with the facts and matters alleged in the Complaint and Answer.

**RESPONSE:** Defendant incorporates the general objections stated above. Without waiving any objection Defendant states that all non-privileged responsive documents are available for inspection and copying, at the offices of Metropolis Development Company, 1327 14th Street, NW, Suite 300, Washington, DC 20005, to the extent that such documents exist. Please contact undersigned counsel in order to make arrangements for inspection and copying.

_____    /s/ Scott H.  Rome
/s/ Scott H. Rome
Scott H. Rome, Esq. [D.C. Bar # 476677]
LAW OFFICES OF ANDREW J. KLINE
1225 19 th Street, NW, Suite 320
Washington, D.C. 20036
(202) 686-7600
Attorneys for Defendants

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th Day of April 2008, a true and accurate copy of the foregoing was served by e-service and electronic mail upon counsel for Plaintiff as follows:

Richard A. DeTar
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
(410) 820 - 0224

James A. Sullivan, Jr.
Miles & Stockbridge, P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850

_____/s/ Scott H. Rome_____
/s/ Scott H. Rome
Scott H. Rome, Esq. [D.C. Bar # 476677]
LAW OFFICES OF ANDREW J. KLINE
1225 19 th Street, NW, Suite 320
Washington, D.C. 20036
(202) 686-7600
Attorneys for Defendants

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**STEWART P. NEWELL**

  **Plaintiff,**      Case Number 1:07CV02129
              Judge: Royce C. Lamberth

       **v.**

**METROPOLIS DEVELOPMENT
COMPANY, LLC et. al.**

  **Defendants.**


### DEFENDANT METROPOLIS DEVELOPMENT COMPANY LLC'S
### RESPONSES TO PLAINTIFF'S INTERROGATORIES

  Defendant Metropolis Development Company, LLC, by and through undersigned

counsel, hereby responds to the Interrogatories of Plaintiff as follows:

Introductory Statement

  (a)  The information contained in these Responses is being provided in accordance

with the provisions and intent of the rules of the United States District Court for the District of

Columbia, which require the disclosure of all facts which may be relevant or may lead to the

discovery of relevant information. Accordingly, the party answering these Interrogatories, by

providing the information requested, does not waive objections to its admission in evidence on

grounds of materiality or relevancy or other proper grounds for objection.

  (b)  The information supplied in these answers is not based solely on the knowledge of

the executing party, but includes knowledge of the party, its agents and/or employees,

representatives and attorneys unless privileged.

  (c)  The word usage, sentence structure, and syntax may be that of the attorney

assisting in the preparation of these Answers, and thus, does not necessarily purport to be the

precise language of the executing party.

## I. GENERAL RESPONSES

A.  Defendant 's Responses to Plaintiffs Interrogatories are made to the best of their present knowledge, information, and belief. Said response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Defendant 's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result form their further discovery or investigation.

B. Defendant reserves the right to make any use of, or to introduce at any hearing and at trial, documents responsive to Plaintiffs Interrogatories but discovered after the date of Defendant 's initial production, including, but not limited to, any documents obtained in discovery herein.

C.  Defendant reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of this response and any document or thing produced in response to Plaintiff's discovery.

D. Defendant reserves the right to object on any ground at any time to such other or supplemental Interrogatories as Plaintiff may at any time propound involving or relating to the subject matter of these interrogatories.

## II. GENERAL OBJECTIONS

Defendant makes the following general objections, whether or not separately set forth in response to each document request, to each and every instruction, definition, and Interrogatory. Each of the following objections are expressly incorporated into each subsequent specific

response or objection to individual Interrogatories:

A.  Defendant objects to the introductory definitions and instructions to the interrogatories to the extent that such definitions or instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific interrogatory on the ground that such enlargement, expansion, or alteration renders such request vague, ambiguous, unintelligible, unduly broad, and uncertain.

B. Defendant objects to all instructions, definitions and interrogatories to the extent they seek information not currently in their possession, custody or control, or refer to persons, entities or events not known to Defendant, on the grounds that such instructions, definitions, or interrogatories seek to require more of Defendant than any obligation imposed by law, would subject Defendant  to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Defendant an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to Defendant.

C. Defendant further objects to all of the requests that generally or specifically refer to records of fictitious entities, and not of an identifiable person. To the extent that these interrogatories ask for any other "PERSONS" acting on behalf of the entity, such request is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and is intended solely to harass Defendant .

D. Defendant further objects to all of the interrogatories in that they seek information for an irrelevant time period.

III. SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1**:    Please provide an accounting with respect to the retail unit known as "Lofts 14 II – C2" within the Company Projects on or after September 29, 2003, including, but not limited to, the following information:

(a)    The price or other consideration that Metropolis paid to acquire this retail unit, the name of the Seller and the date of the transfer of this unit to Metropolis;

(b)    The price that Metropolis sold this unit for, the name of the purchaser and the date of the transfer of this unit from Metropolis;

(c)    The amount that Metropolis paid to Newell from the net proceeds of Metropolis' sale of this unit; and

(d)    A complete accounting of how the proceeds of Metropolis' sale or conveyance of this unit were distributed including, but not limited to: (i) the identity of each person or entity to whom Metropolis made or directed a payment from the proceeds, (ii) the amount of each such payment, and (iii) an explanation of the specific nature of Metropolis' financial obligation to each such person or entity giving rise to a payment made to this person or entity from the sale or conveyance of this particular retail unit within the Company Projects.  To the extend that payments or distributions were made to any person or entity on behalf of, or the benefit of, Metropolis or Pannick, your answer to (d) (iii) should include this information.

**RESPONSE: Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" of the unit since 2003 would be unduly burdensome and require a complete audit and revue of all Company actions. Without waiving any objections, Defendant responds to the subparts of this interrogatory as follows:**

**Defendant does not concede that Lofts 14 II - C2 is "within the Company Projects" as defined by the Redemption Agreement**

**(a) The units collectively known as B Retail Space, including units C1 and C2 of the 1400 Church Street Condominium, were purchased for $1,808,241.00, from Mid City Development Company II on January 12, 2007;**

**(b) The unit was sold for a contract sales price of $1,850,00.00 million, to Gould FDX, LLC, on November 9, 2007;**

**(c) Metropolis paid Newell $900,000.00 just prior to the sale of this unit, from funds borrowed from BTR Capitol Fund III, LLC;**

**(d) Attached hereto is the HUD-1 Settlement Statement dated November 9, 2007, which reflects net proceeds of $5,224.50 received by Metropolis.**

**INTERROGATORY NO. 2**:  Please provide an accounting with respect to the retail units known as Units C1 and C2 within the Company Project known as Project C (Cooper Lewis Condominium) on or after September 29, 2003, including, but not limited to, the following information:

(a)    The price or other consideration that Metropolis paid to acquire this retail unit, the name of the Seller and the date of the transfer of this unit to Metropolis;

(b)    The price that Metropolis sold this unit for, the name of the purchaser and the date of the transfer of this unit from Metropolis;

(c)     The amount that Metropolis paid to Newell from the net proceeds of Metropolis' sale of this unit; and

(d)     A complete accounting of how the proceeds of Metropolis' sale or conveyance of this unit were distributed including, but not limited to; (i) the identify of each person or entity to whom Metropolis made or directed a payment from the proceeds, (ii) the amount of each such payment, and (iii) an explanation of the specific nature of Metropolis' financial obligation to each such person or entity giving rise to a payment made to this person or entity from the sale or conveyance of this particular retail unit within the Company Projects.  To the extend that payment or distributions were made to any person or entity on behalf of, or for the benefit of, Metropolis or Pannick, your answer to (d) (iii) should include this information.

**RESPONSE: Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" of the unit that includes information since 2003 would be unduly burdensome and require a complete audit and revue of all company actions.**

**Defendant does not concede that these units are "within the Company Projects" as defined by the Redemption Agreement as the units were purchased at market value after the date of the Redemption Agreement.**

**Without waiving any objections, Defendant responds to the subparts as follows of this interrogatory as follows:**

**(a) The total price was $1,676,404, paid to Mid City Development Company II, on September 14, 2006.**

**(b) The unit was sold for $4,675,388, to Jonathan West on September 14, 2006.**

**(c) After the sale of this unit, Metropolis paid Newell $550,000.00 on October 13, 2006.**

**(d) Attached hereto is a copy of the HUD-1 settlement statement dated September 14, 2006 reflecting disbursements from settlement.**

**INTERROGATORY NO. 3**:  Please provide an accounting with respect Uptown Partner's use of any proceeds from the sale or conveyance of any units within the Langston Project on or after September 29, 2003 to make payments or distributions to, or for the benefit of, Metropolis and/or Pannick, including, but not limited to, the following information:

(a)     The identity of each person or entity to whom Uptown Partners made or directed a payment from the proceeds form the sale or conveyance of any units within the Langston Project on or after September 29, 2003, including, but not limited to, the brokerage firm known as Julian J. Studley, Inc., or any affiliates thereof, and

(b)     The date and amount of each such payment.

**RESPONSE: Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" dating back to 2003, would include a full review of company actions since 2003, would be unduly burdensome and require a complete audit and revue of all company actions during this time period.**

5

Without waiving any objections, Defendant states that no distributions were made to Pannick, or anyone else, and that proceeds from the sale or conveyance on units within Langston Project went into Metropolis accounts and were used solely for company operations such as salaries of company employees, rent, and operating expenses, with the exception being that $250,000.00 was paid to Merrick Malone.  No payments were made to Julian J. Studley, Inc.

**INTERROGATORY NO. 4**:  Please provide a complete explanation for all income and/or other consideration that Metropolis has, or could have, derived, or will derive, from Lofts 14 – Unit C1 on an annual basis from September 29, 2003 through the date of trial, including, but not limited to, the following information:

(a)    The price or other consideration that Metropolis paid to acquire this retail unit, the name of the seller or transferor and the date of the transfer of this unit to Metropolis;

(b)    The approximate fair market sales value of this retail unit at the time it was acquired by Metropolis and its approximate fair market sales value as of the date of your answer to this Interrogatory (you may provide a reasonable range for your estimates);

(c)    The date when this retail unit was ready for occupancy;

(d)    Explain your efforts to sell or lease this unit since you acquired it including whether it has ever been listed for sale and the list price;

(e)    If you have never listed this unit for sale or otherwise attempted to sell it explain why not;

(f)    What is your estimate of the fair market rental value for this Unit on an annual basis since it was first ready for occupancy through the date of trial (you may provide a reasonable range for your estimate);

(g)    What, if any, rental payments or other economic benefit(s) have you received attributable to this retail unit for each year requested;

(h)    Who has been occupying this retail unit for each of the years requested;

(i)    In the event that Metropolis has been occupying this retail unit, explain the purpose or purposes for which Metropolis has been occupying this retail unit for each year requested including, but not limited to, whether Metropolis has been using this retail unit as a sales center for projects other than the Company Projects and when, if ever, Metropolis intends to vacate this retail unit and offer it for sale; and

(j)    In the event that Metropolis sells this unit, explain whether you contend that Newell is entitled to any of the proceeds of the sale pursuant to the Redemption Agreement and if so what, if any proceeds you claim should be paid to any other person or entity ahead of Metropolis' obligation to Newell.

**RESPONSE: Defendant states that Metropolis derived $79,300.00 in rental income from Mid City Development Company.  In response to the lettered sub-parts Metropolis states as follows:**

(a)  **The transfer of this unit was in accordance with the Assignment and Assumption and  Agreement dated November 19, 2004, and attached hereto;**

6

    **(b) The unit was worth approximately $1,097,321 at time the unit was transferred. and approximately $2,000,000 as of March 25, 2008;**
    **(c) November 16, 2002;**
    **(d) The unit was never listed for sale;**
    **(e) The unit was not listed for sale because it has been  in continuous use as a sales center;**
    **(f) The fair market rental value is estimated at $20/square foot in 2005, $25/ square foot in 2006, $35/ square foot in 2007, and $50/ square foot in 2008;**
    **(g) Approximately $79,300.00 as follows:   2005 – $25,490;  2006 - $45,850**
    **(h) The unit has not been occupied, but has been used as a sales center for Langston, Lofts 14, Lofts 14 II, Cooper Lewis, and the Metropole Condominium.**
    **(i) This unit was in use for Company Projects;**
    **(j) After payment of all expenses incident to any transaction involving a sale of the Unit, and payoff of any liens or encumbrances, Newell is entitled to payment pursuant to the Redemption Agreement.**

**INTERROGATORY NO. 5**:  Please provide an accounting with regard to Lofts 14II – Unit C1 including, but not limited to, the following information on an annual basis commencing on January  , 2004 through the date of trial

    (a)    The price or other consideration that Metropolis paid to acquire this retail unit, the name of the seller or transferor and the date of the transfer of this unit to Metropolis

    (b)    The approximate fair market sales value of this retail unit at the time it was acquired by Metropolis and its approximate fair market sales value as of the date of your answer to this Interrogatory ( you may provide a reasonable range for your estimate);

    (c)    The annual rental income or other economic benefit(s) received by Metropolis and/or Pannick for this retail space for each of the requested years;

    (d)    Identify the person or entity occupying this retail space for each of the requested years; and

    (e)    A complete accounting of how the rental proceeds collected for this retail unit have been distributed by you including, but not limited to, the name of each person or entity to whom Metropolis has made a payment from the rental proceeds, the amount of each such payment for each calendar year and an explanation of the specific nature of Metropolis' financial obligation to each such person or entity giving rise to a payment made to this person or entity from the rental income generated from this particular unit within the Company Projects.

    (f)    In the event that Metropolis sells this unit, explain whether you contend that Newell is entitled to any of the proceeds of the sale pursuant to the Redemption Agreement and if so what, if any, proceeds you claim should be paid to any other person or entity ahead of Metropolis' obligation to Newell.

    **RESPONSE: Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" would be unduly burdensome.**

Without waiving any objections, Defendant responds to the individual sub-parts, as follows:

Defendant does not concede that this unit is "within the Company Projects" as defined by the Redemption Agreement as the units were purchased at market value after the date of the Redemption Agreement.

(a)  The units collectively known as B Retail Space, including units C1 and C2 of the 1400 Church Street Condominium, were purchased for $1,808,241.00, from Mid City Development Company II on January 12, 2007

(b)  $1,097,321 at the time the unit was acquired; and $2,000,000 as of March  25, 2008. The unit was appraised at $1,138,717 at the time it was acquired, and the approximate market value is now $1,850,000

(c)  The annual rent is $138,750.  However, the rent only began to accrue in February  2008.  approximately 1 - 2 month's rent has been collected.

(d)  The space was vacant until February of 2008 and is now occupied by Joe M Carmack Landscape Design, L.L.C., t/a Garden District.

(e)  Defendant has collected rent for just over one month and this rent was placed into the general operating funds for Metropolis.

(f)  In the event that Metropolis sells the unit, that event does not entitle Newell to any proceeds. This unit is not part of the "Company Projects" as that term is used in the Redemption Agreements.

**INTERROGATORY NO. 6**:  Commencing on or after September 29, 2003, itemize an explain all payments that you contend have been made to Newell from Metropolis as a result of its sale or leasing of any units within the Company Projects that satisfy or reduce Metropolis' obligation pursuant to the Redemption Agreements including within your answer the following:

(a) The amount paid to Newell from Metropolis' sale and/or leasing of each particular unit within the Company Projects;

(b) The total sales price and/or rental income received by Metropolis for each particular unit sold or leased giving rise to a payment to Newell under the Redemption Agreements; and

(c)     An accounting identifying the persons and/or entities to whom Metropolis has paid the remaining funds form Metropolis' sale of each unit it acquired within the Company Projects, the amount paid to each such person or entity and an explanation as to why Newell was not paid those proceeds.

**RESPONSE: Defendant objects to the characterization of any payments to Newell as payments "as a result of its sale or leasing," and objects to the use of the term "within the company projects" as vague and not used or defined in the Redemption Agreement. Without waiving any objections, Defendant states that the following payments were made to Newell, and that the following payments reduce any amount owed to Newell under the Redemption Agreements :**

| | |
|---|---|
| 12/9/05 | $500,000 |
| 10/13/06 | $550,000 |
| 11/09/07 | $900,000 |

8

**(a) (b) Defendant denies that any "particular unit sold or leased" gave rise to any payment to Newell under the Redemption Agreement but states that payments were made as set forth above.**

**(c) Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" would be unduly burdensome. Without waiving any objection, Defendant states that proceeds from the sale of any property owned by Metropolis were used for company operations of Metropolis including: salaries for company employees, rent, and operating expenses.**

**INTERROGATORY NO. 7:** With regard to units acquired by Metropolis within the Company Projects, provide an accounting of all financing that you have obtained (either new financing and/or drawing on an existing line of credit) that involves pledging any of the units within the Company Projects as collateral from September 29, 2003 to the present including, but not limited to, the following information within your answer;

(a)      Identify each loan by stating the financial institution that has provided you with borrowed funds since September 29, 2003, the dates and amounts of all such loans by institution and account number, the current balances on each such loan and identify each unit within a Company Project that is owned by Metropolis that is encumbered by each loan account number; and

(b)      Provide a complete accounting as to your use of any loan proceeds including, but not limited to, identifying each person or entity to whom loan proceeds distributed, the amount of loan proceeds distributed to each person or entity, the date of each such payment and an explanation of the specific nature of Metropolis' financial obligation and/or purpose for distributing loan proceeds to each person or entity identified in response to this Interrogatory.

**RESPONSE:**
**The loans are as follows:**

| | | |
|---|---|---|
| BB&T loan | $735,000 | 1400 Church C2 (paid in full) |
| BB&T loan | $965,000 | 1400 Church C1 |
| BB&T loan | $950,000 | 1401 Church C1 |

**All loan proceeds were used solely to purchase aforementioned properties or for company operations of Metropolis.**

**INTERROGATORY NO. 8:** Explain whether the provision within Section III.a.(i) of the Redemption Agreement has been satisfied, in whole or in part, concerning the extent to which "the first Five Hundred Thousand Dollars ($500,000) available Company Projects [has been] distributed to Pannick." Your answer should explain how much money you have distributed to Pannick pursuant to this term of the Redemption Agreement and the dates and amounts of each such payment to Pannick.

**REPONSE:  No amounts were "distributed" to Pannick.  Although some amounts have passed from Metropolis to Pannick, these funds were immediately reinvested in Metropolis, and used for the expenses of Metropolis.**

9

I, Scott Pannick, hereby declare under the penalties of perjury that the foregoing Answers to the Interrogatories are true and correct to the best of my knowledge, information and belief.

Dated: _4/9/08_

Scott Pannick,
President, Metropolis Development Company, LLC

STATE OF                            )
                                    )S/S
DISTRICT OF COLUMBIA                )

I, _Justin Auslaender_, a Notary Public in and for the aforesaid State and County, do hereby certify that _Scott Pannick_, who is known to me as the party to and who executed the foregoing, personally appeared before me in said State and County and acknowledged the same to be his act and deed.

WITNESS my hand and official seal this _9_ TH day of _April_, 2008

Notary Public

My Commission Expires:

Justin Auslaender
Notary Public, District of Columbia
My Commission Expires 3/14/2013

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th Day of April 2008, a true and accurate copy of the foregoing was served by e-service and electronic mail upon counsel for Plaintiff as follows:

Richard A. DeTar
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
(410) 820 - 0224

James A. Sullivan, Jr.
Miles & Stockbridge, P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850

_____
/s/
Scott H. Rome
Scott H. Rome, Esq. [D.C. Bar # 476677]
LAW OFFICES OF ANDREW J. KLINE
1225 19 th Street, NW, Suite 320
Washington, D.C. 20036
(202) 686-7600
Attorneys for Plaintiffs

11

1

OMB NO. 2502-0265

**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ CONV. UNINS. | 4. ☐ VA | 5. ☐ CONV. INS. |

| 6. FILE NUMBER: 07549 | 7. LOAN NUMBER: |

| 8. MORTGAGE INS CASE NUMBER: |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

1 0   3/98   (07549 PFD.0754990/33)

| D. NAME AND ADDRESS OF BORROWER: Gould FDX LLC 60 Cutter Mill Road, Suite 303 Great Neck, NY 11201 | E. NAME AND ADDRESS OF SELLER: Metropolis Development Company, LLC 1327 14th Street, NW, Suite 200 Washington, DC 20005 | F. NAME AND ADDRESS OF LENDER: ALL CASH |

| G. PROPERTY LOCATION: 1400 Church Street Condominium 1512 14th Street, NW #C2 Washington, DC 20005 | H. SETTLEMENT AGENT:   52-1612454 Regional Title Incorporated PLACE OF SETTLEMENT 1620 L Street, N.W. # 1200 Washington, DC 20036 | I. SETTLEMENT DATE: November 9, 2007 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 1,850,000.00 | 401. Contract Sales Price | 1,850,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 35,156.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes          to | | 406. City/Town Taxes          to | |
| 107. Rent Adjustment          to | | 407. Rent Adjustment          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| *120. GROSS AMOUNT DUE FROM BORROWER* | 1,885,156.00 | *420. GROSS AMOUNT DUE TO SELLER* | 1,850,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 100,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | | 502. Settlement Charges to Seller (Line 1400) | 111,832.18 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage to Branch Banking and Tru | 738,846.53 |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. (Deposit disb. as proceeds) | |
| 208. Tenant Improvement Credit | 79,975.00 | 508. Tenant Improvement Credit | 79,975.00 |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes   10/01/07 to 11/09/07 | 1,824.80 | 510. City/Town Taxes   10/01/07 to 11/09/07 | 1,824.80 |
| 211. Rent Adjustment   11/09/07 to 11/30/07 | 8,378.33 | 511. Rent Adjustment   11/09/07 to 11/30/07 | 8,378.33 |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. Tenant prepaid property taxes | 3,883.56 | 514. Tenant prepaid property taxes | 3,883.56 |
| 215. | | 515. Transfer Fee to Delbe RE | 35.00 |
| 216. | | 516. | |
| 217. | | 517. Payoff to BTR Capital Fund III, LLC | 900,000.00 |
| 218. | | 518. | |
| 219. | | 519. | |
| *220. TOTAL PAID BY/FOR BORROWER* | 194,061.69 | *520. TOTAL REDUCTION AMOUNT DUE SELLER* | 1,844,775.40 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 1,885,156.00 | 601. Gross Amount Due To Seller (Line 420) | 1,850,000.00 |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 194,061.69) | 602. Less Reductions Due Seller (Line 520) | ( 1,844,775.40) |
| *303. CASH ( X FROM ) ( TO ) BORROWER* | 1,691,094.31 | *603. CASH ( X TO ) ( FROM ) SELLER* | 5,224.60 |

# ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

|                        |                                      |
|-----------------------:|:-------------------------------------|
| **Borrower:**          | Gould FDX LLC                        |
| **Seller:**            | Metropolis Development Company       |
| **Settlement Agent:**  | Regional Title Incorporated          |
|                        | (202)452-0700                        |
| **Place of Settlement:** | 1620 L Street, N.W. # 1200         |
|                        | Washington, DC 20036                 |
| **Settlement Date:**   | November 9, 2007                     |
| **Property Location:** | 1400 Church Street Condominium       |
|                        | 1512 14th Street, NW #C2             |
|                        | Washington, DC 20005                 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Gould FDX LLC, a District of Columbia limited liability company

By: Gould Investors, L.P., Sole Member

By: Georgetown Partners, Inc., its Managing General Partner

By: _____
Name:
It's:

Metropolis Development Company, LLC, a District of Columbia limited liability company

By: _____
     R. Scott Pannick, Manager

## L. SETTLEMENT CHARGES

| | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** | 1,850,000.00 @ 7.0000 % | | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. $ 74,000.00 | to  Calkain Companies, Inc. | | | |
| 702. $ | to | | | |
| 703. Commission Paid at Settlement | | | | |
| 704. | | to | | 74,000.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee | % | to | | |
| 802. Loan Discount | % | to | | |
| 803. Appraisal Fee | | to | | |
| 804. Credit Report | | to | | |
| 805. Lender's Inspection Fee | | to | | |
| 806. Real Estate Tax Service Fee | | to | | |
| 807. Flood Certification Fee | | to | | |
| 808. Document Prep Fee | | | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest From | to | @ $ | /day ( days %) | |
| 902. Mortgage Insurance Premium for | months to | | | |
| 903. Hazard Insurance Premium for | 1.0 years to | | | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. Hazard Insurance | months @ $ | per month | | |
| 1002. Mortgage Insurance | months @ $ | per month | | |
| 1003. City/Town Taxes | months @ $ | per month | | |
| 1004. Rent Adjustment | months @ $ | per month | | |
| 1005. Assessments | months @ $ | per month | | |
| 1006. | months @ $ | per month | | |
| 1007. | months @ $ | per month | | |
| 1008. Aggregate Adjustment | months @ $ | per month | | |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or Closing Fee | to  Regional Title Incorporated | | 500.00 | 500.00 |
| 1102. Abstract or Title Search | to  J&M Abstracts, Inc. | | 265.00 | |
| 1103. Zoning letter | to  Regional Title Incorporated | | 600.00 | |
| 1104. Title Insurance Binder | to | | | |
| 1105. Document Preparation | to | | | |
| 1106. Notary Fees | to | | | |
| 1107. Attorney's Fees | to | | | |
| (includes above item numbers: | ) | | | |
| 1108. Title Insurance | to  First American Title Insurance Company | | 6,887.50 | |
| (includes above item numbers: | ) | | | |
| 1109. Lender's Coverage | $ | | | |
| 1110. Owner's Coverage | $ 1,850,000.00 | | | |
| 1111. Messgr/FedEx/Copy/Fax Fees | to  Regional Title Incorporated | | | |
| 1112. Release Preparation Fee | to  Regional Title Incorporated | @ 50.00 each | 45.00 | 45.00 |
| 1113. | | | | 100.00 |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording Fees:  Deed $ 33.50 ; Mortgage $ | ; Releases $ 53.00 | | 33.50 | 53.00 |
| 1202. City/County Tax/Stamps: Deed | ; Mortgage | | | |
| 1203. State Tax/Stamps: Revenue Stamps | ; Mortgage | | | |
| 1204. Recordation Tax (1.45%) | to  DC Treasurer | | 26,825.00 | |
| 1205. Transfer Tax (1.45%) | to  DC Treasurer | | | 26,825.00 |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | to | | | |
| 1302. Pest Inspection | to | | | |
| 1303. Water Escrow | WASA | | | |
| 1304. Seller's Attorney's Fees | to  Greenstein Delorme & Luchs, P.C. | | | 9,932.48 |
| 1305. Condo Fee | to  1400 Church Street Condominium | November + reoccur balance | | 376.70 |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | | 35,156.00 | 111,832.18 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

Regional Title Incorporated
Settlement Agent

Certified to be a true copy

( 07549 - 07549 / 33 )

2

**A.**

**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

| B. TYPE OF LOAN: | | | | |
|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ CONV. UNINS. | 4. ☐ VA | 5. ☐ CONV. INS. |
| 6. FILE NUMBER: 06440 | | | 7. LOAN NUMBER: | |
| 8. MORTGAGE INS CASE NUMBER: | | | | |

1.0  3/98    (06440.PFD/06440I51)

**C. NOTE:**  *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

| D. NAME AND ADDRESS OF PURCHASER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| JONATHAN S. WEST<br>WILLIAM WEST<br>4 Park Avenue, 3rd Floor<br>New York, New York 10016 | MID-CITY DEVELOPMENT COMPANY II LLC<br>1327 14th Street, N.W.<br>Washington, D.C. 20005<br>Attn: Robert Scott Pannick | HSBC Bank USA, National Association |

| G. PROPERTY LOCATION:<br>1413 P Street, N.W., Commercial Units C1 & C2<br>Washington, DC | H. SETTLEMENT AGENT:    52-1612454<br>Regional Title Incorporated<br><br>PLACE OF SETTLEMENT<br>1620 L Street, N.W. # 900<br>Washington, DC 20036 | I. SETTLEMENT DATE:<br><br>September 14, 2006 |

| J. SUMMARY OF PURCHASER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM PURCHASER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 1,616,370.00 | 401. Contract Sales Price | 1,616,370.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Purchaser (Line 1400) | 3,059,017.95 | 403. | |
| 104. Assignment Fee/$2,983,630.00 | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes   09/14/06 to 10/01/06 | 295.93 | 406. City/Town Taxes   09/14/06 to 10/01/06 | 295.93 |
| 107. County taxes            to | | 407. County taxes            to | |
| 108. Assessments            to | | 408. Assessments            to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM PURCHASER** | 4,675,683.88 | **420. GROSS AMOUNT DUE TO SELLER** | 1,616,665.93 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF PURCHASER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 100,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 2,300,000.00 | 502. Settlement Charges to Seller (Line 1400) | 17,860.07 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. (Deposit disb. as proceeds) | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes            to | | 510. City/Town Taxes            to | |
| 211. County taxes            to | | 511. County taxes            to | |
| 212. Assessments            to | | 512. Assessments            to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. Legal Fee Reimbursement Paymen | 27,500.00 | 515. | |
| 216. Improvement Allowance | 102,750.00 | 516. | |
| 217. Rent Credit 9/14/06-10/04/06 | 15,370.32 | 517. Seller's Legal Fees to Greenstein DeLorme & Luchs | 5,000.00 |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR PURCHASER** | 2,545,620.32 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 22,860.07 |
| **300. CASH AT SETTLEMENT FROM/TO PURCHASER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Purchaser (Line 120) | 4,675,683.88 | 601. Gross Amount Due To Seller (Line 420) | 1,616,665.93 |
| 302. Less Amount Paid By/For Purchaser (Line 220) | ( 2,545,620.32) | 602. Less Reductions Due Seller (Line 520) | ( 22,860.07) |
| **303. CASH ( X FROM) ( TO) PURCHASER** | 2,130,063.56 | **603. CASH ( X TO) ( FROM) SELLER** | 1,593,805.86 |

## L. SETTLEMENT CHARGES

| | | PAID FROM PURCHASER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** $ @ % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee % to | | | |
| 802. Loan Discount % to | | | |
| 803. Lender's Legal Fees to Holland & Knight LLP | | | |
| 804. Borrower's Local Counsel Fees to Griffin & Murphy LLP | | 8,000.00 | |
| 805. Lender's Inspection Fee to | | 3,130.00 | |
| 806. Mortgage Ins. App. Fee to | | | |
| 807. Assumption Fee to | | | |
| 808. Document Prep Fee to | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 09/14/06 to 10/01/06 @ $ 387.166670/day ( 17 days 6.0600%) | | 6,581.83 | |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for 1.0 years to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance months @ $ per month | | | |
| 1002. Mortgage Insurance months @ $ per month | | | |
| 1003. City/Town Taxes months @ $ per month | | | |
| 1004. County taxes months @ $ per month | | | |
| 1005. Assessments months @ $ per month | | | |
| 1006. months @ $ per month | | | |
| 1007. months @ $ per month | | | |
| 1008. Aggregate Adjustment months @ $ per month | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee to Regional Title Incorporated | | 500.00 | |
| 1102. Abstract or Title Search to J & M Abstracts, Inc. | | | |
| 1103. Title Examination to | | | |
| 1104. Title Insurance Binder to | | | |
| 1105. Document Preparation to | | | |
| 1106. Notary Fees to | | | |
| 1107. Attorney's Fees to | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance to First American Title Insurance Company | | 4,140.00 | |
| (includes above item numbers: ) | | | |
| 1109. Lender's Coverage $ 2,300,000.00 | | | |
| 1110. Owner's Coverage $ 1,616,370.00 | | | |
| 1111. Messgr/FedEx/Copy/Fax Fees to Regional Title Incorporated | | | |
| 1112. Release Preparation Fee Regional Title Incorporated | | 80.00 | 80.00 |
| 1113. @ 50.00 each | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $ ; Mortgage $ ; Releases $ Recording Fees | | 500.00 | |
| 1202. City/County Tax/Stamps: Deed ; Mortgage | | | |
| 1203. State Tax/Stamps: Revenue Stamps ; Mortgage | | | |
| 1204. Recordation Tax (1.1%) to DC Treasurer | | 50,600.00 | |
| 1205. Transfer Tax (1.1%) to DC Treasurer | | | 17,780.07 |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | | |
| 1303. Condominium Dues to The Cooper Lewis Condominium From 9/14/06-10/31/06 | | 815.31 | |
| 1304. Working Capital Contribution to The Cooper Lewis Condominium | | 1,040.61 | |
| 1305. Assignment Fee to Metropolis Development Company SEE ADDENDUM | | 2,983,630.00 | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | 3,059,017.95 | 17,860.07 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement

Certified to be a true copy

Regional Title Incorporated
Settlement Agent

[ 05440 / 06440 / 51 ]

ADDENDUM TO
HUD-1 SETTLEMENT STATEMENT NO. 06440

Dated September 14, 2006

Breakdown of Assignment Fee to Metropolis Development Company

| | | |
|---|---|---|
| Line 1305. | Assignment Fee to Metropolis Development Company | $2,983,630.00 |
| | LEGAL FEE REIMBURSEMENT PAYMENT to Purchaser | (    27,500.00) |
| | IMPROVEMENT ALLOWANCE to Purchaser | (  102,750.00) |
| | RENT CREDIT 9/14/06 – 10/04/06 to Purchaser | (    15,370.32) |
| | BROKER: $41,000 to Staubach; $41,000 to Calkain Realty | (    82,000.00) |
| | SETTLEMENT FEE  to Regional Title Incorporated | (        500.00) |
| | LEGAL FEES to Greenstein DeLorme & Luchs, P.C. | (    22,107.41) |
| | LEASING BROKERAGE FEE to Asadoorian Retail Real Estate | (    84,220.00) |
| | 1.1 TRANSFER TAX to D.C. Treasurer | (    32,819.93) |
| | NET DUE: | $2,616,362.34 |

297202

3

# ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "Agreement") dated this 19ᵗʰ day of November, 2004, between **MID CITY DEVELOPMENT HOLDING COMPANY, LLC,** a Delaware limited liability company (the "Assignor"), and **METROPOLIS DEVELOPMENT COMPANY, LLC,** a District of Columbia limited liability company ("Assignee").

## RECITALS

**A.**     Assignor is a Delaware limited liability company formed by U.S. Property Development Corporation, a Delaware corporation ("USP"), and Assignee as sole members pursuant to that certain Operating Agreement of Mid City Development Holding Company, LLC dated December 24, 2002 (as amended from time to time, the "Operating Agreement"). Assignee owns an approximately 20-percent membership interest in Assignor and Assignor is taxable as a partnership for Federal income tax purposes.

**B.**     Assignor owns certain real property located at 1401 Church Street, N.W. in the District of Columbia as more particularly described on **Exhibit A** attached hereto and made a part hereof (the "Property").

**C.**     Currently, a historic building is located on the Property which Assignor is rehabilitating into a mixed-use residential and retail condominium project (the "Project"). In constructing the Project, Assignor has taken care to preserve the historic façade, and other protected elements included therewith, of the building so that the façade retains its historic character and intrinsic value (the "Façade"). The Project will include 83 residential condominium units and 2 commercial condominium units pursuant to that certain condominium declaration to be recorded with the District of Columbia (the "Condominium Declaration").

**D.**     The Project is not complete as of the date of this Agreement. As of the Effective Date, the Property has certain unused density that is otherwise provided for the Property pursuant to District of Columbia Zoning Regulations and which may be increased or decreased in the future based on changes to the Zoning Regulations (the "Development Rights").

**E.**     Notwithstanding the fact that construction of the Project is not complete, Assignor desires to distribute to Assignee and Assignee desires to take title to (i) the retail condominium unit within the Project identified as the C1 Unit (the "Sales Office Unit"), (ii) the Façade which is included within the legal description of the Sales Office Unit, and (iii) the Development Rights all as more particularly described on **Exhibit B** attached hereto and made a part hereof. The Sales Office Unit, the Façade and the Development Rights are collectively referred to herein as the "Sales Office."

**F.**     The parties wish to set forth the terms of the distribution and assignment of the Sales Office to Assignee (the "Assignment").

## ASSIGNMENT AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing Recitals, the mutual covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

**RECITALS, DEFINITIONS AND EFFECTIVE DATE.** The above Recitals are incorporated herein by reference and made a material part of this Agreement. Any capitalized terms used in this Agreement and not otherwise defined in this Agreement shall have the meaning ascribed to such terms in the Operating Agreement. Notwithstanding the date of execution of this Agreement, the parties hereto acknowledge and agree that they reached an agreement as to the terms, conditions and provisions set forth on this Agreement on October 20, 2004 and that such terms, conditions and provisions have not been altered as of October 20, 2004, therefore, the parties hereto acknowledge and agree that this Agreement shall take effect and shall be deemed effective for all intents and purposes as of October 20, 2004 (the "Effective Date").

1.    **ASSIGNMENT.** Assignor hereby distributes, assigns, transfers and conveys to Assignee, and Assignee hereby accepts, Assignor's entire right, title and interest in and to the Sales Office as more particularly described on **Exhibit B** and all of the rights, limitations and obligations associated therewith as follows:

(a)    **The Sales Office.** The Development Plan and the Development Budget provide a Fifteen Dollar ($15.00) per square foot allowance for the Sales Office Unit (the "Allowance"). It is the intent of the parties to have the Lender distribute the Allowance to Assignee no later than the date that the final draw is made under the Loan. In the event that the Lender does not agree to distribute the Allowance to Assignee, then the Base Value of the Sales Office will be reduced by the amount of the Allowance (in whatever amount the Lender has not agreed to distribute) for purposes of determining the amount of the distribution made to Assignee under Article V of the Operating Agreement. Neither party shall have any liability to the other in the event Lender, for any reason, does not agree to distribute the Allowance.

(b)    **Other Rights Acquired.** In addition to the foregoing and as part of the Sales Office, Assignor agrees to assign, transfer and deliver to Assignee and Assignee agrees to acquire:

(i)    All of Assignor's right, title and interest in and to all rights of way, tenements, hereditaments, easements, rights, interests, claims, utility capacity and appurtenances, with respect to the Sales Office;

(ii)    All of Assignor's right, title and interest in and to all adjoining streets, alleys, private roads, parking areas, curbs, sidewalks, landscaping, sewers and public ways; and

(iii)    To the extent assignable, all of Assignor's right, title and interest in and to all licenses, franchises, certificates, occupancy and use certificates, permits, authorizations, consents, variances, waivers and approvals from any federal, state, county or

2

local government or quasi-governmental unit affecting the ownership, operation, management and maintenance of the Sales Office (collectively, the "Licenses").

3.    **VALUE AND DISTRIBUTION.**

(a)    **Value.**  Assignor and Assignee hereby acknowledge and agree that the Assignment constitutes a distribution of partnership property in accordance with Section 731(a) of the Internal Revenue Code of 1986, as amended (the "Distribution"). The parties agree that the Distribution will be treated as an advance distribution of Net Proceeds from a Capital Transaction to Assignee pursuant to Article V of the Operating Agreement. The value of the Distribution to be taken into account for purposes of calculating the amount of the advance Distribution from Net Proceeds under Article V of the Operating Agreement shall be $1,097,321, based on a formula of $35.3334 per square foot of leaseable space, times 2,764 square feet, capitalized using an 8.9 percent capitalization rate (the "Base Value"). In no event shall the Base Value be less than One Million Ninety-Seven Thousand, Three Hundred and Twenty-One Dollars ($1,097,321). Assignor and Assignee shall each report the Assignment of the Sales Office on their respective Federal income tax returns as a distribution of property from a partnership in accordance with Section 731(a) of the Internal Revenue Code of 1986, as amended (the "Code"), except to the extent, if any, that the provisions of Section 751 of the Code are applicable to the distribution. The Allowance shall be distributed when, as, and to the extent the Lender distributes the same to Assignee.

(b)    **Loan Assumption.**  The Property and the Project are subject to a $25,550,000 deed of trust (the "Loan") held in favor of Corus Bank, N.A. (the "Lender"). The Lender has approved the Assignment and the Distribution as set forth in this Agreement, as well as the corresponding modifications to the Operating Agreement of the Company. A copy of the Lender's consent is attached hereto as **Exhibit C**. It is the parties desire that Assignee take possession of the Sales Office free and clear of the Loan. The Lender will not release the Sales Office from the encumbrance of the deed of trust on the Property which secures repayment of the Loan (the "Deed of Trust") until such time as the entire amount of the Loan is repaid. According to the Lender, the Sales Office Unit secures Eight Hundred Eighty-Three Thousand Five Hundred Twenty Dollars ($883,520.00) of the Loan.

(c)    Assignee covenants not to take any action, or omit to take any action, as owner of the Sales Office, the result of which would cause a default under the Loan.

(d)    The obligations of Section 3 shall survive the Distribution hereunder and shall not merge with the Deed.

4.    **DUE DILIGENCE, TITLE EXCEPTIONS.**

(a)    **Due Diligence Completed.**  Assignee acknowledges that Assignor is not making and has not at any time made any warranties or representations of any kind or character, express or implied, with respect to the Property or the Project, including, but not limited to, any warranties or representations as to habitability, merchantability, or fitness for a particular purpose. Assignee hereby acknowledges and agrees that Assignor distributes to Assignee, and Assignee accepts, the Sales Office "AS IS, WHERE IS, WITH ALL FAULTS." Assignee

3

acknowledges that it has (i) previously received, reviewed and approved the title to the Property and the Project, including the Sales Office Unit, and (ii) been given reasonable access to the Property, the Project and the Sales Office Unit for the purpose of conducting the physical tests Assignee deems necessary or desirable to satisfy itself as to the condition of the Property, including surveys and architectural, structural, engineering, geotechnical and environmental tests and inspections. Therefore, Assignee shall rely solely upon its own tests and studies and not upon any information provided by or on behalf of Assignor or its agents or employees with respect thereto. Assignee assumes the risk that adverse matters, including but not limited to, construction defects and adverse physical and environmental conditions may not have been revealed by Assignee's investigation, but Assignee nonetheless hereby elects to proceed to accept title to the Sales Office without any further due diligence period.

5.    **CLOSING.**

(a)    **Time and Place.** The consummation of the transaction contemplated hereby shall occur contemporaneously with the execution of this Agreement.

(b)    **Assignor's Obligations.** Concurrent with the execution of this Agreement, Assignor shall deliver to Assignee, the following documents, fully executed and acknowledged where appropriate and such other items as follows:

(i)    **Deed.** A special warranty deed (the "Deed"), in the form of **Exhibit D** attached hereto, conveying the Sales Office, in fee simple, to Assignee.

(ii)    The parties hereto acknowledge that the Condominium Declaration has not yet been recorded. Assignor hereby covenants and agrees that it will timely record the Condominium Declaration in a form substantially similar to the Condominium Declaration attached hereto as **Exhibit E.** In the event that Assignor fails to record the Condominium Declaration by June 30, 2005, Assignee shall have the absolute and unfettered right to record the Condominium Declaration and shall be reimbursed by Assignor for any costs, expenses or fees incurred by Assignee in connection with the recordation of the Condominium Declaration. The obligations of this Section 5(b)(ii) shall survive the Distribution hereunder and shall not merge with the Deed.

(iii)    **Possession.** Possession of the Sales Office, subject to all lawful encumbrances, whether or not of record, choate, or inchoate.

(iv)    **Additional Documents.** Such additional documents as may be reasonably necessary or as may be required by the Lender to consummate the transactions contemplated hereby.

(c)    **Assignee's Obligations.** Upon execution of this Agreement, Assignee shall deliver to Assignor such additional documents as may be reasonably necessary or as may be required by the Lender to consummate the transactions contemplated hereby.

(d)    **Closing Charges and Adjustments.** Upon execution of this Agreement, Assignor and Assignee shall each pay one half of all transfer and recordation costs for the transfer of the Sales Office to Assignee. Assignee covenants to promptly grant a conservation

easement with respect to the Façade and the Development Rights (the "Conservation Easement"). Assignee shall be responsible for the payment of any fees required by the grantee of the Conservation Easement and any transfer and recordation taxes associated with the recordation of the Conservation Easement. Real estate taxes, personal property taxes, assessments (general or special), utilities, rents, revenues and such other items customarily prorated in similar transactions in Washington, D.C. shall be prorated between the parties as of 11:59 p.m. on the Effective Date. All adjustments or prorations which could not be determined as of the Effective Date because of the lack of actual statements, bills or invoices for the current period or any other reason shall be made from time to time after the Effective Date; provided, however, that all such adjustments and prorations shall be made no later than ninety (90) days after the Effective Date. The obligations of this Section 5(d) shall survive the Distribution hereunder and shall not merge with the Deed.

6.    **TITLE.**  Concurrent with the execution of this Agreement, Assignor shall convey to Assignee fee simple title to the Sales Office, subject to all lawful encumbrances, whether or not of record, choate, or inchoate.

7.    **COVENANTS.**  Assignor covenants and agrees to maintain the appropriate level of casualty and property insurance on the base building of the Project at all times. Assignee will maintain the appropriate level of casualty and property liability insurance on the Sales Office at all times. The obligations of this Section 7 shall survive the Distribution hereunder and shall not merge with the Deed.

8.    **REMEDIES.**  In the event either party to this Agreement fails to perform hereunder or breaches any of its representations or warranties or the covenants or obligations to be performed under this Agreement (the "Defaulting Party"), provided the non-Defaulting Party has provided the Defaulting Party with notice (in accordance with Section 11(a) hereof) and a ten (10) day period after receipt of such notice to cure such breach and the Defaulting Party fails to so cure, the non-Defaulting Party shall have all remedies available at law and in equity, including, without limitation, the remedy of specific performance. Notwithstanding anything to the contrary contained in this Agreement, however, if there is a breach of this Agreement by Assignor because of an act or omission of Assignee as Managing Member of Assignor, then such a breach shall be considered a breach of Assignee pursuant to this Agreement and not a breach of Assignor.

9.    **GENERAL PROVISIONS.**

(a)    **Notices.**  Any and all notices, requests or other communications hereunder shall be deemed to have been duly given if in writing and transmitted (i) by facsimile with a copy sent by first class mail, postage prepaid or (ii) by hand delivery with receipt therefor, or (iii) by registered or certified mail, return receipt requested, or (iv) by Federal Express or other delivery service with guaranteed next-day delivery, with receipt therefor, as follows:

If to Assignee:          1327 14th Street, N.W.
                         Washington, D.C.  20005
                         Attention:  Robert Scott Pannick
                         Phone No.:  (202) 588-1870

                    Fax No.:  (202) 588-1977

and a copy to:      Robins, Kaplan, Miller & Ciresi L.L.P.
                    1801 K Street, N.W., Suite 1200
                    Washington, D.C. 20006
                    Attention: Richard B. Nettler, Esq.
                    Phone No.: 202-736-2720
                    Fax No.:  202-223-8604

If to Assignor:     1327 14th Street, N.W.
                    Washington, D.C.  20005
                    Attention:  Robert Scott Pannick
                    Phone No.:  (202) 588-1870
                    Fax No.:  (202) 588-1977

and a copy to:      U.S. Property Development Corporation
                    7777 Leesburg Pike Suite 402N
                    Falls Church, Virginia 22043
                    Attention: Richard R. Wojcik
                    Phone No.: 703-893-2340
                    Fax No.:  703-893-2327

and a copy to:      Shaw Pittman LLP
                    2300 N Street, N.W.
                    Washington, D.C. 20037
                    Attention: John Engel, Esq.
                    Phone No.:  202-663-8863
                    Fax No.:  202-663-8007

**(b)** **Entire Agreement.** This Agreement, including all Exhibits, contains the entire agreement between the parties concerning the subject matter hereof and supersedes all prior agreements and understandings.

**(c)** **Modification.** This Agreement may not be modified except by the written agreement of Assignor and Assignee.

**(d)** **Further Assurances.** Each party agrees to execute such documents as shall be reasonably necessary to consummate the transactions provided for in this Agreement, and to vest title to the Sales Office in Assignee.

**(e)** **Governing Law; Jurisdiction.** This Agreement shall be governed by and construed according to the laws of the District of Columbia (but without regard to the District of Columbia's conflicts of laws principles) and Assignee and Assignor hereby consent to and accept the jurisdiction of the courts of the District of Columbia.

**(f)** **Binding Effect.** This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, legal representatives and permitted assigns.

6

EXECUTION COPY
Word 45663906.7

(g)  **Severability.**  If any one or more of the provisions contained in this Agreement are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein.

(h)  **Headings.**  Any Section headings or captions contained in this Agreement shall be for convenience of reference only and shall not affect the construction or interpretation of any provision of this Agreement.

(i)  **Business Days.**  If any date upon which action is required under this Agreement shall be a Saturday, Sunday or federally recognized legal holiday in the District of Columbia, the date for such action shall be extended to the first business day after such date that is not a Saturday, Sunday or legal holiday.

(j)  **Counterparts.**  This Agreement may be executed in several counterparts, each of which shall be an original, but all of which when taken together shall constitute one and the same instrument.

(k)  **Waiver.**  Either party may, at any time, elect to waive any breach or default by the other party, provided that such waiver shall be in writing and signed by the waiving party.

(l)  **Waiver of Jury Trial.**  Assignor and Assignee waive trial by jury in any action, proceeding or counterclaim brought by either of them against the other on any matter arising out of or in any way connected with this Agreement.

(m)  **Effective Date.**  The "Effective Date" shall mean the date on which this Agreement has been executed by both Assignee and Assignor.

(n)  **UST Disclosure.**  In accordance with Section 3(g) of the District of Columbia Underground Storage Act of 1990, as amended, Assignor hereby informs Assignee that Assignor has no knowledge of the existence or removal during Assignor's ownership of the Real Estate of any underground storage tanks as that term is defined in the referenced Act.

(o)  **D.C. Soil Disclosure.**  The characteristic of the soil of the Real Estate as described by the Soil Conversation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976, and as shown on the Soil Maps of the District of Columbia at the back of that publication is Ub Urban Land. For further information, Assignee can contact a soil testing laboratory, the District of Columbia Department of Environmental Services or the Soil Conservation Service of the United States Department of Agriculture.

*[Signatures Appear on Following Page]*

7

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first written above.

WITNESS/ATTEST:                         ASSIGNOR:

                                        **MID CITY DEVELOPMENT HOLDING COMPANY, LLC**

                                        By: METROPOLIS DEVELOPMENT COMPANY, LLC, Managing Member

                                        By: _____
                                            Robert Scott Pannick,
                                            Managing Member

WITNESS/ATTEST:                         ASSIGNEE:

                                        **METROPOLIS DEVELOPMENT COMPANY, LLC**

                                        By: _____
                                            Robert Scott Pannick,
                                            Managing Member

SEEN AND AGREED TO:

**U.S. PROPERTY DEVELOPMENT CORPORATION,**
a Delaware corporation

By: _____
    Richard R. Wojcik, Senior Vice President

NOV.19.2004  7:15PM  7  4485367                    NO.386   P.11

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

WITNESS/ATTEST:                          ASSIGNOR:

                                         MID CITY DEVELOPMENT HOLDING
                                         COMPANY, LLC

                                         By: METROPOLIS DEVELOPMENT
                                             COMPANY, LLC, Managing Member


_____                By:_____
                                             Robert Scott Pannick,
                                             Managing Member



WITNESS/ATTEST:                          ASSIGNEE:

                                         METROPOLIS DEVELOPMENT
                                         COMPANY, LLC



_____                By:_____
                                             Robert Scott Pannick,
                                             Managing Member



SEEN AND AGREED TO:

U.S. PROPERTY DEVELOPMENT CORPORATION,
a Delaware corporation


By:  _____
     Richard R. Wojcik, Senior Vice President

EXECUTION COPY
Word 45663906.7

**EXHIBIT D**

[DEED]

(*attached hereto*)

# SPECIAL WARRANTY DEED

**THIS SPECIAL WARRANTY DEED**, dated as of the __ day of October, 2004 is made by and between **MID CITY DEVELOPMENT HOLDING COMPANY, LLC**, a Delaware limited liability company having a business address of 1327 14th Street, N.W., Washington, D.C. 20005 ("Grantor"), and **METROPOLIS DEVELOPMENT COMPANY, LLC**, a District of Columbia limited liability company having a business address of 1327 14th Street, N.W., Washington, D.C. 20005 ("Grantee").

**WITNESSETH**, that for and in consideration of the mutual agreements and covenants of Grantor and Grantee as set forth in that certain Assignment and Assumption Agreement dated as of the __ day of October, 2004 (the "Assignment") entered into by and between Grantor and Grantee and other good and valuable consideration, Grantor does hereby grant and convey with special warranty unto the Grantee, in fee simple the following described land and premises, with improvements, including limited common elements, easements and appurtenances thereunto belonging, situate, lying and being in the District of Columbia, namely:

Assessment and Taxation Lot _____ in Square _____, more particularly described as Condominium Unit C-1 in 1401 Church Street Condominium (hereinafter called the "Condominium") which was constituted and established under the District of Columbia Condominium Act of 1976, as amended, by the Condominium Declaration recorded _____, _____, as Instrument Number _____ in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Declaration"), and by the Condominium Bylaws recorded _____, _____ as Instrument Number _____ in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Bylaws"), and by the Condominium Subdivision recorded _____, _____, in Condominium Book _____ at page _____ in the Office of the Surveyor of the District of Columbia (hereinafter called the "Condominium Plat and Plans").

**TOGETHER** with together with any present or future unused density allocated to the Condominium building and property, the Façade as more particularly described on Exhibit A attached hereto and made a part hereof, and all of the appurtenances incident to said Condominium Unit as contained in the Condominium Declaration.

The Condominium Declaration allocates to the Condominium Unit an undivided interest (stated as a percentage) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration.

This Deed is delivered and accepted subject to all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium Bylaws, the Condominium Subdivision, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of

Word 45664242.4

operation of the Condominium, which the Grantee(s) assume(s) and agree(s) to observe and perform as evidenced by the signature(s) on this instrument. These provisions shall be construed to run with the land and shall inure benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

This Deed is further delivered and accepted subject to the terms and conditions of that certain Assignment, which terms and conditions shall survive recordation of this Deed as between Grantor and Grantee.

**AND** the said Grantor hereby covenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

**IN WITNESS WHEREOF**, on this ___ day of October, 2004, Grantor has caused this Deed to be executed by Metropolis Development Company, LLC., its Managing Member; and Grantor does hereby appoint Metropolis Development Company, LLC, acting by and through R. Scott Pannick as Managing Member, as its true and lawful attorney-in-fact and in its name and to appear before any officer authorized by law to take and certify acknowledgements of conveyances of land in the District of Columbia, and then and there to acknowledge and deliver these presents as the act and deed of the Grantor limited liability company, and Grantee has caused this Deed to be executed by R. Scott Pannick its Managing Member acting as its true and lawful attorney-in-fact and in its name and to appear before any officer authorized by law to take and certify acknowledgements of conveyances of land in the District of Columbia, and then and there to acknowledge and deliver these presents as the act and deed of the Grantee limited liability company.

**GRANTOR:**

WITNESS:

MID CITY DEVELOPMENT COMPANY, LLC.
a District of Columbia limited liability company

By:    Metropolis Development Company, LLC
Its:    Managing Member

_____
Name

By:    _____
       R. Scott Pannick, Managing Member

**GRANTEE:**

WITNESS:

METROPOLIS DEVELOPMENT COMPANY, LLC
a District of Columbia limited liability company

_____
Name

By:    _____
       R. Scott Pannick, Managing Member

DISTRICT OF COLUMBIA          ) ss:

   I, _____, a Notary Public in and for the jurisdiction aforesaid do hereby certify that R. Scott Pannick, who is personally well known to me as the person names as Managing Member of Metropolis Development Company, LLC, the Managing Member of the Grantor in the foregoing Deed bearing date on the ___ day of October, 2004, personally appeared before me, and as the Managing Member of the Managing Member of the Grantor and by virtue of the authority vested in the Manager by said instrument, acknowledged said instrument to be the act and deed of said Grantor limited liability company, and that he delivered the same as such.

   WITNESS my hand and official seal this ___ day of October, 2004.


                _____
                Notary Public

[Notarial Seal]

My commission expires: _____


DISTRICT OF COLUMBIA          ) ss:

   I, _____, a Notary Public in and for the jurisdiction aforesaid do hereby certify that R. Scott Pannick, who is personally well known to me as the person named as Managing Member of Metropolis Development Company, LLC the Grantee in the foregoing Deed bearing date on the ___ day of October, 2004, personally appeared before me, and as the Managing Member of the Grantee and by virtue of the authority vested in the Manager by said instrument, acknowledged said instrument to be the act and deed of said Grantee limited liability company, and that he delivered the same as such.

   WITNESS my hand and official seal this ___ day of October, 2004.


                _____
                Notary Public

[Notarial Seal]

My commission expires: _____