## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEWART P. NEWELL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | )  Civil Action No. 07-2129 (RCL) |
| | ) |
| METROPOLIS DEVELOPMENT | ) |
| COMPANY, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## VERIFIED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff, Stewart P. Newell ("Newell"), through his undersigned counsel, hereby seeks a Temporary Restraining Order prohibiting Defendants' Metropolis Development Company, LLC ("Metropolis") and Robert Scott Pannick ("Pannick") from distributing the proceeds from the sale of Unit C1 at 1401 Church Street Condominium[1] and further requiring Metropolis and Pannick to maintain the proceeds of the sale of the Garden District Unit in an escrow account with counsel for Defendants until further Order from this Court, for the following reasons:

### I.    Introduction

As the Court is aware, Plaintiff withdrew his Motion to Compel Discovery from Defendants Without Prejudice [Dkt.#16] with considerable reservation because of concern that Defendants were in the process of negotiating a sale of the Garden District Unit. Plaintiff nevertheless withdrew said Motion based on Metropolis' assertion that Metropolis' principal, Pannick, has a serious medical condition [Dkt.#17] that is preventing him from attending to Metropolis' affairs, which induced

---

[1] It appears that Defendants' 7 day notice is defective on its face in that it describes a different property than the Garden District. Unit C1 at 1401 Church Street Condominium refers to the "Sales Center", which even Defendants admit is designated as repayment to Plaintiff.

Plaintiff to believe that Metropolis would not engage in any transactions until Pannick's health is restored and more complete discovery is provided to Plaintiff. Although Pannick has been too preoccupied with his medical condition to provide discovery to Plaintiff, Pannick is apparently well enough to negotiate the sale of perhaps the most valuable asset owned and/or controlled by Metropolis.[2]

Pursuant to a Joint Motion for Consent Order [Dkt.#11], on January 3, 2008, this Court entered an Order [Dkt.#13] stating, in pertinent part, as follows:

> "Defendants' Metropolis Development Company, LLC and Scott Pannick are prohibited from selling, encumbering or otherwise borrowing additional funds against the Remaining Company Projects known as … Unit CI at 1401 Church Street Condominium [i.e., the Garden District Unit]…without first providing seven (7) days written notice to Plaintiff's counsel of Defendants' intention to do so."

On April 17, 2008, counsel for Metropolis delivered a letter via electronic transmission and first class mail to counsel for Plaintiff providing "…seven (7) days written notice…of an intention to sell the premises known as Unit C1 at 1401 Church Street Condominium (the "Unit"). The parties intend to go to closing on the sale of the Unit in seven (7) days, on April 24, 2008." A true and correct copy of Metropolis' April 17, 2000 letter is attached hereto as Exhibit 1.

## II.     Material Facts

By way of contextual background, pursuant to a Redemption Agreement between the Parties, on September 29, 2003, Pannick and Metropolis agreed to purchase all of Plaintiff's right, title and interest in and to his Membership Interest and Percentage Interest in Metropolis. The purpose of the Redemption Agreement was to buy-out Newell's Interest entirely so that Pannick could become the sole owner and manager of Metropolis. A true and copy of the Redemption Agreement is attached hereto as Exhibit 2.

---

[2] As explained below, immediately after the filing of the instant lawsuit, Metropolis conveyed the Garden District Unit to an entity known as "RSP II Revocable Trust" for *no consideration*. The sole Trustee of the RST II Revocable Trust is Robert Scott Pannick (whose name corresponds to the initials of the Revocable Trust).

On February 7, 2004, pursuant to the First Amendment to Redemption Agreement, a copy of which is attached hereto as Exhibit 3, the Parties agreed that the total principal amount to be paid to Newell for his Membership Interest is Two Million Two Hundred Seven Thousand Nine Hundred Seventy-Two Dollars ($2,207,972).

The Redemption Agreement provides Newell with security that the amount owed to him would be paid by way of a priority distribution of all of the Company's "Available Cash" defined as "all cash distributions received by the Company with respect to *Company Projects* (emphasis added)." See Exhibit 2 at 2. The Company Projects consist of four (4) development projects that Metropolis was in the process of developing when the Redemption Agreement was executed. The Company Projects are identified in Exhibit A to the Redemption Agreement.[3] In addition to Metropolis' obligation to make payments to Newell from all Available Cash from the Company Projects, the outside date for payment of all amounts owed to Plaintiff was December 31, 2005. See Exhibit 2 at 2. Not only has Metropolis failed to make payment to Plaintiff by December 31, 2005, but it has repeatedly failed to make payment to the Plaintiff from Available Cash received by Metropolis and Pannick from the sale of retail units within the Company Projects.

Because, by the very nature of the Redemption Agreement, when Plaintiff left Metropolis all knowledge and information relating to Metropolis' ongoing activities and financial transactions became exclusively within Metropolis' and Pannick's knowledge, Plaintiff is unable to assert his position in this litigation without full and accurate disclosure from Defendants. Moreover, from the outset of this case Plaintiff has emphasized his need to obtain information from Defendants to be in a position to file for a temporary restraining ("TRO") to protect Plaintiff's position order in the event that any of the Remaining Assets within the Company

---

[3] Metropolis developed the Company Projects with a partner. As a result, Metropolis' percentage interest in each Company Project is disclosed under the heading "Company Interest" contained on Exhibit A to the Redemption Agreement, Exhibit 4 hereto.

Projects are at immediate risk of being sold and the proceeds dissipated.  See Plaintiff's Response to Defendants' Motion for Enlargement of Time at pages 1 - 2 [Dkt.#8].  Plaintiff's concern led to the filing of the Joint Motion for Consent Order [Dkt.#11] and this Court's entry of the January 3, 2008 Order [Dkt.#13] specifically stating that the Garden District Unit is one of the Remaining Company Projects and prohibiting Metropolis and Pannick from selling, encumbering or otherwise borrowing additional funds against the Garden District Unit without providing adequate notice to Plaintiff.  The Joint Motion for Consent Order clearly states that is the purpose for this notice provision is to provide Plaintiff with adequate time to file a motion for TRO before a Remaining Company Project is sold.

As explained in Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion to Compel Discovery and Withdraw of a Motion to Compel Without Prejudice [Dkt.#18], Plaintiff filed a Motion to Compel Discovery based upon his concern that Metropolis was in negotiations to sell the Garden District Unit.  The Motion to Compel was filed only after Plaintiff waited twenty (20) days beyond the timeframe when Defendants' discovery was due and after Defendants' counsel expressly stated that they had no intention to provide discovery (first due to an alleged settlement and then due to Defendants' claimed imminent bankruptcy).  Plaintiff subsequently withdrew his Motion to Compel "…*out of empathy for Pannick and because Defendants have belatedly provided some of the discovery, albeit incomplete*…." [Dkt.#18 at page 2, paragraph 5].

Defendants' discovery is not only incomplete, it is outright factually wrong and raises more questions than answers. For example, Plaintiff's Interrogatory No. 2 asks questions concerning one of the Company Projects known as the Cooper Lewis Condominium.  Plaintiff had reason to believe that Metropolis received sufficient Available Cash from the sale of the

Cooper Lewis Condominium alone to make full payment to Newell under the Redemption Agreement. In Metropolis' Answer to this Interrogatory, it claims that Metropolis purchased this retail unit from Mid-City Development Company II ("Mid-City") for $1,676,404. Metropolis then claims that in a subsequent transaction on the same date, September 14, 2006, Metropolis sold the Cooper Lewis Condominium to a third party for $4,675,388 thereby realizing a profit of $2,998,984 on this Company Project through two separate transactions on the same date. Moreover, Metropolis claims that none of this profit was "Available Cash" within a Company Project because it claims there were two separate arms-length transactions which allegedly takes the sale of the Cooper Lewis Condominium out of the Company Projects. A true and correct copy of Metropolis' Answer to Plaintiff's Interrogatory No. 2 is attached hereto as Exhibit 3.

While Plaintiff does not concede the validity of Metropolis' convoluted position, it is unnecessary to unravel this question because Metropolis did not answer Interrogatory No. 2 candidly. A closer look at the Settlement Statement concerning the purchase and sale of the Cooper Lewis Condominium reveals that there was only a single real estate transfer from Mid-City (as Seller) to Jonathan and William West (as Purchasers). A true and correct copy of the "Cooper Settlement Statement" is attached hereto as Exhibit 4. Moreover, on page 2 of the Settlement Statement, line 1305, includes an "Assignment Fee" alluding to $2,983,630 which was transferred to Metropolis as Available Cash from the sale by Mid-City to West of the Company Project known as the Cooper Lewis Condominium. As admitted by Metropolis in its Answer to Interrogatory No. 6, shortly following the sale of the Cooper Lewis Condominium, on October 13, 2006, Metropolis paid only $550,000 to Newell (significantly less than the Available Cash generated from the sale of the Cooper Lewis Condominium). See Exhibit 3 hereto.

With regard to another "Company Project", Langston Lofts (See Exhibit 3), in Metropolis' Answer to Interrogatory No. 3, it freely admits that although no payment from Available Cash attributable to the sale of the Langston Project – Company Project was made to Plaintiff, $250,000 was transferred to another of Pannick's associates, Merrick Malone.  See Exhibit 3 hereto.  With regard to the other "Remaining Company Project" that is subject to this Court's Order prohibiting a sale, the Unit known as the "Sales Center", Metropolis admits that this Unit is a Company Project and is worth approximately $2,000,000, but it is not listed for sale and is being used by Pannick as a Sales Center for an entirely new and unrelated project that Pannick has undertaken known as "Metropole Condominium" that does not appear to even involve Metropolis.  See  Exhibit 3 hereto.  Moreover, as alluded to in Footnote 1 hereof, immediately after the Complaint was filed (November 26, 2007), on November 27, 2007, Metropolis transferred the Sales Center to an Irrevocable Trust under the name "RSP I Revocable Trust", with Robert Scott Pannick as Trustee.  A true and correct certified copy of the Deed for this conveyance is attached hereto as Exhibit 5.  Additionally, and more to the point of the instant Motion, also on November 27, 2007, Metropolis transferred the Garden District Unit to the "RSP II Revocable Trust", also identifying Robert Scott Pannick as Trustee "for no consideration."  A true and correct certified copy of this transaction is attached hereto as Exhibit 6.  Defendants' transfer of the Remaining Company Projects, subject to this Court's Order dated January 3, 2008 [Dkt.#13], clearly constitute fraudulent conveyances.

### III.     Argument

### A.     Standard for Granting a TRO

In considering an application for a temporary restraining order, the Court must consider four (4) factors:  (1) whether there is a substantial likelihood that the plaintiff will prevail on the

merits; (2) whether the plaintiff will suffer irreparable injury if the temporary restraining order does not issue; (3) the hardship to the defendants if the temporary restraining order is granted is balanced against the hardship to the plaintiff if the temporary restraining order is not granted; and (4) whether the public interest favors granting the preliminary relief requested. Boehringer Ingelheim Corporation v. Shalala, 993 F. Supp. 1, 1 (D.D.C. 1997)(citing Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 843-44 (D.C. Cir. 1977). The test is a flexible test such that these factors must be weighed in relation to each other. Consequently, a weak showing on one factor may be outweighed by a strong showing on another. Sereno Labs., Inc. v. Shalala, 158 F. 3d 1313, 1318 (D.C. Cir. 1998); CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).

Again, from the outset of this case, Plaintiff has emphasized his need to obtain information from Defendants to be in a position to file for a temporary restraining ("TRO") to protect Plaintiff's position order in the event that any of the Remaining Assets within the Company Projects are at immediate risk of being sold and the proceeds dissipated. Plaintiffs have been denied this information by the incomplete and disingenuous discovery responses, and stood down from any efforts to compel adequate discovery responses based upon the representations of Defendant Pannick's medical condition.

Plaintiff's seven (7) day-notice of going to settlement on the Garden District Unit certainly violated the letter, if not the spirit of the Joint Motion and Consent Order entered by this Court inasmuch Defendants were required to provide seven (7) days notice of an "intent" to sell, which would have occurred at some point prior to April 17, 2008, with the execution of a contract of sale. Under these circumstances, Plaintiff will suffer irreparable injury if a temporary restraining order does not issue by virtue of the threatened dissipation of assets by Defendants. Clearly, the

hardship on the Plaintiff is grossly outweighed by any potential hardship on the Defendants. Plaintiff is not asking this Court to prevent the sale from growing forward, but rather, Plaintiff is merely seeking the very limited relief of preventing the distribution of the proceeds from the sale of Unit C1 at 1401 Church Street Condominium and further requiring Metropolis and Pannick to maintain the proceeds of the sale of the Garden District Unit in an escrow account with <u>counsel for Defendants</u> until further Order from this Court.

WHEREFORE, Plaintiff, Stewart P. Newell ("Newell"), through his undersigned counsel, hereby seeks a Temporary Restraining Order prohibiting Defendants' Metropolis Development Company, LLC ("Metropolis") and Robert Scott Pannick ("Pannick") from distributing the proceeds from the sale of Unit C1 at 1401 Church Street Condominium and further requiring Metropolis and Pannick to maintain the proceeds of the sale of the Garden District Unit in an escrow account with counsel for Defendants until further Order from this Court.

Respectfully submitted,

/s/ James A. Sullivan, Jr.
_____
James A. Sullivan, Jr.
(D.C. Bar No. 475145)
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850
Telephone (301) 762-1600
Facsimile (301) 762-0363
E-mail:  jsullivan@milesstockbridge.com

/s/ Richard A. DeTar

_____

Richard A. DeTar
(*Pro Hac Vice* Admission)
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
Telephone (410) 820-0224
Facsimile (410) 822-5450
E-mail:  rdetar@milesstockbridge.com

Attorneys for Plaintiff Stewart P. Newell

## **VERIFICATION**

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON APRIL 18, 2008.

4-18-08
_____

Date

_____

Stewart P. Newell

LAW OFFICES

Andrew J. Kline (DC & MD)
akline@klinelawdc.com

Scott H. Rome (DC & MD)
srome@klinelawdc.com

Bryan K. Short (DC & VA)
bshort@klinelawdc.com

Terrence P. Brennan, Legal Assistant/
License Administrator
tbrennan@klinelawdc.com

# ANDREW J. KLINE

1225 NINETEENTH STREET, N.W.
SUITE 320
WASHINGTON, D.C. 20036

(202) 686-7600
FAX (202) 293-3130

April 17, 2008

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Richard A. DeTar
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
(410) 820 - 0224

James A. Sullivan, Jr.
Miles & Stockbridge, P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850

      **RE:**   *Stewart P. Newell v. Metropolis Development Company, LLC et. al.*

Dear Rad:

      Pursuant to the Order dated January 3, 2008, in the above captioned action, this letter shall serve as the seven (7) days written notice to Plaintiff's counsel of an intention to sell the premises known as Unit C1 at 1401 Church Street Condominium (the "Unit"). The parties intend to go closing on the sale of the Unit in seven days, on April 24, 2008. Furthermore, Defendant notes that despite the language of the Consent Order describing the Unit as within the "Remaining Company Projects," the Unit is not within the "Company Projects" as that term is defined in the Redemption Agreement.

      If you wish to discuss matter, please do not hesitate to contact me.

Very truly yours,

Andrew J. Kline

**EXHIBIT**

1

# REDEMPTION AGREEMENT

**THIS REDEMPTION AGREEMENT** (the "Agreement") is made and entered into this ___ day of September, 2003, by and among METROPOLIS DEVELOPMENT COMPANY, LLC, a District of Columbia limited liability company (the "Company"), ROBERT SCOTT PANNICK ("Pannick"), an individual residing at ~~3104 ⟨illegible⟩ N, NW Unit, ⟨illegible⟩~~ and ~~STEWARD⟩ P. NEWELL~~ ("Newell"), an individual residing at ~~⟨illegible⟩ New W, NW⟩ DC.~~

## RECITALS:

**A.** Pannick and Newell are all of the Members of the Company. The Company was formed pursuant to Articles of Organization filed in the District of Columbia Department of Consumer and Regulatory Affairs on April 21, 1998. The affairs of the Company are governed by that certain Limited Liability Company Agreement dated October 1, 2002 (the "LLC Agreement"). All terms used in this Agreement in a capitalized fashion and not otherwise defined herein shall be deemed to have the meanings assigned to them in the LLC Agreement.

**B.** As of the date of this Agreement, Pannick holds a fifty percent (50%) Percentage Interest in the Company and Newell holds a fifty percent (50%) Percentage Interest in the Company.

**C.** The Company was formed by Pannick and Newell to acquire, finance, develop, lease, manage and operate real property located in the District of Columbia and in the surrounding metropolitan area. As of the date of this Agreement, the Company has interests in certain real property and related projects as set forth on <u>Exhibit "A"</u> (the "Company Projects").

**D.** The Company and Newell have agreed that the Company will terminate all of Newell's right, title and interest in and to his Membership Interest and Percentage Interest in the Company on the terms and conditions set forth below.

**E.** Prior to the execution of this Agreement, the Company distributed equally to Pannick and Newell the Company's entire right, title and interest in and to its 100% membership interest in 15th and P LLC. Thereafter, Pannick acquired Newell's membership interest in 15th and P LLC pursuant to an Assignment and Purchase Agreement entered into by and between Pannick and Newell.

**F.** Payments of the Redemption Amount (defined below) are intended by the parties hereto to be treated as payments in exchange for Newell's interest in the Company's property as set forth in Section 736(b) of the Internal Revenue Code of 1986, as amended.

**NOW, THEREFORE,** in consideration of the Recitals set forth above, which are hereby incorporated into and made a material part of this Agreement, the mutual premises contained below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Company, Pannick and Newell agree as follows:

Word 45647416.7

EXHIBIT

2

1.    **Termination of Interest.**  Pursuant to this Agreement, the Company will terminate Newell's entire right, title and interest in and to his Membership Interest and Percentage Interest in the Company (the "Interest").  Newell agrees to execute and deliver all documents that counsel for the Company deems necessary or appropriate for the Company to terminate the Interest.  The Interest shall automatically be deemed terminated at midnight on the date the Company distributes in full to Newell the Redemption Amount (defined below) in accordance with the terms and conditions of this Agreement.  Upon execution of this Agreement, the Company will no longer allocate to Newell any share of the Company's Profits and Losses (as defined in the LLC Agreement).  The LLC Agreement is hereby amended to allocate to Pannick one hundred percent (100%) of all future Profits and Losses.

2.    **Redemption Amount.**  Subject to Paragraph 3 below, the Company shall distribute to Newell in redemption of his Interest the sum of One Million Six Hundred Eleven Thousand Dollars ($1,611,000) (the "Redemption Amount").

3.    **Timing.**  The Company shall distribute the Redemption Amount to Newell as follows:

a.    Notwithstanding anything in the LLC Agreement to the contrary, prior to making any distributions to Pannick of Available Cash (defined below) the Company shall make priority distributions of its Available Cash to Newell until the balance of the Redemption Amount is distributed in full.  For purposes of this Agreement, the term Available Cash shall mean all cash distributions received by the Company with respect to Company Projects excluding (i) the first Five Hundred Thousand Dollars ($500,000) available from Company Projects shall be distributed to Pannick in connection with his purchase of Newell's interest in 15th and P LLC, and (ii) amounts paid to the Company in connection with its fee agreements for each of the Company Projects.  Furthermore, Pannick shall agree to contribute to the Company any distributions received by him from Uptown Partners LLC to be used by the Company as payment to Newell of the Redemption Price.  Newell shall have no right to receive any distributions that arise from monies received by the Company from projects other than the Company Projects, and any Available Cash from such other projects shall be distributed, reserved or otherwise allocated by Pannick in his sole discretion as Manager; *provided, however*, that Pannick shall cause the Company to (i) keep monies received from Company Projects separate and apart from monies received from any other projects and (ii) maintain separate books and records for each Company Project and any other projects the Company may have.  The Deferred Distribution shall be fully distributed not later than December 31, 2005 (the "Outside Distribution Date").  The Company will distribute the Redemption Amount from Available Cash within a reasonable time after the date the Company receives funds from transactions involving the Company Projects, but in any event no later than ten (10) business days after receipt.

b.    The Redemption Amount shall be adjusted as follows:  1) If the values shown on any of the Project Pro Formas (as defined in Paragraph 6 below) materially increase or decrease during the period from the date of this Agreement through December

2

1, 2003, then the Redemption Amount shall be adjusted by an amount equal to fifty percent (50%) of the amount of such material increase or decrease. 2) The Redemption Amount shall be reduced by the amount of any distributions by the Company to Newell that are made during the period from the date of this Agreement through the last day Newell serves as Manager. If Pannick and Newell are unable to agree on the amount of the adjustments hereunder, such disagreement shall be settled by arbitration in accordance with the rules of the American Arbitration Association for accelerated arbitration then in effect and judgment on the award may be entered in any court having jurisdiction.

      c.     The Company will endeavor to distribute the Redemption Amount to Newell in such a manner that will minimize the income tax burden to Pannick and Newell.

    4.    **Interest.** The Redemption Amount shall be interest-free; *provided, however,* that if the Company has not distributed the entire Redemption Amount to Newell on or before December 31, 2004, then interest shall commence to accrue on any unpaid portion of the Redemption Amount on January 1, 2005, at the rate of ten percent (10%) per annum until the Company has distributed the entire Redemption Amount.

    5.    **Management.** Newell has been serving as Manager of the Company and as "tax matters partner" since the Company's formation. Newell shall continue to serve as Manager and "tax matters partner" subject to the terms and conditions of the LLC Agreement until the Effective Date. For purposes of this Agreement, the term "Effective Date" shall mean the date which is the later to occur of (i) the start date for construction of the development of the 1400 Church Street Condominium Project, or (ii) January 2, 2004. Newell's power and authority to act on behalf of the Company, serve or hold himself out as the Manager of the Company, or otherwise legally bind the Company shall terminate automatically upon the Effective Date without further action by the Company, Newell or Pannick, at which time Pannick shall for all purposes be deemed to be the Manager and the "tax matters partner" of the Company, with sole power and authority to act on behalf of and legally bind the Company. Newell shall continue to receive salary at the rate of Ten Thousand Dollars ($10,000.00) per month as his sole compensation from the Company during the remainder of his term as Manager, and shall not pay to himself any other amounts from Company funds other than reimbursement of expenses incurred in the normal course of Company business.

    6.    **Certain Matters Regarding Operation of the Company.** The business affairs of the Company are to be run for the duration of Newell's term as Manager in accordance with (i) the *pro formas* for each of the three Company Projects set forth on Exhibit "A" (the "Project Pro Formas"), copies of which are attached hereto as Exhibit "B", and (ii) the Operating Budget currently in effect, a copy of which is attached hereto as Exhibit "C". Any material changes or material deviations from any Project Pro Forma or the Operating Budget shall be actions that require unanimous approval of the Members as a Major Decision pursuant to Section 8.7 of the LLC Agreement. Newell shall cooperate with Pannick to the extent reasonably requested in

3

transferring all bank account authority (including, but not limited to, signing authority) to Pannick effective as of the date Newell ceases to be Manager. Except with respect to any material change from the Project Pro Formas or the Operating Budget as set forth in this Section 6, upon the Effective Date, Newell's right to vote with respect to any Major Decisions, as that term is defined in the LLC Agreement, shall be terminated.

7.     **Reporting; Audit Rights.**  Commencing on the date Pannick becomes Manager and continuing until such time as the Redemption Amount has been distributed in full, Pannick shall provide to Newell all reports and tax information required to be provided by the Manager to Members under the LLC Agreement. In addition, Pannick will provide Newell with copies of all reports given to lenders or partners in Company Projects. Not more often than quarterly during the period between (i) the date Newell ceases to be Manager pursuant to Paragraph 5 above and (ii) the date the Redemption Amount is distributed in full, Newell shall have the right, upon not less than ten (10) days' written notice to Pannick, to audit the books and records of the Company with respect to the Company Projects during normal business hours.

8.     **Indemnifications.**  Newell and Pannick each agree to indemnify and hold harmless the Company and one another as follows:

a.     Newell shall indemnify, hold harmless and defend the Company and Pannick from and against any and all losses, claims, damages, liabilities, joint or several, expenses (including, without limitation, attorneys fees and other legal fees and expenses), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, that relate to the business activities of the Company as set forth in the LLC Agreement during the period he served as Manager if it is established that (i) the act or omission of Newell was material to the matter giving rise to the proceeding and either was committed in bad faith or was the result of active and deliberate dishonesty; (ii) Newell actually received an improper personal benefit in money, property or services; or (iii), in the case of any criminal proceeding, Newell had reasonable cause to believe that the act or omission was unlawful. In addition, Newell shall indemnify and hold harmless the Company and Pannick from and against damages for any action taken by him negligently or not in good faith in connection with the examination by the Internal Revenue Service of the Company's Federal partnership tax return or the determination, protest, adjustment or adjudication of any Federal or state income tax liability of any Member resulting from the Company during any tax year in which he was Manager.

b.     Pannick shall indemnify, hold harmless and defend the Company and Newell from and against any and all losses, claims, damages, liabilities, joint or several, expenses (including, without limitation, attorneys fees and other legal fees and expenses), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, that relate to the business activities of the Company as set forth in the LLC Agreement during the period he served as Manager if it is established that (i) the act or omission of Pannick was material to the matter giving rise to the proceeding and either was committed in bad faith or was the result of active and deliberate dishonesty; (ii) Pannick

4

actually received an improper personal benefit in money, property or services; or (iii), in the case of any criminal proceeding, Pannick had reasonable cause to believe that the act or omission was unlawful. In addition, Pannick shall indemnify and hold harmless the Company and Newell from and against damages for any action taken by him negligently or not in good faith in connection with the examination by the Internal Revenue Service of the Company's Federal partnership tax return or the determination, protest, adjustment or adjudication of any Federal or state income tax liability of any Member resulting from the Company during any tax year in which he was Manager.

c.    Pannick and Newell each have provided personal non-competition agreements in connection with the Mid-City Development Company, LLC project. Each of them shall indemnify, hold harmless and defend the Company and each other from and against any and all losses, claims, damages, liabilities, joint or several, expenses (including, without limitation, attorneys fees and other legal fees and expenses), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings arising under or relating to a breach of such personal non-competition agreement by the indemnifying party. In addition, Pannick and Newell have provided U. S. Property Development Company Inc. ("USP"), a partner in Mid City, indemnification agreements covering certain guarantee agreements provided by USP to a lender under Company Projects. Pannick agrees to indemnify and hold Newell harmless with respect to Newell's obligations under the indemnification agreements in the event that (i) USP seeks to enforce its indemnification agreements against Pannick and Newell, (ii) such enforcement action arises with respect to any matter or event contemplated under USP's guarantees to the lender of a Company Project, and (iii) such matter or event occurs after the Effective Date.

9.    **Acknowledgements; Certain Waivers.** This Agreement and the Redemption Amount are the result of arms-length negotiations between the Company, Pannick and Newell and that each of them enters into this Agreement of their own free will, having had the opportunity to consult with independent legal counsel of their choosing and understands each and every one of the terms contained in this Agreement. Pannick and Newell each waives the requirements of Article XIII of the LLC Agreement with respect to Permitted Transfers, and acknowledge and agree that upon the consummation of the transaction contemplated in this Agreement, at which time Pannick will be the Company's sole Member, the Company's status as a partnership will be terminated for federal tax purposes. In addition, Pannick and Newell each waives any rights either of them may have under Article XIV of the LLC Agreement with respect to buy-sell.

10.    **No Implied Modifications.** Except as expressly modified herein, the LLC Agreement remains in full force and effect as originally signed, *provided, however,* that if any provision of this Agreement conflicts with the terms and conditions of the LCC Agreement, the provisions of this Agreement shall be controlling.

11.    **Entire Agreement.** Other than the Miscellaneous Issues described in Exhibit D hereto, there are no other oral or written agreements among the parties hereto with respect to the subject matter of this Agreement, and this Agreement constitutes the entire Agreement among

the Company, Pannick and Newell with respect to the termination of all of Newell's right, title and interest in and to the Company and the Company Projects.

12.    **Governing Law; Jurisdiction.**    This Agreement shall be governed by and interpreted in accordance with the laws of the District of Columbia, without regard to or application of the District's principles of conflict of laws.  The Company, Pannick and Newell hereby consent to the jurisdiction of the courts of the District of Columbia with respect to any dispute among them arising from or relating to this Agreement and the consummation of the transaction contemplated herein.

13.    **Counterparts; Facsimile.**    This Agreement may be executed in multiple counterparts, all of which when taken together shall be deemed to be one and the same instrument.  Facsimile signatures shall be deemed to be original signatures.

14.    **No Recordation.**  The Company, Pannick or Newell shall not attempt to record this Agreement or any memorandum or summary of this Agreement in the records of any jurisdiction in which the Company, directly or indirectly, does business.

15.    **Further Approvals.**  This Agreement shall be of no force and effect until such time as USP provides its written consent to this Agreement.

*[Signatures are on the next page.]*

6

IN WITNESS WHEREOF, the undersigned have executed and delivered this Agreement as of the date first set forth above.

METROPOLIS DEVELOPMENT COMPANY, LLC, a District of Columbia limited liability company

By: _____
Stewart P. Newell, Manager

ROBERT SCOTT PANNICK

_____

STEWART P. NEWELL

_____

7

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**STEWART P. NEWELL**

      **Plaintiff,**

              **v.**

**METROPOLIS DEVELOPMENT
COMPANY, LLC et. al.**

      **Defendants.**

Case Number 1:07CV02129
Judge: Royce C. Lamberth

## DEFENDANT METROPOLIS DEVELOPMENT COMPANY LLC'S RESPONSES TO PLAINTIFF'S INTERROGATORIES

      Defendant Metropolis Development Company, LLC, by and through undersigned

counsel, hereby responds to the Interrogatories of Plaintiff as follows:

Introductory Statement

      (a)     The information contained in these Responses is being provided in accordance

with the provisions and intent of the rules of the United States District Court for the District of

Columbia, which require the disclosure of all facts which may be relevant or may lead to the

discovery of relevant information. Accordingly, the party answering these Interrogatories, by

providing the information requested, does not waive objections to its admission in evidence on

grounds of materiality or relevancy or other proper grounds for objection.

      (b)     The information supplied in these answers is not based solely on the knowledge of

the executing party, but includes knowledge of the party, its agents and/or employees,

representatives and attorneys unless privileged.

      (c)     The word usage, sentence structure, and syntax may be that of the attorney

assisting in the preparation of these Answers, and thus, does not necessarily purport to be the

**EXHIBIT**

3

precise language of the executing party.

## I. GENERAL RESPONSES

A. Defendant 's Responses to Plaintiffs Interrogatories are made to the best of their present knowledge, information, and belief. Said response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Defendant 's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result form their further discovery or investigation.

B. Defendant reserves the right to make any use of, or to introduce at any hearing and at trial, documents responsive to Plaintiffs Interrogatories but discovered after the date of Defendant 's initial production, including, but not limited to, any documents obtained in discovery herein.

C. Defendant reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of this response and any document or thing produced in response to Plaintiff's discovery.

D. Defendant reserves the right to object on any ground at any time to such other or supplemental Interrogatories as Plaintiff may at any time propound involving or relating to the subject matter of these interrogatories.

## II. GENERAL OBJECTIONS

Defendant makes the following general objections, whether or not separately set forth in response to each document request, to each and every instruction, definition, and Interrogatory. Each of the following objections are expressly incorporated into each subsequent specific

response or objection to individual Interrogatories:

A. Defendant objects to the introductory definitions and instructions to the interrogatories to the extent that such definitions or instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific interrogatory on the ground that such enlargement, expansion, or alteration renders such request vague, ambiguous, unintelligible, unduly broad, and uncertain.

B. Defendant objects to all instructions, definitions and interrogatories to the extent they seek information not currently in their possession, custody or control, or refer to persons, entities or events not known to Defendant, on the grounds that such instructions, definitions, or interrogatories seek to require more of Defendant than any obligation imposed by law, would subject Defendant to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Defendant an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to Defendant.

C. Defendant further objects to all of the requests that generally or specifically refer to records of fictitious entities, and not of an identifiable person. To the extent that these interrogatories ask for any other "PERSONS" acting on behalf of the entity, such request is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and is intended solely to harass Defendant .

D. Defendant further objects to all of the interrogatories in that they seek information for an irrelevant time period.

III. SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:**        Please provide an accounting with respect to the retail unit known as "Lofts 14 II – C2" within the Company Projects on or after September 29, 2003, including, but not limited to, the following information:

(a)        The price or other consideration that Metropolis paid to acquire this retail unit, the name of the Seller and the date of the transfer of this unit to Metropolis;

(b)        The price that Metropolis sold this unit for, the name of the purchaser and the date of the transfer of this unit from Metropolis;

(c)        The amount that Metropolis paid to Newell from the net proceeds of Metropolis' sale of this unit; and

(d)        A complete accounting of how the proceeds of Metropolis' sale or conveyance of this unit were distributed including, but not limited to: (i) the identity of each person or entity to whom Metropolis made or directed a payment from the proceeds, (ii) the amount of each such payment, and (iii) an explanation of the specific nature of Metropolis' financial obligation to each such person or entity giving rise to a payment made to this person or entity from the sale or conveyance of this particular retail unit within the Company Projects. To the extend that payments or distributions were made to any person or entity on behalf of, or the benefit of, Metropolis or Pannick, your answer to (d) (iii) should include this information.

**RESPONSE: Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" of the unit since 2003 would be unduly burdensome and require a complete audit and revue of all Company actions. Without waiving any objections, Defendant responds to the subparts of this interrogatory as follows:**

**Defendant does not concede that Lofts 14 II - C2 is "within the Company Projects" as defined by the Redemption Agreement**

**(a) The units collectively known as B Retail Space, including units C1 and C2 of the 1400 Church Street Condominium, were purchased for $1,808,241.00, from Mid City Development Company II on January 12, 2007;**

**(b) The unit was sold for a contract sales price of $1,850,00.00 million, to Gould FDX, LLC, on November 9, 2007;**

**(c) Metropolis paid Newell $900,000.00 just prior to the sale of this unit, from funds borrowed from BTR Capitol Fund III, LLC;**

**(d) Attached hereto is the HUD-1 Settlement Statement dated November 9, 2007, which reflects net proceeds of $5,224.50 received by Metropolis.**

**INTERROGATORY NO. 2:** Please provide an accounting with respect to the retail units known as Units C1 and C2 within the Company Project known as Project C (Cooper Lewis Condominium) on or after September 29, 2003, including, but not limited to, the following information:

(a)        The price or other consideration that Metropolis paid to acquire this retail unit, the name of the Seller and the date of the transfer of this unit to Metropolis;

(b)        The price that Metropolis sold this unit for, the name of the purchaser and the date of the transfer of this unit from Metropolis;

4

(c)    The amount that Metropolis paid to Newell from the net proceeds of Metropolis' sale of this unit; and

(d)    A complete accounting of how the proceeds of Metropolis' sale or conveyance of this unit were distributed including, but not limited to; (i) the identify of each person or entity to whom Metropolis made or directed a payment from the proceeds, (ii) the amount of each such payment, and (iii) an explanation of the specific nature of Metropolis' financial obligation to each such person or entity giving rise to a payment made to this person or entity from the sale or conveyance of this particular retail unit within the Company Projects. To the extend that payment or distributions were made to any person or entity on behalf of, or for the benefit of, Metropolis or Pannick, your answer to (d) (iii) should include this information.

**RESPONSE: Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" of the unit that includes information since 2003 would be unduly burdensome and require a complete audit and revue of all company actions.**

**Defendant does not concede that these units are "within the Company Projects" as defined by the Redemption Agreement as the units were purchased at market value after the date of the Redemption Agreement.**

**Without waiving any objections, Defendant responds to the subparts as follows of this interrogatory as follows:**

**(a) The total price was $1,676,404, paid to Mid City Development Company II, on September 14, 2006.**

**(b) The unit was sold for $4,675,388, to Jonathan West on September 14, 2006.**

**(c) After the sale of this unit, Metropolis paid Newell $550,000.00 on October 13, 2006.**

**(d) Attached hereto is a copy of the HUD-1 settlement statement dated September 14, 2006 reflecting disbursements from settlement.**

**INTERROGATORY NO. 3:**  Please provide an accounting with respect Uptown Partner's use of any proceeds from the sale or conveyance of any units within the Langston Project on or after September 29, 2003 to make payments or distributions to, or for the benefit of, Metropolis and/or Pannick, including, but not limited to, the following information:

(a)    The identity of each person or entity to whom Uptown Partners made or directed a payment from the proceeds form the sale or conveyance of any units within the Langston Project on or after September 29, 2003, including, but not limited to, the brokerage firm known as Julian J. Studley, Inc., or any affiliates thereof, and

(b)    The date and amount of each such payment.

**RESPONSE: Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" dating back to 2003, would include a full review of company actions since 2003, would be unduly burdensome and require a complete audit and revue of all company actions during this time period.**

5

**Without waiving any objections, Defendant states that no distributions were made to Pannick, or anyone else, and that proceeds from the sale or conveyance on units within Langston Project went into Metropolis accounts and were used solely for company operations such as salaries of company employees, rent, and operating expenses, with the exception being that $250,000.00 was paid to Merrick Malone. No payments were made to Julian J. Studley, Inc.**

**INTERROGATORY NO. 4**: Please provide a complete explanation for all income and/or other consideration that Metropolis has, or could have, derived, or will derive, from Lofts 14 – Unit C1 on an annual basis from September 29, 2003 through the date of trial, including, but not limited to, the following information:

(a)     The price or other consideration that Metropolis paid to acquire this retail unit, the name of the seller or transferor and the date of the transfer of this unit to Metropolis;

(b)     The approximate fair market sales value of this retail unit at the time it was acquired by Metropolis and its approximate fair market sales value as of the date of your answer to this Interrogatory (you may provide a reasonable range for your estimates);

(c)     The date when this retail unit was ready for occupancy;

(d)     Explain your efforts to sell or lease this unit since you acquired it including whether it has ever been listed for sale and the list price;

(e)     If you have never listed this unit for sale or otherwise attempted to sell it explain why not;

(f)     What is your estimate of the fair market rental value for this Unit on an annual basis since it was first ready for occupancy through the date of trial (you may provide a reasonable range for your estimate);

(g)     What, if any, rental payments or other economic benefit(s) have you received attributable to this retail unit for each year requested;

(h)     Who has been occupying this retail unit for each of the years requested;

(i)     In the event that Metropolis has been occupying this retail unit, explain the purpose or purposes for which Metropolis has been occupying this retail unit for each year requested including, but not limited to, whether Metropolis has been using this retail unit as a sales center for projects other than the Company Projects and when, if ever, Metropolis intends to vacate this retail unit and offer it for sale; and

(j)     In the event that Metropolis sells this unit, explain whether you contend that Newell is entitled to any of the proceeds of the sale pursuant to the Redemption Agreement and if so what, if any proceeds you claim should be paid to any other person or entity ahead of Metropolis' obligation to Newell.

**RESPONSE: Defendant states that Metropolis derived $79,300.00 in rental income from Mid City Development Company. In response to the lettered sub-parts Metropolis states as follows:**

**(a) The transfer of this unit was in accordance with the Assignment and Assumption and Agreement dated November 19, 2004, and attached hereto;**

6

(b) **The unit was worth approximately $1,097,321 at time the unit was transferred. and approximately $2,000,000 as of March 25, 2008;**

(c) **November 16, 2002;**

(d) **The unit was never listed for sale;**

(e) **The unit was not listed for sale because it has been  in continuous use as a sales center;**

(f) **The fair market rental value is estimated at $20/square foot in 2005, $25/ square foot in 2006, $35/ square foot in 2007, and $50/ square foot in 2008;**

(g) **Approximately $79,300.00 as follows:   2005 – $25,490;  2006 - $45,850**

(h) **The unit has not been occupied, but has been used as a sales center for Langston, Lofts 14, Lofts 14 II, Cooper Lewis, and the Metropole Condominium.**

(i) **This unit was in use for Company Projects;**

(j) **After payment of all expenses incident to any transaction involving a sale of the Unit, and payoff of any liens or encumbrances, Newell is entitled to payment pursuant to the Redemption Agreement.**

**INTERROGATORY NO. 5**:  Please provide an accounting with regard to Lofts 14II – Unit C1 including, but not limited to, the following information on an annual basis commencing on January  , 2004 through the date of trial

      (a)      The price or other consideration that Metropolis paid to acquire this retail unit, the name of the seller or transferor and the date of the transfer of this unit to Metropolis

      (b)      The approximate fair market sales value of this retail unit at the time it was acquired by Metropolis and its approximate fair market sales value as of the date of your answer to this Interrogatory ( you may provide a reasonable range for your estimate);

      (c)      The annual rental income or other economic benefit(s) received by Metropolis and/or Pannick for this retail space for each of the requested years;

      (d)      Identify the person or entity occupying this retail space for each of the requested years; and

      (e)      A complete accounting of how the rental proceeds collected for this retail unit have been distributed by you including, but not limited to, the name of each person or entity to whom Metropolis has made a payment from the rental proceeds, the amount of each such payment for each calendar year and an explanation of the specific nature of Metropolis' financial obligation to each such person or entity giving rise to a payment made to this person or entity from the rental income generated from this particular unit within the Company Projects.

      (f)      In the event that Metropolis sells this unit, explain whether you contend that Newell is entitled to any of the proceeds of the sale pursuant to the Redemption Agreement and if so what, if any, proceeds you claim should be paid to any other person or entity ahead of Metropolis' obligation to Newell.

**RESPONSE: Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" would be unduly burdensome.**

Without waiving any objections, Defendant responds to the individual sub-parts, as follows:

Defendant does not concede that this unit is "within the Company Projects" as defined by the Redemption Agreement as the units were purchased at market value after the date of the Redemption Agreement.

  (a) The units collectively known as B Retail Space, including units C1 and C2 of the 1400 Church Street Condominium, were purchased for $1,808,241.00, from Mid City Development Company II on January 12, 2007

  (b) $1,097,321 at the time the unit was acquired; and $2,000,000 as of March 25, 2008. The unit was appraised at $1,138,717 at the time it was acquired, and the approximate market value is now $1,850,000

  (c) The annual rent is $138,750. However, the rent only began to accrue in February 2008. approximately 1 - 2 month's rent has been collected.

  (d) The space was vacant until February of 2008 and is now occupied by Joe M Carmack Landscape Design, L.L.C., t/a Garden District.

  (e) Defendant has collected rent for just over one month and this rent was placed into the general operating funds for Metropolis.

  (f) In the event that Metropolis sells the unit, that event does not entitle Newell to any proceeds. This unit is not part of the "Company Projects" as that term is used in the Redemption Agreements.

**INTERROGATORY NO. 6**: Commencing on or after September 29, 2003, itemize an explain all payments that you contend have been made to Newell from Metropolis as a result of its sale or leasing of any units within the Company Projects that satisfy or reduce Metropolis' obligation pursuant to the Redemption Agreements including within your answer the following:

(a) The amount paid to Newell from Metropolis' sale and/or leasing of each particular unit within the Company Projects;

(b) The total sales price and/or rental income received by Metropolis for each particular unit sold or leased giving rise to a payment to Newell under the Redemption Agreements; and

(c)    An accounting identifying the persons and/or entities to whom Metropolis has paid the remaining funds form Metropolis' sale of each unit it acquired within the Company Projects, the amount paid to each such person or entity and an explanation as to why Newell was not paid those proceeds.

**RESPONSE: Defendant objects to the characterization of any payments to Newell as payments "as a result of its sale or leasing," and objects to the use of the term "within the company projects" as vague and not used or defined in the Redemption Agreement. Without waiving any objections, Defendant states that the following payments were made to Newell, and that the following payments reduce any amount owed to Newell under the Redemption Agreements :**

| | |
|---|---|
| 12/9/05 | $500,000 |
| 10/13/06 | $550,000 |
| 11/09/07 | $900,000 |

8

(a) (b) Defendant denies that any "particular unit sold or leased" gave rise to any payment to Newell under the Redemption Agreement but states that payments were made as set forth above.

(c) Defendant objects to this interrogatory, including the request for an "accounting" as vague and potentially overbroad, and notes that a full "accounting" would be unduly burdensome. Without waiving any objection, Defendant states that proceeds from the sale of any property owned by Metropolis were used for company operations of Metropolis including: salaries for company employees, rent, and operating expenses.

**INTERROGATORY NO. 7:** With regard to units acquired by Metropolis within the Company Projects, provide an accounting of all financing that you have obtained (either new financing and/or drawing on an existing line of credit) that involves pledging any of the units within the Company Projects as collateral from September 29, 2003 to the present including, but not limited to, the following information within your answer;

(a)     Identify each loan by stating the financial institution that has provided you with borrowed funds since September 29, 2003, the dates and amounts of all such loans by institution and account number, the current balances on each such loan and identify each unit within a Company Project that is owned by Metropolis that is encumbered by each loan account number; and

(b)     Provide a complete accounting as to your use of any loan proceeds including, but not limited to, identifying each person or entity to whom loan proceeds distributed, the amount of loan proceeds distributed to each person or entity, the date of each such payment and an explanation of the specific nature of Metropolis' financial obligation and/or purpose for distributing loan proceeds to each person or entity identified in response to this Interrogatory.

**RESPONSE:**
**The loans are as follows:**

| | | |
|---|---|---|
| BB&T loan | $735,000 | 1400 Church C2 (paid in full) |
| BB&T loan | $965,000 | 1400 Church C1 |
| BB&T loan | $950,000 | 1401 Church C1 |

All loan proceeds were used solely to purchase aforementioned properties or for company operations of Metropolis.

**INTERROGATORY NO. 8:** Explain whether the provision within Section III.a.(i) of the Redemption Agreement has been satisfied, in whole or in part, concerning the extent to which "the first Five Hundred Thousand Dollars ($500,000) available Company Projects [has been] distributed to Pannick." Your answer should explain how much money you have distributed to Pannick pursuant to this term of the Redemption Agreement and the dates and amounts of each such payment to Pannick.

**REPONSE: No amounts were "distributed" to Pannick. Although some amounts have passed from Metropolis to Pannick, these funds were immediately reinvested in Metropolis, and used for the expenses of Metropolis.**

9

I, Scott Pannick, hereby declare under the penalties of perjury that the foregoing Answers to the Interrogatories are true and correct to the best of my knowledge, information and belief.

Dated: _4/9/08_

Scott Pannick,
President, Metropolis Development Company, LLC

STATE OF                        )
                                )S/S
DISTRICT OF COLUMBIA            )

    I, _Justin Auslaender_, a Notary Public in and for the aforesaid State and County, do hereby certify that _Scott Pannick_, who is known to me as the party to and who executed the foregoing, personally appeared before me in said State and County and acknowledged the same to be his act and deed.

    WITNESS my hand and official seal this _9_ TH day of _April_, 200_8_

Notary Public

My Commission Expires:

Justin Auslaender
Notary Public, District of Columbia
My Commission Expires 3/14/2013

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th Day of April 2008, a true and accurate copy of the foregoing was served by e-service and electronic mail upon counsel for Plaintiff as follows:

> Richard A. DeTar
> Miles & Stockbridge, P.C.
> 101 Bay Street
> Easton, MD 21601
> (410) 820 - 0224
>
> James A. Sullivan, Jr.
> Miles & Stockbridge, P.C.
> 11 North Washington Street, Suite 700
> Rockville, MD 20850

> _____/s/_____
> Scott H. Rome
> Scott H. Rome, Esq. [D.C. Bar # 476677]
> LAW OFFICES OF ANDREW J. KLINE
> 1225 19 th Street, NW, Suite 320
> Washington, D.C. 20036
> (202) 686-7600
> Attorneys for Plaintiffs

11

| | | |
|---|---|---|
| A. | | |
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | B. TYPE OF LOAN: | |
| | 1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS. | |
| **SETTLEMENT STATEMENT** | 6. FILE NUMBER: 06440 | 7. LOAN NUMBER: |
| | 8. MORTGAGE INS CASE NUMBER: | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.
Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1 0  3/68  (06440.PFD/06440151)

| D. NAME AND ADDRESS OF PURCHASER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| JONATHAN S. WEST<br>WILLIAM WEST<br>4 Park Avenue, 3rd Floor<br>New York, New York 10016 | MID-CITY DEVELOPMENT COMPANY II LLC<br>1327 14th Street, N.W.<br>Washington, D.C. 20005<br>Attn: Robert Scott Pannick | HSBC Bank USA, National Association |

| G. PROPERTY LOCATION:<br>1413 P Street, N.W., Commercial Units C1 & C2<br>Washington, DC | H. SETTLEMENT AGENT: 52-1612454<br>Regional Title Incorporated<br><br>PLACE OF SETTLEMENT<br>1620 L Street, N.W. # 900<br>Washington, DC 20036 | I. SETTLEMENT DATE:<br><br>September 14, 2006 |

| J. SUMMARY OF PURCHASER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM PURCHASER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 1,616,370.00 | 401. Contract Sales Price | 1,616,370.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Purchaser (Line 1400) | 3,059,017.95 | 403. | |
| 104. Assignment Fee/$2,983,630.00 | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes 09/14/06 to 10/01/06 | 295.93 | 406. City/Town Taxes 09/14/06 to 10/01/06 | 295.93 |
| 107. County taxes to | | 407. County taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM PURCHASER** | 4,675,683.88 | **420. GROSS AMOUNT DUE TO SELLER** | 1,616,665.93 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF PURCHASER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 100,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 2,300,000.00 | 502. Settlement Charges to Seller (Line 1400) | 17,860.07 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. (Deposit disb. as proceeds) | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes to | | 510. City/Town Taxes to | |
| 211. County taxes to | | 511. County taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. Legal Fee Reimbursement Paymen | 27,500.00 | 515. | |
| 216. Improvement Allowance | 102,750.00 | 516. | |
| 217. Rent Credit 9/14/06-10/04/06 | 15,370.32 | 517. Seller's Legal Fees to Greenstein DeLorme & Luchs | 5,000.00 |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR PURCHASER** | 2,545,620.32 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 22,860.07 |
| **300. CASH AT SETTLEMENT FROM/TO PURCHASER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Purchaser (Line 120) | 4,675,683.88 | 601. Gross Amount Due To Seller (Line 420) | 1,616,665.93 |
| 302. Less Amount Paid By/For Purchaser (Line 220) | ( 2,545,620.32) | 602. Less Reductions Due Seller (Line 520) | 22,860.07 |
| **303. CASH ( X FROM ) ( TO ) PURCHASER** | 2,130,063.56 | **603. CASH ( X TO ) ( FROM ) SELLER** | 1,593,805.86 |

EXHIBIT
4

## L. SETTLEMENT CHARGES

| | | | | PAID FROM PURCHASER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price | $ | @ | % | | |
| Division of Commission (line 700) as Follows: | | | | | |
| 701. $ | to | | | | |
| 702. $ | to | | | | |
| 703. Commission Paid at Settlement | | | | | |
| 704. | | to | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | | |
| 801. Loan Origination Fee | % | to | | | |
| 802. Loan Discount | % | to | | | |
| 803. Lender's Legal Fees | | to  Holland & Knight LLP | | | |
| 804. Borrower's Local Counsel Fees | | to  Griffin & Murphy LLP | | 8,000.00 | |
| 805. Lender's Inspection Fee | | to | | 3,130.00 | |
| 806. Mortgage Ins. App. Fee | | to | | | |
| 807. Assumption Fee | | to | | | |
| 808. Document Prep Fee | | | | | |
| 809. | | | | | |
| 810. | | | | | |
| 811. | | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | |
| 901. Interest From  09/14/06  to  10/01/06  @  $  387.166670/day  (  17 days   6.0600%) | | | | 6,581.83 | |
| 902. Mortgage Insurance Premium for | months to | | | | |
| 903. Hazard Insurance Premium for  1.0  years  to | | | | | |
| 904. | | | | | |
| 905. | | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | | | |
| 1001. Hazard Insurance | | months  @  $ | per  month | | |
| 1002. Mortgage Insurance | | months  @  $ | per  month | | |
| 1003. City/Town Taxes | | months  @  $ | per  month | | |
| 1004. County taxes | | months  @  $ | per  month | | |
| 1005. Assessments | | months  @  $ | per  month | | |
| 1006. | | months  @  $ | per  month | | |
| 1007. | | months  @  $ | per  month | | |
| 1008. Aggregate Adjustment | | months  @  $ | per  month | | |
| 1100. TITLE CHARGES | | | | | |
| 1101. Settlement or Closing Fee | | to  Regional Title Incorporated | | 500.00 | |
| 1102. Abstract or Title Search | | to  J & M Abstracts, Inc. | | | |
| 1103. Title Examination | | to | | | |
| 1104. Title Insurance Binder | | to | | | |
| 1105. Document Preparation | | to | | | |
| 1106. Notary Fees | | to | | | |
| 1107. Attorney's Fees | | to | | | |
| (includes above item numbers: | | | | | |
| 1108. Title Insurance | | to  First American Title Insurance Company | ) | 4,140.00 | |
| (includes above item numbers: | | | | ) | |
| 1109. Lender's Coverage | $ | 2,300,000.00 | | | |
| 1110. Owner's Coverage | $ | 1,616,370.00 | | | |
| 1111. Messgr/FedEx/Copy/Fax Fees | | to  Regional Title Incorporated | | | |
| 1112. Release Preparation Fee | | Regional Title Incorporated | @ 50.00 each | 80.00 | 80.00 |
| 1113. | | | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | |
| 1201. Recording Fees: Deed $ | ; Mortgage $ | ;  Releases $ | Recording Fees | 500.00 | |
| 1202. City/County Tax/Stamps: Deed | | ; Mortgage | | | |
| 1203. State Tax/Stamps:  Revenue Stamps | | ; Mortgage | | | |
| 1204. Recordation Tax (1.1%) | | to  DC Treasurer | | | |
| 1205. Transfer Tax (1.1%) | | to  DC Treasurer | | 50,600.00 | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | | 17,780.07 |
| 1301. Survey | | to | | | |
| 1302. Pest Inspection | | to | | | |
| 1303. Condominium Dues | | to  The Cooper Lewis Condominium | From 9/14/06-10/31/06 | 815.31 | |
| 1304. Working Capital Contribution | | to  The Cooper Lewis Condominium | | 1,040.81 | |
| 1305. Assignment Fee | | to  Metropolis Development Company | SEE ADDENDUM | 2,983,630.00 | |
| 1400. TOTAL SETTLEMENT CHARGES  (Enter on Lines 103, Section J and 502, Section K) | | | | 3,059,017.95 | 17,860.07 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement

Certified to be a true copy

Regional Title Incorporated
Settlement Agent

{ 06440 / 06440 / 51 }

**Doc# 2007147890**

THIS DEED EVIDENCES A TRANSFER FOR NO CONSIDERATION TO THE TRUSTEE
OF A REVOCABLE TRUST WHERE THE TRANSFEROR IS THE BENEFICIARY OF THE
TRUST AND IS THEREFORE EXEMPT FROM REAL PROPERTY TRANSFER AND
RECORDATION TAXES PURSUANT TO DISTRICT OF COLUMBIA CODE SECTIONS
47-902 (12) AND 42-1102(17).

**WHEN RECORDED MAIL TO:**
Greenstein DeLorme & Luchs, P.C.
1620 L Street, N.W., Suite 900
Washington, D.C. 20036
Attn: Jeffrey H. Gelman, Esq.

THIS DEED

Made this 27th day of November, 2007, by and between Metropolis Development
Company, LLC (the "Grantor"), and Robert Scott Pannick, as Trustee of the RSP 1 Revocable
Trust (the "Grantee");

WITNESSETH, that for no consideration, Grantor does hereby grant and convey unto the
Grantee, in fee simple, all of Grantor's right, title and interest to the following described land and
premises, with improvements, including limited common elements, easements and appurtenances
thereunto belonging, situate, lying and being in the District of Columbia, namely:

> Lot 2347 (being part of Lot 105) in Square 209, more particularly
> described as Condominium Unit C-1 in 1400 Church Street
> Condominium (hereinafter called the "Condominium") which was
> constituted and established under the District of Columbia Condominium
> Act of 1976, as amended, by the Condominium Declaration recorded
> March 31, 2006, as Instrument Number 2006042259 in the Office of the
> Recorder of Deeds of the District of Columbia (hereinafter called the
> "Condominium Declaration"), and by the Condominium Bylaws
> recorded March 31, 2006 as Instrument Number 2006042260 in the
> Office of the Recorder of Deeds of the District of Columbia (hereinafter
> called the "Condominium Bylaws"), and by the Condominium Plat and
> Plans recorded March 31, 2006, in Condominium Plat Book 57 at page
> 31 in the Office of the Surveyor of the District of Columbia (hereinafter
> called the "Condominium Plat and Plans").

TOGETHER with all of the appurtenances incident to said Condominium Unit as
contained in the Condominium Declaration.

The Condominium Declaration allocates to the Condominium Unit an undivided interest
(stated as a percentage) in the common elements of the Condominium (hereinafter called the
"Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit
B to the Condominium Declaration.

This Deed is delivered and accepted subject to all the provisions of the Condominium Act
of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium

EXHIBIT
5

Bylaws, the Condominium Plat and Plans, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of operation of the Condominium, which the Grantee(s) assume(s) and agree(s) to observe and perform. This provision shall be construed to run with the land and shall inure to the benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

     The conveyance is a transfer for no consideration to the trustee of a revocable trust where the Grantor is the beneficiary of the trust.

     AND the said Grantor hereby covenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

     IN WITNESS WHEREOF, on this 27th day of November, 2007, Metropolis Development Company, LLC has caused this Deed to be executed by Robert Scott Pannick, its Manager, as the act and deed of Metropolis Development Company, LLC.

                         Metropolis Development Company, LLC
                         a District of Columbia limited liability company

                         By: _____
                             Robert Scott Pannick
                             Manager

DISTRICT OF COLUMBIA ) ss:

     I, Julian H Nam _____, a Notary Public in and for the jurisdiction aforesaid do hereby certify that Robert Scott Pannick, who is personally well known to me as the person named as Manager of Metropolis Development Company, LLC, the Grantor in the foregoing Deed bearing date on the 27th day of November 2007, personally appeared before me in the jurisdiction aforesaid and acknowledged said instrument to be the act and deed of Metropolis Development Company, LLC.

     WITNESS my hand and official seal this 27th day of November, 2007.

                         _____
                         Notary Public

[Notarial Seal]

                    Julian H. Nam
                    Notary Public, District of Columbia
My commission expires:  My Commission Expires 07-14-2010

324770

Record and Return to:
Yvette Moore, Legal Assistant
c/o Greenstein DeLorme & Luchs, P.C.
1620 L Street, NW, Ste 900
Washington, DC 20036

Doc# 2007147898
Filed & Recorded
11/27/2007 3:51PM
LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS

| | | |
|---|---|---|
| RECORDING | $ | 20.00 |
| SURCHARGE | $ | 6.50 |
| Total: | $ | 26.50 |

Marquis Ellis

THIS IS TO CERTIFY THAT THIS IS A TRUE COPY

Recorder of Deeds, D.C.

FEB 0 4 2008

Doc# 2007147891

THIS DEED EVIDENCES A TRANSFER FOR NO CONSIDERATION TO THE TRUSTEE OF A REVOCABLE TRUST WHERE THE TRANSFEROR IS THE BENEFICIARY OF THE TRUST AND IS THEREFORE EXEMPT FROM REAL PROPERTY TRANSFER AND RECORDATION TAXES PURSUANT TO DISTRICT OF COLUMBIA CODE SECTIONS 47-902 (12) AND 42-1102(17).

**WHEN RECORDED MAIL TO:**
Greenstein DeLorme & Luchs, P.C.
1620 L Street, N.W., Suite 900
Washington, D.C. 20036
Attn: Jeffrey H. Gelman, Esq.



### THIS DEED

Made this 27<u>th</u> day of November, 2007, by and between Metropolis Development Company, LLC (the "Grantor"), and Robert Scott Pannick, as Trustee of the RSP II Revocable Trust (the "Grantee");

WITNESSETH, that for no consideration, Grantor does hereby grant and convey unto the Grantee, in fee simple, all of Grantor's right, title and interest to the following described land and premises, with improvements, including limited common elements, easements and appurtenances thereunto belonging, situate, lying and being in the District of Columbia, namely:

> Lot 2231 (being part of Lot 98) in Square 209, more particularly described as Condominium Unit C-1 in 1401 Church Street Condominium (hereinafter called the "Condominium") which was constituted and established under the District of Columbia Condominium Act of 1976, as amended, by the Condominium Declaration recorded December 9, 2004, as Instrument Number 2004167843 in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Declaration"), and by the Condominium Bylaws recorded December 9, 2004 as Instrument Number 2004167844in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Bylaws"), and by the Condominium Plat and Plans recorded December 16, 2004, in Condominium Plat Book 51 at page 28 in the Office of the Surveyor of the District of Columbia (hereinafter called the "Condominium Plat and Plans").

TOGETHER with all of the appurtenances incident to said Condominium Unit as contained in the Condominium Declaration.

The Condominium Declaration allocates to the Condominium Unit an undivided interest (stated as a percentage) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration.

This Deed is delivered and accepted subject to all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium

IL
MM.

**EXHIBIT**

6

Bylaws, the Condominium Plat and Plans, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of operation of the Condominium, which the Grantee(s) assume(s) and agree(s) to observe and perform. This provision shall be construed to run with the land and shall inure to the benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

      The conveyance is a transfer for no consideration to the trustee of a revocable trust where the Grantor is the beneficiary of the trust.

AND the said Grantor hereby covenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

IN WITNESS WHEREOF, on this 27th day of November, 2007, Metropolis Development Company, LLC has caused this Deed to be executed by Robert Scott Pannick, its Manager, as the act and deed of Metropolis Development Company, LLC.

Metropolis Development Company, LLC
a District of Columbia limited liability company

By: _____
Robert Scott Pannick
Manager

DISTRICT OF COLUMBIA ) ss:

I, _Julius H. Nam_____, a Notary Public in and for the jurisdiction aforesaid do hereby certify that Robert Scott Pannick, who is personally well known to me as the person named as Manager of Metropolis Development Company, LLC, the Grantor in the foregoing Deed bearing date on the 27th day of November 2007, personally appeared before me in the jurisdiction aforesaid and acknowledged said instrument to be the act and deed of Metropolis Development Company, LLC.

WITNESS my hand and official seal this 27th day of November, 2007.

_____
Notary Public

[Notarial Seal]    Julius H. Nam
              Notary Public, District of Columbia
My commission expires: My Commission Expires 07-14-2013

324786

Doc# 2007147891
Filed & Recorded
11/27/2007   3:51PM
LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
RECORDING          $      20.00
SURCHARGE          $       6.50
Total:                $       26.50

**Record and Return to:**
Yvette Moore, Legal Assistant
c/o Greenstein DeLorme & Luchs, P.C.
1620 L Street, NW, Ste 900
Washington, DC 20036

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEWART P. NEWELL,            ) | |
|                    ) | |

STEWART P. NEWELL,                    )
                              )
                 Plaintiff,    )
     v.                                 )
                              )    Civil Action No. 07-2129 (RCL)
                              )
METROPOLIS DEVELOPMENT              )
COMPANY, LLC, *et al.*,                )
                              )
                 Defendants.    )
                              )

**<u>ORDER</u>**

      Upon consideration of Plaintiff's Verified Motion for Temporary Restraining Order, and

any opposition thereto, and for good cause having been shown, it is on this _____ day

of April, 2008, by the United States District Court for the District of Columbia

      ORDERED, that Defendants, Metropolis Development Company, LLC and Robert Scott

Pannick are prohibited from distributing the proceeds from the sale of the "Garden District

Unit"; and it is further

      ORDERED, that Defendants, Metropolis Development Company, LLC and Robert Scott

Pannick shall maintain the proceeds of the sale of the Garden District Unit in an escrow account

with counsel for Defendants until further Order from this Court.

      SO ORDERED.


    _____                                  _____
      Date                                           ROYCE C. LAMBERTH
                                    United States District Judge