# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEWART P. NEWELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No. 07-2129 (RCL) |
| ) | |
| METROPOLIS DEVELOPMENT ) | |
| COMPANY, LLC, *et al*., ) | |
| ) | |
| Defendants. ) | |

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff Stewart P. Newell, by and through his undersigned counsel, pursuant to Fed. R. Civ. P. Rule 15(a)(2), LCvR Rule 7(i) and LCvR Rule 15.1, files this Motion For Leave To File Amended Complaint and respectfully requests that this Court grant Plaintiff leave to file an Amended Complaint for Damages, Declaratory Judgment, and Injunctive Relief.  In support of this motion, Plaintiff submits herewith a Statement of Points and Authorities, proposed Order and proposed original Amended Complaint for Damages, Declaratory Judgment, and Injunctive Relief.

**WHEREFORE**, Plaintiff Stewart P. Newell, respectfully requests that this Court grant the relief requested herein and enter an Order granting Plaintiff leave to file an Amended Complaint for Damages, Declaratory Judgment, and Injunctive Relief, and for such other and further relief as this Court deems appropriate.

Respectfully submitted,


/s/ James A. Sullivan, Jr.
_____

James A. Sullivan, Jr.
(D.C. Bar No. 475145)
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850
Telephone (301) 762-1600
Facsimile (301) 762-0363
E-mail:  jsullivan@milesstockbridge.com



/s/ Richard A. DeTar
_____

Richard A. DeTar
(*Pro Hac Vice* Admission)
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
Telephone (410) 820-0224
Facsimile (410) 822-5450
E-mail:  rdetar@milesstockbridge.com

Attorneys for Plaintiff Stewart P. Newell

## LCvR 7(m) STATEMENT

Undersigned counsel for Plaintiff Stewart P. Newell hereby certifies that he, in good faith, conferred with counsel for Defendants, Metropolis Development Company, LLC and Robert Scott Pannick by telephone on May 6, 2008 regarding the present Motion for Leave to File Amended Complaint.  Counsel for Defendants indicated that Defendants would not give consent to the filing of the Amended Complaint and would oppose the present Motion for Leave to File Amended Complaint.

/s/ Richard A. DeTar_____
Richard A. DeTar

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEWART P. NEWELL,                        )
                                          )
                    Plaintiff,            )
          v.                              )
                                          )          Civil Action No. 07-2129 (RCL)
                                          )
METROPOLIS DEVELOPMENT                    )
COMPANY, LLC, *et al.*,                   )
                                          )
                    Defendants.           )
_____ )

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff Stewart P. Newell ("Newell" or "Plaintiff"), by and through his undersigned

counsel, pursuant to Fed. R. Civ. P. Rule 15(a)(2), LCvR Rule 7(i) and LCvR Rule 15.1, submits

this Statement of Points and Authorities in Support of his Motion for Leave to File Amended

Complaint and states as follows:

## I.    INTRODUCTION

### A.    Factual Background

Pursuant to a Redemption Agreement between the Parties, on September 29, 2003,

Defendants, Metropolis Development Company, LLC (the "Company" or "Metropolis") and

Robert Scott Pannick ("Pannick") agreed to, *inter alia*, purchase all of Plaintiff's right, title and

interest in and to his Membership Interest and Percentage Interest in Metropolis. The purpose of

the Redemption Agreement was to buy-out Newell's Interest entirely so that Pannick could

become the sole owner and manager of Metropolis.

On February 7, 2004, pursuant to the First Amendment to Redemption Agreement, the

Parties agreed, *inter alia*, that the total principal amount to be paid to Newell for his Membership

Interest was Two Million Two Hundred Seven Thousand Nine Hundred Seventy-Two Dollars ($2,207,972) and Pannick was to take over the management of Metropolis.

The Redemption Agreement was intended to provide Newell with security that the amount owed to him would be paid by way of a priority distribution from all of the Company's "Available Cash" defined as "all cash distributions received by the Company with respect to **Company Projects** (emphasis added)."  The Company Projects consist of four (4) development projects that Metropolis was in the process of developing when the Redemption Agreement was executed.  In addition to Metropolis' obligation to make payments to Newell from all Available Cash from the Company Projects, the outside date for payment of all amounts owed to Plaintiff was December 31, 2005.  Metropolis repeatedly failed to make payment to the Plaintiff from Available Cash received by Metropolis and Pannick from cash distributions received by the Company attributable to the Company Projects, and Defendants failed to make payment to Plaintiff by the outside date for payment of December 31, 2005.

**B.  Relevant Procedural History**

**1.      Amendment for Fraudulent Transfer.**

On November 26, 2007, Newell filed his original Complaint for Damages, Declaratory Judgment, and Injunctive Relief (the "Original Complaint") [Dkt.#1] against Defendants Metropolis and Pannick.  The Original Complaint stated claims for breach of contract and damages (Count I), tortious interference with contract (Count II) and declaratory judgment (Count III), including requesting specific performance requiring the Company and Pannick to make priority payments to Newell of all cash distributions received by the Company from the Company Projects.

On November 27, 2007, <u>one day after</u> the Complaint was filed, Pannick caused the Company to transfer the last two retail units within the Company Projects known as the "Garden District Unit" and the "Sales Center" to the RSP I Revocable Trust and the RSP II Revocable Trust (collectively, the "Revocable Trusts"), respectively. Each of these Company Projects was transferred for no consideration, and the sole trustee for each of these Trusts is Pannick. A copy of the Deed transferring the Sales Center from Metropolis to the RSP II Revocable Trust for no consideration is attached hereto as Exhibit <u>1</u>.[1] The intent of these transfers was to remove these assets from the scope of Newell's claim for specific performance set forth in Count III of his Complaint and to remove these assets from the scope of a judgment against Metropolis or Pannick.

Defendants filed an Answer to the Original Complaint on December 28, 2007 [Dkt.#10]. On December 28, 2007, the parties also filed a Joint Motion for Consent Order [Dkt.#11] pursuant to which the Court entered a Consent Order [Dkt.#13] on January 3, 2008, prohibiting Metropolis and/or Pannick from selling, encumbering or otherwise borrowing additional funds against the Remaining Company Projects without first providing seven (7) days written notice to Plaintiff's Counsel of Defendants' intention to do so. At that time, the Remaining Company Projects were identified as the "Garden District Unit" and the "Sales Center."

The Revocable Trusts, however, were not parties to the Original Complaint and are not within the scope of the Consent Order because Defendants' transfers of these assets to the Revocable Trusts did not occur until after the Original Complaint was filed. As a result, unless Newell is granted leave to amend the Complaint he may be unable to obtain adequate relief from

---

[1] Because the Garden District Unit has since been sold to a third party, the Sales Center is the only asset subject to the fraudulent transfer claim.

the Court with respect to efforts by the Company and/or Pannick to sell, encumber or otherwise borrow additional funds against the Remaining Company Projects.[2]  Plaintiff's first reason for amending the Complaint is to institute a fraudulent transfer action with respect to Defendants' fraudulent transfer of the Sales Center to the RSP II Revocable Trust.  See Count IV of proposed Amended Complaint.

>    2.    **Amendment for Injunctive Relief.**

On April 17, 2008, counsel for Metropolis delivered a letter to counsel for Newell providing seven (7) days written notice of an intention to sell the Garden District Unit.[3]  On April 18, 2008, Plaintiff filed a Motion for Temporary Restraining Order [Dkt.#21] seeking an Order requiring the Defendants to maintain the proceeds of the sale of the Garden District Unit in an escrow account with counsel for Defendants until further order from this Court.  This Court held a hearing on the same day and ultimately entered an Order denying the Plaintiff's Motion for Temporary Restraining Order [Dkt.#22].  The Court, citing Ellipso v. Mann, 480 F.3d 1153, 1160 (D.C. Cir. 2007) (additional citations omitted), denied the Motion for Temporary Restraining Order ruling that the Court lacked authority to enter an order enjoining Defendants from disposing of the proceeds of the sale of the Garden District Unit because Plaintiff had not asserted a claim for equitable relief in his Complaint.  Consequently, Plaintiff's second reason for amending the Complaint is to seek injunctive relief so that he will be in a proper pleading posture to assert claims for a temporary restraining order and subsequent injunctive relief in the

---

[2] As the Court is aware, the Garden District Unit has since been sold to a third party thereby rendering the Sales Center the sole asset within the Remaining Company Projects that is within the indirect control of the Company and Pannick and within the direct control of the RSP II Revocable Trust.

[3] Although the letter misidentified the Garden District Unit, all parties understood that Metropolis' intent was to notify Newell that the Garden District Unit would be sold, as Defendants' counsel confirmed to the Court during a TRO hearing before the Court on April 28, 2008, and it was in fact sold and is no longer within the control of Metropolis or Pannick nor is it within the direct control of the RSP I Revocable Trust.

foreseeable event that Defendants and the RSP II Revocable Trust serve notice of their intention to convey the sole Remaining Company Project, the Sales Center, to a third party and dispose of the proceeds of the sale without making the priority distribution of cash received from the sale of this Company Project to Plaintiff, as required by the Redemption Agreements. See Count V of proposed Amended Complaint.

      **3.    Amendment to Plead Additional Facts Ascertained through Discovery.**

Finally, as a result of discovery recently received in this case, Plaintiff has become aware of additional relevant transactions that give rise to additional claims for relief. Specifically, Plaintiff has recently learned detailed information regarding the Defendants' receipt and diversion of substantial "Available Cash," which should have been paid to Newell under the express terms of the Redemption Agreements. For example, Plaintiff recently received accounting records from Defendants (including a document bates numbered Metro-00097) that discloses that Pannick took a $3,157,208 distribution from Uptown Partners, LLC attributable to the Company Project known as "Langston Lofts." An excerpt from the Uptown Partners Trial Balance produced by Defendants on April 28, 2008 is attached hereto as Exhibit 2. Section 3.A. of the Redemption Agreement expressly requires Pannick "...to contribute to [Metropolis] any distributions received by him from Uptown Partners, LLC to be used by the Company as payment to Newell of the Redemption Price."

In summary, Plaintiff now seeks leave to amend his complaint for several reasons. First, Plaintiff desires to add the RSP II Revocable Trust as a party defendant and to assert a fraudulent transfer claim to address the fraudulent transfer of the Sales Center (the last Remaining Company Project). Second, Plaintiff desires to assert a claim for injunctive relief related to the Sales Center given the likelihood that Defendants will attempt to transfer the Sales Center to a third

party purchaser. Finally, Plaintiff desires to amend its factual allegations to include additional facts relating to Defendants' breaches that Plaintiff has only recently become aware of through recent discovery in this case, and to amend Counts I (Breach of Contract) and II (Tortious Interference with Contract) to incorporate these newly discovered facts.

## II.    ARGUMENT

### A.    Standard for Amending Pleadings Prior to Trial.

Fed. R. Civ. P. Rule 15(a) sets forth the procedure for amending pleadings prior to trial. When a defendant has already answered a complaint, a plaintiff may amend its complaint "only with the opposing party's written consent or the court's leave." See Fed. R. Civ. P. Rule 15(a)(2). When leave is sought to amend a pleading prior to trial, however, "the court should freely give leave when justice so requires." Id. The policy behind this liberal approach to amendments is supported by the rationale that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962); Stanford v. Potomac Electric Power Company, 394 F. Supp.2d 81, 85 (D.D.C. 2005). Stated otherwise, the underlying purpose is to further the goal of deciding cases on their merits and to avoid adjudication by technicality.

Whether to grant or deny leave to amend rests in the District Court's sound discretion, and the District Court determines the propriety of amendment on a case-by-case basis. Foman v. Davis, 371 U.S. at 182, 83 S. Ct. 227; Harris v. Sec'y, United States Dep't of Veterans Affairs, 126 F.3d 339, 343 (D.C. Cir. 1997); Stanford, 394 F. Supp.2d at 85; Nwachukwu vs. Karl, 222 F.R.D. 208, 210 (D.D.C. 2004). Nevertheless, without a justifying or sufficient reason, it is an

abuse of discretion for a District Court to deny leave to amend. <u>Foman,</u> 371 U.S. at 182, 83 S. Ct. 227; <u>Nwachukwu</u>, 222 F.R.D. at 211.

Under Rule 15(a), the non-movant generally carries the burden of persuading the Court to deny leave to amend. Reasons that justify a denial of leave to amend include "undue delay, bad faith, repeated failure to cure a pleading's deficiencies, undue prejudice to the opposing party, and futility of amendment." <u>Foman,</u> 371 U.S. at 182, 83 S. Ct. 227; <u>Richardson v. United States</u>, 193 F.3d 545, 548-49 (D.C. Cir. 1999); <u>Stanford</u>, 394 F. Supp.2d at 85; <u>Nwachukwu</u>, 222 F.R.D. at 211. The primary consideration in deciding whether to permit an amendment focuses on whether the non-moving party will be prejudiced due to unfair disadvantage or deprivation of the opportunity to discover and present facts. <u>Stanford</u>, 394 F. Supp.2d at 85 (citing <u>In re Vitamins Antitrust Litigation</u>, 217 F.R.D. 34, 36-37 (D.D.C. 2003)).

B. **<u>There is No "justifying or sufficient reason" to Deny Plaintiff Leave to File an Amended Complaint</u>**.

Based upon the above-stated principles, this Court's primary consideration in deciding whether to permit an amendment is whether the Defendants will be prejudiced due to unfair disadvantage or deprivation of an opportunity to discover and present facts. There is no conceivable prejudice to the Defendants by virtue of the Plaintiff's Amended Complaint. Defendants will have ample opportunity to conduct discovery on Plaintiff's amended claims as the agreed upon proposed Scheduling Order filed by the parties along with their Joint Meet and Confer Statement [Dkt.#'s 14 & 15] provides that discovery does not close until July 15, 2008.[4] In fact, Defendants have yet to serve Plaintiff with any written discovery requests and have not noticed any depositions. Under these circumstances, Defendants cannot legitimately maintain

---

[4] To date, although the parties have filed a Joint Report of Discovery Plan Conference [Dkt. #14] and have thus far adhered to those deadlines, the Court has not entered a Scheduling Order.

that the filing of the Amended Complaint imposes an unfair disadvantage or deprivation of the opportunity to discover and present facts when they have not actively sought discovery on any of Plaintiff's claims to date.  Regardless of whether Defendants decide to take any active discovery, Plaintiff will be obligated to provide and supplement his discovery disclosures as required by the Federal Rules of Civil Procedure well in advance of trial.

Although Plaintiff proposes to add a new defendant in the Amended Complaint, the new defendant, the RSP II Revocable Trust, is a legal fiction created and controlled by Pannick for the sole purpose of taking title to the Remaining Company Project for no consideration.  There is no unfair surprise, prejudice or disadvantage to Defendants that they must now defend this legal fiction along with their actions undertaken subsequent to filing the Original Complaint in breach of their duties and obligations to Plaintiff.  Additionally, all of the facts relevant to the fraudulent transfer action (Count IV of the proposed Amended Complaint) are within Defendants' possession, knowledge and control and require no further investigation by the Company, or Pannick as the sole trustee of the RSP II Revocable Trust.

Defendants similarly cannot maintain that the filing of the Amended Complaint will unduly delay this case.  As set forth above, there is ample time for discovery.  Furthermore, the parties have proposed that the Pre-trial Conference take place on October 15, 2008, and no trial date has been set.

Defendants also cannot complain that Plaintiff has exercised any bad faith in seeking leave to file an amended complaint at this juncture.  Plaintiff has been diligently attempting to discover and forensically piece together the facts vis-à-vis Defendants' discovery responses, which have largely been dilatory, incomplete and evasive.  Upon Defendants' initial failure to serve any discovery responses whatsoever, Plaintiff was forced to file a Motion to Compel.  Out

of respect for Pannick's medical condition, Plaintiff withdrew his Motion to Compel and has since been exercising good faith in attempting to resolve discovery disputes with Defendants without the Court's assistance. Plaintiff has only recently become privy to certain facts based upon the meager discovery responses provided by Defendants in opposition to the Plaintiff's Motion to Compel [Dkt.#17] and by virtue of an incomplete document production that took place on April 28, 2008.[5]

There has never been any assertion or ruling that the Plaintiff's pleadings have been deficient, nor has Plaintiff previously filed any requests to amend its pleadings. Consequently, the "justifying or sufficient reason" of a "repeated failure to cure a pleading's deficiencies" is simply non-existent.

Lastly, the amendments contained in the proposed Amended Complaint belie any notion of futility. In view of Defendants' refusal to consent to the filing of an Amended Complaint, futility is apparently Defendants' perceived good faith basis for objection. These amendments are based largely upon documentation produced by Defendants themselves regarding the Defendants' receipt and diversion of millions of dollars of "Available Cash" as defined by the Redemption Agreements, as well as the transfer of properties identified as Remaining Company Projects for no consideration. Assuming the truth of the amended allegations, which the Court must do in reviewing pleadings, see Peters v. National Railroad Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992), the Plaintiff has clearly set forth underlying facts and circumstances justifying the amended claims and relief requested. For example, the recently discovered Deed transferring the Sales Center from the Company to the RSP II Revocable Trust recites on its face:

---

[5] Defendants' counsel has verbally agreed that Plaintiff is entitled to a second inspection of a more complete production of documents that are responsive to all of Plaintiff's requests.

"THIS DEED EVIDENCES A TRANSFER FOR NO CONSIDERATION" (see Exhibit 1) and indicates a transfer one day after the filing of the original Complaint against Defendants in this case, thus confirming at least two of the so called "badges of fraud" for fraudulent transfers. Plaintiff is also entitled to the reasonable (only logical) inference that Defendants' intent was to defraud, hinder or delay Plaintiff based upon the timing of the fraudulent transfer, just one day after the filing of the Complaint, and the lack of any consideration for the transfer. Likewise, the Defendants' own accounting records indicate that Pannick took an unauthorized $3,157,208 distribution in 2006, making that element of the Plaintiff's claim equally straightforward.

In sum, none of the recognized "justifying or sufficient reasons" for denying a request for leave to amend can be shown by Defendants in this case. This Court should apply to the liberal policy of allowing amendments and decide this case on the merits.

**WHEREFORE**, Plaintiff Stewart P. Newell respectfully requests that this Court grant the relief requested herein and enter an Order granting Plaintiff leave to file an Amended Complaint for Damages, Declaratory Judgment, and Injunctive Relief, and for such other and further relief as this Court deems appropriate.

Respectfully submitted,


/s/ James A. Sullivan, Jr.
_____

James A. Sullivan, Jr.
(D.C. Bar No. 475145)
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850
Telephone (301) 762-1600
Facsimile (301) 762-0363
E-mail:  jsullivan@milesstockbridge.com



/s/ Richard A. DeTar
_____

Richard A. DeTar
(*Pro Hac Vice* Admission)
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
Telephone (410) 820-0224
Facsimile (410) 822-5450
E-mail:  rdetar@milesstockbridge.com

Attorneys for Plaintiff Stewart P. Newell

Doc# 2007147891

THIS DEED EVIDENCES A TRANSFER FOR NO CONSIDERATION TO THE TRUSTEE OF A REVOCABLE TRUST WHERE THE TRANSFEROR IS THE BENEFICIARY OF THE TRUST AND IS THEREFORE EXEMPT FROM REAL PROPERTY TRANSFER AND RECORDATION TAXES PURSUANT TO DISTRICT OF COLUMBIA CODE SECTIONS 47-902 (12) AND 42-1102(17).

**WHEN RECORDED MAIL TO:**
Greenstein DeLorme & Luchs, P.C.
1620 L Street, N.W., Suite 900
Washington, D.C. 20036
Attn: Jeffrey H. Gelman, Esq.

THIS DEED

Made this 27th day of November, 2007, by and between Metropolis Development Company, LLC (the "Grantor"), and Robert Scott Pannick, as Trustee of the RSP II Revocable Trust (the "Grantee");

WITNESSETH, that for no consideration, Grantor does hereby grant and convey unto the Grantee, in fee simple, all of Grantor's right, title and interest to the following described land and premises, with improvements, including limited common elements, easements and appurtenances thereunto belonging, situate, lying and being in the District of Columbia, namely:

> Lot 2231 (being part of Lot 98) in Square 209, more particularly described as Condominium Unit C-1 in 1401 Church Street Condominium (hereinafter called the "Condominium") which was constituted and established under the District of Columbia Condominium Act of 1976, as amended, by the Condominium Declaration recorded December 9, 2004, as Instrument Number 2004167843 in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Declaration"), and by the Condominium Bylaws recorded December 9, 2004 as Instrument Number 2004167844 in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Bylaws"), and by the Condominium Plat and Plans recorded December 16, 2004, in Condominium Plat Book 51 at page 28 in the Office of the Surveyor of the District of Columbia (hereinafter called the "Condominium Plat and Plans").

TOGETHER with all of the appurtenances incident to said Condominium Unit as contained in the Condominium Declaration.

The Condominium Declaration allocates to the Condominium Unit an undivided interest (stated as a percentage) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration.

This Deed is delivered and accepted subject to all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium

**EXHIBIT**
**1**

Bylaws, the Condominium Plat and Plans, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of operation of the Condominium, which the Grantee(s) assume(s) and agree(s) to observe and perform. This provision shall be construed to run with the land and shall inure to the benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

The conveyance is a transfer for no consideration to the trustee of a revocable trust where the Grantor is the beneficiary of the trust.

AND the said Grantor hereby covenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

IN WITNESS WHEREOF, on this 27th day of November, 2007, Metropolis Development Company, LLC has caused this Deed to be executed by Robert Scott Pannick, its Manager, as the act and deed of Metropolis Development Company, LLC.

Metropolis Development Company, LLC
a District of Columbia limited liability company

By: _____
Robert Scott Pannick
Manager

DISTRICT OF COLUMBIA ) ss:

I, Julien H Nam _____, a Notary Public in and for the jurisdiction aforesaid do hereby certify that Robert Scott Pannick, who is personally well known to me as the person named as Manager of Metropolis Development Company, LLC, the Grantor in the foregoing Deed bearing date on the 27th day of November 2007, personally appeared before me in the jurisdiction aforesaid and acknowledged said instrument to be the act and deed of Metropolis Development Company, LLC.

WITNESS my hand and official seal this 27th day of November, 2007.

_____
Notary Public

[Notarial Seal]        Julien H. Nam
                       Notary Public, District of Columbia
My commission expires: My Commission Expires 07-14-2013

324786

Doc# 2007147891
Filed & Recorded
11/27/2007   3:51PM
LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
RECORDING          $     20.00
SURCHARGE          $      6.50
Total:             $     26.50

**Record and Return to:**
Yvette Moore, Legal Assistant
c/o Greenstein DeLorme & Luchs, P.C.
1620 L Street, NW, Ste 900
Washington, DC 20036

4:35 PM
03/16/07
Accrual Basis

**Uptown Partners LLC**
**Trial Balance**
As of December 31, 2006

|  | Dec 31, 06 | |
|---|---|---|
|  | **Debit** | **Credit** |
| Accrued DC franchise taxes | 0.00 | |
| City R.E. Tax liability | 0.00 | |
| Purchaser Deposits | 0.00 | |
| Retail Security Deposit | 0.00 | |
| CIG Loan | 0.00 | |
| Loan from MDC | 0.00 | |
| Due to S. P. Newell | 0.00 | |
| Billings in Excess of Costs | 0.00 | |
| Deferred Revenue | 0.00 | |
| Note Payable to Corus | 0.00 | |
| Note Payable to Corus:Note A | 0.00 | |
| Note Payable to Corus:Note B | 0.00 | |
| Distribution to MDC | 160,792.00 | |
| Distributions to Merrick Malone | 0.00 | |
| Distribution to Scott Pannick | 3,157,208.00 | |
| Member's Contribution | | 129,899.01 |
| 3900 · Retained Earnings | | 4,387,771.20 |
| Rev - L/T Construct contracts | | 759,863.00 |
| Interest Income | | 3,167.03 |
| Penalties | 750.00 | |
| Bad Debts | 32,463.72 | |
| Professional Fees | 1,300.00 | |
| Charitable Contribution | 0.00 | |
| Cost Constr - Long Term cntrct | 776,629.00 | |
| Contract Costs | | 10,947.50 |
| Marketing Expense:Marketing & Advertising | 5,682.20 | |
| Bank Fees | 141.15 | |
| Political Contributions | 1,500.00 | |
| Suspense | 0.00 | |
| Reimbursable Expense | 19,779.50 | |
| TOTAL | 26,838,212.74 | 26,838,212.74 |

EXHIBIT

2

Page 3 of 3

Metro-00097

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEWART P. NEWELL,                    )
300 South Point Drive, #1004          )
Miami Beach, FL 33109,                )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
METROPOLIS DEVELOPMENT                )          Civil Action No. 07-2129 (RCL)
COMPANY, LLC,                         )
1327 14th Street N. W., Suite 300     )
Washington, DC 20005,                 )
                                      )
ROBERT SCOTT PANNICK,                 )
3204 Rowland Place N.W.               )
Washington, DC 20008,                 )
                                      )
and                                   )
                                      )
RSP II REVOCABLE TRUST,               )
c/o Robert Scott Pannick, Trustee     )
3204 Rowland Place, N.W.              )
Washington, D.C. 20008,               )
                                      )
        Defendants.                   )
                                      )

**AMENDED COMPLAINT FOR DAMAGES,
DECLARATORY JUDGMENT,
AND INJUNCTIVE RELIEF**

        Plaintiff Stewart P. Newell, by and through his attorneys James A. Sulivan, Jr., Richard

A. DeTar and Miles & Stockbridge P.C., hereby files suit against Metropolis Development

Company, LLC, Robert Scott Pannick and RSP II Revocable Trust, and in support hereof states

as follows:

## Parties

1.     Metropolis Development Company, LLC ("Company") is a District of Columbia limited liability company with its principal place of business at 1327 14th Street N.W., Suite 300, Washington, D.C. 20005.

2.     Robert Scott Pannick ("Pannick") is an individual residing at 3204 Rowland Place N.W., Washington, D.C. 20008.  Pannick owns a fifty-percent (50%) interest in the Company.

3.     RSP II Revocable Trust is a revocable trust organized in November 2007 by Pannick, with Pannick as the sole trustee.

4.     Stewart P. Newell ("Newell") is an individual residing at 300 South Point Drive, #1004, Miami Beach, FL 33109.  Newell owns a fifty-percent (50%) interest in the Company.

## Jurisdiction and Venue

5.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

6.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

## Facts

7.     The Company is a limited liability company pursuant to Section 10-101 et seq. of the Corporations Article of District of Columbia Code.  The Company is a developer engaged in the business of, inter alia, acquiring, financing, developing, leasing, managing and operating real property in the District of Columbia and the surrounding metropolitan area.

8.     Prior to the inducements made to Newell by Pannick and the Company in the Redemption Agreements (as defined below), Newell served as the manager and tax matters partner of the Company.

9.     On September 29, 2003, Pannick and the Company agreed to purchase all of Newell's right, title and interest in and to his Membership Interest and Percentage Interest in the

Company ("Newell's Interest"), pursuant to the terms and conditions of the September 29, 2003 "Redemption Agreement," the purpose of which was to buy-out Newell's Interest entirely so that Pannick could become the sole owner and manager of the Company. A copy of the Redemption Agreement is attached hereto as Exhibit 1 and incorporated herein by reference.

10.    Pursuant to Section 1 of the Redemption Agreement, Newell's Interest is to be terminated after Newell is paid the Amount Owed plus interest (as defined below).

11.    In addition, the Parties agreed that upon execution of the Redemption Agreement, Newell would no longer receive any share of the Company's profits.

12.    Pursuant to the Redemption Agreement, Newell's role as manager and tax matters partner of the Company ended on February 7, 2004, at which time Pannick took control of the Company.

13.    The Company and Pannick agreed to pay Newell One Million Six Hundred Eleven Thousand Dollars ($1,611,000) as consideration for Newell's agreement to: (1) relinquish his fifty percent (50%) interest in the Company upon payment of the Amount Owed so that Pannick would become the sole owner and manager of the Company, (2) immediately relinquish his right to receive profits from the Company, and (3) terminate his employment with the Company on the Effective Date. The Redemption Agreement also contains a provision calling for an adjustment in the redemption amount based on the value of the Company on December 1, 2003.

14.    On February 7, 2004, pursuant to the First Amendment to Redemption Agreement ("First Amended Redemption Agreement"), a copy of which is attached hereto as Exhibit 2 and incorporated herein, the Parties agreed to, *inter alia*, increase the redemption amount owed to Newell to Two Million Two Hundred Seven Thousand Nine Hundred Seventy-Two Dollars

($2,207,972) ("Amount Owed").    The Redemption Agreement and the First Amended Redemption Agreement shall be collectively referred to as the "Redemption Agreements."

15.    Pursuant to the Redemption Agreements, Newell was provided with security such that the Amount Owed would be paid by way of a priority distribution of all of the Company's "Available Cash", defined as "all cash distributions received by the Company with respect to Company Projects."   The Company Projects are those four development projects that were in progress when the Redemption Agreement was executed and are identified in Exhibit A to the Redemption Agreement.   A copy of Exhibit A to the Redemption Agreement is attached hereto as Exhibit 3.

16.    As shown on Exhibit A to the Redemption Agreement, the four development projects are generally known as "Langston Lofts", "Mid-City I" and "Mid-City II" with the latter consisting of the two projects on Parcels B and C.

A.    With respect to each of these Company Projects the Company possessed a percentage ownership interest along with a partner who also possessed a percentage ownership interest in the limited liability companies formed to develop these mixed use residential/commercial condominium buildings.

B.    In the case of three of the Company Projects developed through certain limited liability companies known as "Mid-City I" and "Mid-City II" (collectively "Mid-City"), the Company owned a twenty percent (20%) membership interest and its partner, U.S. Property Development Corporation ("U.S. Property"), owned the remaining eighty percent (80%) membership interest.

C    With regard to the fourth Company Project known as Langston Lofts, the Company owned a fifty percent (50%) ownership interest in Uptown Partners, LLC ("Uptown")

and Pannick owned the other fifty percent (50%) ownership interest.  At all times relevant hereto Pannick was the managing member of Uptown and dominated and controlled all actions taken with respect to Langston Lofts.

17.     The purpose of allocating all Available Cash from the Company Projects to Newell was to insure that he received all proceeds from the Company Projects unaffected by the positive or negative financial impact of future Company operations and overhead or future projects, including the Metropole Project, as Newell was not to be a participant in such future projects or have any control over future management of the Company or the Company Projects.

18.     Pursuant to the Redemption Agreements, Available Cash from the Company Projects excluded only two specified categories of revenues: (1) the first Five Hundred Thousand Dollars ($500,000)[1] from Company Projects, and (2) service fees paid to the Company in connection with its management agreements for each of the Company Projects.  All other Available Cash was to be paid to Newell as a first priority payment until the Amount Owed was paid in full to Newell.

19.     The Parties agreed that should any portion of the Amount Owed remain unpaid on December 31, 2004, interest would begin to accrue at the rate of ten percent (10%) per annum, compounded quarterly on the unpaid balance.

20.     Pursuant to the Redemption Agreements, the Amount Owed plus interest was to be paid in full to Newell no later than December 31, 2005.

21.     The Company Projects consist of four separate developments in Washington, D.C., each with retail condominium space on the ground floor and residential condominiums on the upper floors.

---

[1] This first $500,000 was also to be paid to Newell pursuant to a separate agreement for the sale of land relating to the Metropole Project, a non-Company Project.

22.    Substantially all of the residential condominiums in all four of the Company Projects have been sold, and most of the retail condominium space has either been leased or sold.

23.    The Company began experiencing cash flow problems as a result of excessive Company overhead and other development projects undertaken subsequent to the four Company Projects, including, in particular, the Metropole Project, which is in a precarious financial condition.

24.    At the direction of Pannick, Metropolis has diverted Available Cash (in the form of cash revenues, corporate opportunities, and/or cash generated from borrowings against equity associated with rights or title the Company has acquired to real property associated with the Company Projects) from Newell and has instead used the proceeds or equity from the Company Projects to fund other development projects different from the Company Projects or to make distributions to Pannick.

25.    On or about November 19, 2004, Pannick and/or the Company received as a distribution from Mid-City a valuable retail condominium unit within the Company Projects known as Lofts 14 within the condominium building known as 1401 Church Street, Unit C1, with a street address of 1522 14th Street.  A copy of the Assignment and Assumption Agreement between Mid-City and the Company through which the Sales Center was distributed is attached hereto as Exhibit 4.  This retail unit is currently being used by the Company as its sales center ("Sales Center") for projects other than Company Projects, without compensation to Newell.  At the time of this distribution the Company valued the Sales Center at One Million Ninety Seven Thousand Three Hundred Twenty One Dollars ($1,097,321) which it received free and clear of any lien or encumbrance.  After distribution of the Sales Center to the Company, Pannick and the Company have since received Available Cash by incurring debt and a related lien in the

approximate amount of Nine Hundred Fifty Thousand Dollars ($950,000) against the Sales Center. None of this Available Cash was paid to Newell and the value of this Company Project has been impaired by financing. By arranging to receive this retail condominium unit from a Company Project in lieu of cash, borrowing money and placing a lien on the Sales Center, Pannick and the Company have diverted Available Cash to their benefit and to the detriment of Newell.

26.    By way of further illustration of Available Cash from Company Projects that has been diverted from Newell, one of the Company Projects, the Cooper Lewis Condominiums located at 14th & P Streets, "Project C", involved an arrangement whereby, upon the sale of certain ground floor retail space known as the "PNC Units" from Mid-City to a third party purchaser on September 14, 2006, something called an "assignment fee" in the amount of $2,983,630 was distributed to Metropolis. A copy of the HUD Settlement Statement from this transaction is attached as Exhibit 5. Upon completion of the PNC Space, Mid-City was able to procure a third party purchaser for $4,675,683 upon which Mid-City distributed an assignment fee in the amount of $2,983,630 for the initial sale of this unit to the Company. Of this amount, Newell was paid only Five Hundred Fifty Thousand Dollars ($550,000), and at Pannick's direction in excess of Two Million Four Hundred Thousand Dollars ($2,400,000) was diverted from the priority payments belonging to Newell – which proceeds were more than enough to have paid Newell in full.

27.    At Pannick's direction the Company also diverted Available Cash from a Company Project known as the Langston Hughes Condominium Project ("Langston Project") that was owned 50% by Pannick and 50% by the Company as equal owners of Uptown. All of the residential condominiums and retail space in the Langston Project have been sold and have

generated Available Cash in excess of Three Million One Hundred Fifty Seven Thousand Two Hundred and Eight Dollars ($3,157,208). Newell has received only $500,000 from the Available Cash associated with the Langston Project; whereas Pannick has received distributions in excess of Three Million One Hundred Fifty Seven Thousand Two Hundred and Eight Dollars ($3,157,208). Exhibit 6 hereto is a Trial Balance from the Langston Project reporting distributions to Pannick. Although Pannick was a fifty percent (50%) owner of Langston Lofts through Uptown, pursuant to Section 3.A. of the Redemption Agreement Pannick agreed "...to contribute to the Company any distributions received by him from Uptown Partners, LLC to be used by the Company as payment to Newell of the Redemption Price."

28. The Company also took a below market value contract from Mid-City, executed by Pannick on behalf of Mid-City, to acquire certain retail space in another Company Project, Lofts 14 II known as the "Federal Express Unit." Specifically, the Company acquired the Federal Express Unit from Mid-City for an allocated purchase price of Seven Hundred Ten Thousand Nine Hundred Twenty Dollars ($710,920) on January 12, 2007 and then resold it less than a year later for One Million Eight Hundred Fifty Thousand Dollars ($1,850,000) on November 9, 2007. Although the Company realized Available Cash of One Million One Hundred Thirty Nine Thousand Eighty Dollars ($1,139,080) from the sale of the Federal Express Unit, the Company paid $900,000 to Newell from the proceeds of that sale, only after, and because, Newell hired counsel to protect his rights under the Redemption Agreement.

29. The Company obtained a similar below market value contract from Mid-City, executed by Pannick on behalf of Mid-City, to acquire certain other retail space in the Lofts 14 II Company Project known as the "Garden District Unit." Specifically, the Company paid an allocated price of One Million Ninety Seven Thousand Three Hundred Twenty One Dollars

($1,097,321) to acquire the Garden District Unit from Mid-City on January 12, 2007 and resold it sixteen months later for One Million Eight Hundred Sixty Six Thousand Four Hundred Twenty Four Dollars ($1,866,424), thereby receiving Available Cash of Seven Hundred Sixty Seven Thousand Nine Hundred Eighty Eight Dollars and Seventy Two Cents ($767,988.72).  The Company has not distributed any Available Cash from the sale of the Garden District Unit to Newell.

30.     Upon information and belief, Metropolis and Pannick entered into certain arrangements and understandings with Mid-City's majority owner, U.S. Property, through which valuable consideration in the Company Projects was conveyed by Metropolis to U.S. Property in exchange for below market contracts for the PNC Units, the Federal Express Unit and the Garden District Unit through which Metropolis has received and retained in excess of $4,800,000 in Available Cash from Company Projects that should have been paid to Newell.

31.     Pursuant to, *inter alia*, the Redemption Agreements and his duties as sole manager of the Company, Pannick has had since at least 2004 and continues to have the obligation to ensure that all monies and opportunities available to the Company from Company Projects (except as set forth in paragraph 18 above) were, and in the future are, segregated from all other monies and debts of the Company, and distributed as a priority payments to Newell. Pannick and the Company have commingled monies and profits available to the Company from Company Projects with other income and obligations of the Company and/or otherwise diverted cash, other assets and loan proceeds into other projects and day-to-day expenses of the Company instead of making priority payments to Newell as required under the Redemption Agreements.

32.     Had Pannick and the Company allocated all Available Cash from the Company Projects, as required under the Redemption Agreements, the Company and Pannick would have

satisfied their obligations to Newell in compliance with the terms of the Redemption Agreements.

33.     Prior to 2007, Pannick and the Company had paid Newell only One Million Dollars ($1,000,000) toward the Amount Owed pursuant to the Redemption Agreements.

34.     On May 8, 2007, Newell hired counsel to make a formal demand upon Pannick and the Company for payment of the Amount Owed ("Demand Letter"), which totaled One Million Six Hundred Ninety Thousand Six Hundred Seventy-Four Dollars ($1,690,674). As a result of the demand and the prospect of litigation, the Company paid Newell $900,000 on November 9, 2007. A copy of Newell's May 8, 2007 Demand Letter is attached hereto and incorporated herein as Exhibit 7.

35.     In the Redemption Agreements, Pannick and the Company also agreed to keep separate books and records for each of the four Company Projects.

36.     The Parties expressly agreed that until Newell is paid the Amount Owed, Newell is to receive all reports and tax information required to be provided by the Manager to Members under the LLC Agreement and the reports given to lenders or partners in Company Projects.

37.     Prior to receipt of the Demand Letter, Pannick and the Company had failed and refused to provide Newell with the reports and tax information required to be provided by the Manager to Members under the LLC Agreement and the reports given to lenders or partners in Company Projects.

38.     Due to Pannick's and the Company's failure to provide the documents identified in paragraphs 33 and 34 above, Newell made demand for same in the Demand Letter. To date, no such reports have been provided by the Company or Pannick.

39.     On November 26, 2007, Newell filed a Complaint against the Company and Pannick.

40.     At the time of the filing of the Complaint, the only remaining real estate within the Company Projects that had not been sold to a third party were the Garden District Unit and the Sales Center.

41.     On November 27, 2007, the Company transferred the Garden District Unit to the RSP I Revocable Trust for no consideration. On its face the deed transferring the property recites: "THIS DEED EVIDENCES A TRANSFER FOR NO CONSIDERATION …." A copy of the Deed conveying the Garden District Unit to Pannick is attached hereto as Exhibit 8.

42.     Also on November 27, 2007, the Company transferred the Sales Center to the RSP II Revocable Trust for no consideration.  On its face the deed transferring the property recites: "THIS DEED EVIDENCES A TRANSFER FOR NO CONSIDERATION …." A copy of the Deed conveying the Sales Center is attached hereto as Exhibit 9.

43     As set forth above, because Pannick has now sold the Garden District Unit to a third party, the only remaining real estate within the Company Projects that is available to pay Newell is the Sales Center, which is currently subject to the January 3, 2008 Order of this Court [Doc. No. 13] requiring the Company to provide seven days written notice to Newell's counsel before selling, encumbering, or otherwise borrowing additional funds against the Sales Center.

<div align="center">

**COUNT I**
**Breach of Contract for Damages**
**(Defendants Pannick and Company)**

</div>

44.     Paragraphs 1 through 43 are incorporated herein by reference as if set forth in full in this Count I.

45.     Pursuant to the Redemption Agreements, Pannick and/or the Company were required to pay Newell the balance of the Amount Owed no later than December 31, 2005.

46.     The failure of Pannick and/or the Company to pay Newell the full Amount Owed on or by December 31, 2005 constitutes a breach of the Redemption Agreements.

47.     To date, Pannick and the Company have made only partial payment to Newell of One Million Nine Hundred Thousand Dollars ($1,900,000)[2].

48.     Sufficient Available Cash has already been generated from the Company Projects to have paid the Amount Owed to Newell in full, but Metropolis and Pannick have failed and refused to do so.

49.     Pannick has personally received Available Cash from Company Projects that should have gone to Newell as Available Cash, but Pannick diverted those funds elsewhere.

50.     The unpaid principal amount due and owing Newell remains Three Hundred Seven Thousand Nine Hundred Seventy-Two Dollars ($307,972)   Interest in the amount of Four Hundred Eighty Two Thousand Seven Hundred Two Dollars ($482,702) had also accrued through the date of the Demand Letter (May 8, 2007), and remains due and owing from Pannick and the Company to Newell.  Interest continues to accrue on the unpaid balance at the rate of ten percent (10%) per annum, compounded quarterly.  As of the date of this Amended Complaint, accrued interest exceeds Six Hundred Thousand Dollars ($600,000).

51.     The failure of Pannick and the Company to pay Newell the amount due and owing, which includes the unpaid principal amount of Three Hundred Seven Thousand Nine Hundred Seventy-Two Dollars ($307,972) plus interest, prior to the December 31, 2005 final payment date is a material breach of the Redemption Agreements.

---

[2] Newell has received a total of $1,050,000, but the extra $50,000 was payment under a separate contract unrelated to the Redemption Agreements.  This $50,000 was part of the sale of land at 15th & P Streets for the Metropole project.

52.    The diversion of assets and other corporate opportunities by Pannick and the Company away from Newell also constitutes a material breach of the Redemption Agreements.

53.    The failure of Pannick and the Company to provide Newell with the reports and tax information and the reports given to lenders or partners in Company Projects, as required under the agreements, is also a material breach of the Redemption Agreements.

**WHEREFORE**, Plaintiff Newell requests that this Court enter judgment against Pannick and the Company, jointly and severally, in the amount of Nine Hundred Twenty Thousand Dollars ($920,000) plus pre- and post-judgment interest that continues to accrue, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT II
### (In the alternative to Count I)
### Tortious Interference with Contract
### (Defendant Pannick)

54.    Paragraphs 1 through 53 are incorporated herein by reference as if set forth in full in this Count II.

55.    Pursuant to the Redemption Agreements, the Company is contractually obligated to make priority payments to Newell of all Available Cash attributable to the Company Projects without regard to expenses or obligations of the Company associated with overhead or future projects of the Company.

56.    At all times relevant hereto Pannick was aware of the Redemption Agreements and that the Company owed a contractual duty to Newell to make payment of all Available Cash from the Company Projects to Newell as a first priority payment without regard to expenses or obligations of the Company associated with overhead or future projects of the Company.

57.    Without legal justification, Pannick intentionally and improperly interfered with the Company's performance of the Redemption Agreements by inducing the Company to breach

said contract by diverting from Newell Available Cash and other corporate opportunities relating to the Company Projects to other operational expenses and obligations of the Company.

58.     Pannick intentionally induced the Company to breach its contractual obligations to Newell for the improper purpose of benefiting his ownership interests in the Company and other personal interests to the detriment of Newell.

59.     To further his own personal interests, Pannick also misrepresented to Newell the amount of Available Cash and other assets available from the Company Projects to pay Newell.

60.     As a result of Pannick's inducements to the Company and misrepresentations to Newell, Newell has suffered financial damages in that he has not been paid the Amount Owed and the Available Cash from Company Projects has been dissipated such that the Company may no longer have the financial ability to make payment to Newell from the Company Projects or otherwise.

**WHEREFORE**, Plaintiff Newell requests that this Court enter judgment against Pannick in the amount of Nine Hundred Twenty Thousand ($920,000) plus pre- and post-judgment interest, costs, attorneys' fees and such other and further relief as this Court deems just and proper.

<u>**COUNT III**</u>
**Declaratory Judgment**
**(Defendants Pannick and Company)**

61.     Paragraphs 1 through 60 are incorporated herein by reference as if set forth in full in this Count III.

62.     Pursuant to the Redemption Agreements, Pannick and/or the Company are obligated to pay Newell the Amount Owed from all Available Cash from the Company Projects.

63.     Pannick and the Company have acquired and resold and/or refinanced real estate associated with the Company Projects, and utilized the proceeds therefrom for various Company activities, thereby diverting Available Cash and other financial benefits from the Company Projects away from Newell.

**WHEREFORE**, Plaintiff Newell requests that this Court enter a declaratory judgment finding that:

(a)     such proceeds and related financial benefits constitute Available Cash under the Redemption Agreements with respect to the matters raised in this Complaint;

(b)     Pannick and the Company are in material breach of the Redemption Agreements;

(c)     the Redemption Agreements be specifically performed by Pannick and the Company;

(d)     Newell is entitled to a first priority to payment on all Available Cash and other property rights available to the Company from the date of execution of the Redemption Agreement until Newell receives payment in full of the Amount Owed plus interest; and

(e)     Newell is entitled to such other and further relief as the nature of this case requires.

## COUNT IV
**Action to Nullify Fraudulent Transfer
And for Injunctive Relief
(Defendants Pannick, Company and RSP II Trust)**

64.     Paragraphs 1 through 63 are incorporated herein by reference as if set forth in full in this Count IV.

65.     On November 26, 2007 Newell filed a Complaint seeking damages in excess of Eight Hundred Seventy Nine Thousand Nine Hundred Twenty Five Dollars ($879,925) against the Company and Pannick for, *inter alia*, their failure to distribute Available Cash realized from the Company Projects to Newell and their diversion of corporate opportunities associated with distributions of assets within the Company Projects to avoid making distributions of Available Cash to Newell pursuant to the Redemption Agreements.

66.     The Company took as a distribution ownership of the Sales Center on November 19, 2004, then possessing a fair market value of One Million Ninety Seven Thousand Three Hundred Twenty One Dollars ($1,097,321), free and clear of any liens or encumbrances.

67.     The Sales Center is now the only remaining asset within the Company Projects available to pay Newell, and was the only saleable asset available to satisfy Newell's claims as asserted in Newell's November 26, 2007 Complaint.

68.     On November 27, 2007, the day after Newell filed the Complaint against the Company, the Company transferred title to the Sales Center to the RSP II Revocable Trust for no consideration with the actual intent to hinder, delay or defraud its creditors, including and especially Newell. This unusual transfer to a related revocable trust that is directly or indirectly controlled by the Company was intended to remove the Sales Center from Newell's direct claims against the Company.

69.     The Company transferred the Sales Center to the RSP II Revocable Trust at a time when the Company and Pannick believed that they would incur liability to Newell beyond their ability to pay as Newell's claim matured.

70.     The transfer of the Sales Center to the RSP II Revocable Trust was fraudulent as to Company creditors, including Newell as a creditor of the Company with a matured claim in

excess of Eight Hundred Seventy Nine Thousand Nine Hundred Twenty Five Dollars ($879,925).

71.     The RSP II Revocable Trust, through Pannick acting as its sole trustee, had actual knowledge that the Company's intent in transferring the Sales Center to the RSP II Revocable Trust was to hinder, delay or defraud the Company's creditors, including in particular, Newell.

**WHEREFORE**, Plaintiff Newell requests that this Court enter an Order awarding the following relief:

(a)     Setting aside the transfer of the Sales Center from the Company to the RSP II Trust;

(b)     Imposing a constructive trust, lien, attachment or other provisionable remedy against the Sales Center to the extent necessary to satisfy the full amount of Newell's claim against the Company and Pannick or any of their transferees; or

(c)     Pursuant to applicable principles of equity and in accordance with the rules of civil procedure impose:

(i)     impose an injunction against further transfer, disposition, encumbering or otherwise borrowing of additional funds against the Sales Center;

(ii)     appoint a receiver to take charge of the Sales Center, to lease or sell and convey the Sales Center for fair market value and to retain the proceeds of such sale and to distribute all proceeds to Newell to the extent of his claim; or

(iii)     grant such other and further relief as the circumstances of this case may require.

**COUNT V**
**Injunctive Relief Relating to the Sales Center**
**(Defendants Pannick and Company)**

72.      Paragraphs 1 through 71 are incorporated herein by reference as if set forth in full in this Count V.

73.      Pursuant to the Redemption Agreements, Pannick and/or the Company are obligated to convey to Newell all value received by the Company for each Company Project and are further obligated to ensure that distributions attributable to the Company Projects are received and paid to Newell until he paid the Amount Owed under the Redemption Agreements.

74.      The Sales Center had been conveyed to the Company as a distribution from the Company Projects but the Company and Pannick have made no attempt to distribute proceeds from this Company Project to Newell before the Outside Distribution Date of December 31, 2005.

75.      The Company and Pannick have diverted Available Cash realized from the Sales Center by borrowing Nine Hundred Fifty Thousand Dollars ($950,000) and encumbering the Sales Center for that amount without having distributed such Available Cash available from the Sales Center to Newell.

76.      The Sales Center is the only asset within the Company Projects that remains under the ownership and/or control of Metropolis and/or Pannick and may represent the only remaining asset to which Newell is entitled to a priority payment distribution from the Company above and beyond any other financial obligation of the Company pursuant to the terms of the Redemption Agreements.

77.      The Redemption Agreements provide that Newell is to receive the value from the Sales Center as a Company Project; and the Company is not entitled to appropriate the value of

the Sales Center as this asset was pledged as security for the Company's payment of the Redemption Amount owed to Newell.

78.     The Company is in violation of the Redemption Agreements by retaining the Sales Center and using it for projects other than Company Projects, by borrowing against the Sales Center to the detriment of Newell, and by failing to sell or lease the Sales Center to pay Newell.

**WHEREFORE**, Plaintiff Newell requests that this Court issue an injunction awarding the following relief to Newell and against the Company and Pannick:

(a)     The Company and Pannick are enjoined from transferring, disposing of, encumbering or otherwise borrowing any money against the Sales Center;

(b)     A receiver be appointed to take control of the Sales Center and to sell or lease it at fair market;

(c)     The net proceeds of the sale or lease of the Sales Center be paid to Newell up to the amount due and owing to Newell; and

(d)     Newell be awarded his costs.

Respectfully submitted,


/s/ James A. Sullivan, Jr.
_____
James A. Sullivan, Jr.
(D.C. Bar No. 475145)
Miles & Stockbridge P.C.
11 North Washington Street, Suite 700
Rockville, MD 20850
Telephone (301) 762-1600
Facsimile (301) 762-0363
E-mail:  jsullivan@milesstockbridge.com


/s/ Richard A. DeTar
_____
Richard A. DeTar
(*Pro Hac Vice* Admission)
Miles & Stockbridge, P.C.
101 Bay Street
Easton, MD 21601
Telephone (410) 820-0224
Facsimile (410) 822-5450
E-mail:  rdetar@milesstockbridge.com

Attorneys for Plaintiff Stewart P. Newell

# REDEMPTION AGREEMENT

**THIS REDEMPTION AGREEMENT** (the "Agreement") is made and entered into this ___ day of September, 2003, by and among METROPOLIS DEVELOPMENT COMPANY, LLC, a District of Columbia limited liability company, (the "Company"), ROBERT SCOTT PANNICK ("Pannick"), an individual residing at *3704 Macomb St, NW Wash, x* and STEWARD B. NEWELL ("Newell"), an individual residing at *1213 Dhot Kloss Ave NW #1, Wash, DC.*

## RECITALS:

**A.**     Pannick and Newell are all of the Members of the Company. The Company was formed pursuant to Articles of Organization filed in the District of Columbia Department of Consumer and Regulatory Affairs on April 21, 1998. The affairs of the Company are governed by that certain Limited Liability Company Agreement dated October 1, 2002 (the "LLC Agreement"). All terms used in this Agreement in a capitalized fashion and not otherwise defined herein shall be deemed to have the meanings assigned to them in the LLC Agreement.

**B.**     As of the date of this Agreement, Pannick holds a fifty percent (50%) Percentage Interest in the Company and Newell holds a fifty percent (50%) Percentage Interest in the Company.

**C.**     The Company was formed by Pannick and Newell to acquire, finance, develop, lease, manage and operate real property located in the District of Columbia and in the surrounding metropolitan area. As of the date of this Agreement, the Company has interests in certain real property and related projects as set forth on Exhibit "A" (the "Company Projects").

**D.**     The Company and Newell have agreed that the Company will terminate all of Newell's right, title and interest in and to his Membership Interest and Percentage Interest in the Company on the terms and conditions set forth below.

**E.**     Prior to the execution of this Agreement, the Company distributed equally to Pannick and Newell the Company's entire right, title and interest in and to its 100% membership interest in 15th and P LLC. Thereafter, Pannick acquired Newell's membership interest in 15th and P LLC pursuant to an Assignment and Purchase Agreement entered into by and between Pannick and Newell.

**F.**     Payments of the Redemption Amount (defined below) are intended by the parties hereto to be treated as payments in exchange for Newell's interest in the Company's property as set forth in Section 736(b) of the Internal Revenue Code of 1986, as amended.

**NOW, THEREFORE,** in consideration of the Recitals set forth above, which are hereby incorporated into and made a material part of this Agreement, the mutual premises contained below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Company, Pannick and Newell agree as follows:

Word #66474467

**EXHIBIT**

1

1.     **Termination of Interest.**  Pursuant to this Agreement, the Company will terminate Newell's entire right, title and interest in and to his Membership Interest and Percentage Interest in the Company (the "Interest"). Newell agrees to execute and deliver all documents that counsel for the Company deems necessary or appropriate for the Company to terminate the Interest. The Interest shall automatically be deemed terminated at midnight on the date the Company distributes in full to Newell the Redemption Amount (defined below) in accordance with the terms and conditions of this Agreement. Upon execution of this Agreement, the Company will no longer allocate to Newell any share of the Company's Profits and Losses (as defined in the LLC Agreement). The LLC Agreement is hereby amended to allocate to Pannick one hundred percent (100%) of all future Profits and Losses.

2.     **Redemption Amount.**  Subject to Paragraph 3 below, the Company shall distribute to Newell in redemption of his Interest the sum of One Million Six Hundred Eleven Thousand Dollars ($1,611,000) (the "Redemption Amount").

3.     **Timing.**  The Company shall distribute the Redemption Amount to Newell as follows:

a.     Notwithstanding anything in the LLC Agreement to the contrary, prior to making any distributions to Pannick of Available Cash (defined below) the Company shall make priority distributions of its Available Cash to Newell until the balance of the Redemption Amount is distributed in full.  For purposes of this Agreement, the term Available Cash shall mean all cash distributions received by the Company with respect to Company Projects excluding (i) the first Five Hundred Thousand Dollars ($500,000) available from Company Projects shall be distributed to Pannick in connection with his purchase of Newell's interest in 15th and P LLC, and (ii) amounts paid to the Company in connection with its fee agreements for each of the Company Projects.  Furthermore, Pannick shall agree to contribute to the Company any distributions received by him from Uptown Partners LLC to be used by the Company as payment to Newell of the Redemption Price. Newell shall have no right to receive any distributions that arise from monies received by the Company from projects other than the Company Projects, and any Available Cash from such other projects shall be distributed, reserved or otherwise allocated by Pannick in his sole discretion as Manager; *provided, however,* that Pannick shall cause the Company to (i) keep monies received from Company Projects separate and apart from monies received from any other projects and (ii) maintain separate books and records for each Company Project and any other projects the Company may have. The Deferred Distribution shall be fully distributed not later than December 31, 2005 (the "Outside Distribution Date").  The Company will distribute the Redemption Amount from Available Cash within a reasonable time after the date the Company receives funds from transactions involving the Company Projects, but in any event no later than ten (10) business days after receipt.

b.     The Redemption Amount shall be adjusted as follows:  1)  If the values shown on any of the Project Pro Formas (as defined in Paragraph 6 below) materially increase or decrease during the period from the date of this Agreement through December

2

1, 2003, then the Redemption Amount shall be adjusted by an amount equal to fifty percent (50%) of the amount of such material increase or decrease. 2) The Redemption Amount shall be reduced by the amount of any distributions by the Company to Newell that are made during the period from the date of this Agreement through the last day Newell serves as Manager. If Pannick and Newell are unable to agree on the amount of the adjustments hereunder, such disagreement shall be settled by arbitration in accordance with the rules of the American Arbitration Association for accelerated arbitration then in effect and judgment on the award may be entered in any court having jurisdiction.

c.    The Company will endeavor to distribute the Redemption Amount to Newell in such a manner that will minimize the income tax burden to Pannick and Newell.

4.    **Interest.** The Redemption Amount shall be interest-free; *provided, however,* that if the Company has not distributed the entire Redemption Amount to Newell on or before December 31, 2004, then interest shall commence to accrue on any unpaid portion of the Redemption Amount on January 1, 2005, at the rate of ten percent (10%) per annum until the Company has distributed the entire Redemption Amount.

5.    **Management.** Newell has been serving as Manager of the Company and as "tax matters partner" since the Company's formation. Newell shall continue to serve as Manager and "tax matters partner" subject to the terms and conditions of the LLC Agreement until the Effective Date. For purposes of this Agreement, the term "Effective Date" shall mean the date which is the later to occur of (i) the start date for construction of the development of the 1400 Church Street Condominium Project, or (ii) January 2, 2004. Newell's power and authority to act on behalf of the Company, serve or hold himself out as the Manager of the Company, or otherwise legally bind the Company shall terminate automatically upon the Effective Date without further action by the Company, Newell or Pannick, at which time Pannick shall for all purposes be deemed to be the Manager and the "tax matters partner" of the Company, with sole power and authority to act on behalf of and legally bind the Company. Newell shall continue to receive salary at the rate of Ten Thousand Dollars ($10,000.00) per month as his sole compensation from the Company during the remainder of his term as Manager, and shall not pay to himself any other amounts from Company funds other than reimbursement of expenses incurred in the normal course of Company business.

6.    **Certain Matters Regarding Operation of the Company.** The business affairs of the Company are to be run for the duration of Newell's term as Manager in accordance with (i) the *pro formas* for each of the three Company Projects set forth on Exhibit "A" (the "Project Pro Formas"), copies of which are attached hereto as Exhibit "B", and (ii) the Operating Budget currently in effect, a copy of which is attached hereto as Exhibit "C". Any material changes or material deviations from any Project Pro Forma or the Operating Budget shall be actions that require unanimous approval of the Members as a Major Decision pursuant to Section 8.7 of the LLC Agreement. Newell shall cooperate with Pannick to the extent reasonably requested in

3

transferring all bank account authority (including, but not limited to, signing authority) to Pannick effective as of the date Newell ceases to be Manager. Except with respect to any material change from the Project Pro Formas or the Operating Budget as set forth in this Section 6, upon the Effective Date, Newell's right to vote with respect to any Major Decisions, as that term is defined in the LLC Agreement, shall be terminated.

7.    **Reporting; Audit Rights.**  Commencing on the date Pannick becomes Manager and continuing until such time as the Redemption Amount has been distributed in full, Pannick shall provide to Newell all reports and tax information required to be provided by the Manager to Members under the LLC Agreement. In addition, Pannick will provide Newell with copies of all reports given to lenders or partners in Company Projects. Not more often than quarterly during the period between (i) the date Newell ceases to be Manager pursuant to Paragraph 5 above and (ii) the date the Redemption Amount is distributed in full, Newell shall have the right, upon not less than ten (10) days' written notice to Pannick, to audit the books and records of the Company with respect to the Company Projects during normal business hours.

8.    **Indemnifications.**  Newell and Pannick each agree to indemnify and hold harmless the Company and one another as follows:

    a.    Newell shall indemnify, hold harmless and defend the Company and Pannick from and against any and all losses, claims, damages, liabilities, joint or several, expenses (including, without limitation, attorneys fees and other legal fees and expenses), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, that relate to the business activities of the Company as set forth in the LLC Agreement during the period he served as Manager if it is established that (i) the act or omission of Newell was material to the matter giving rise to the proceeding and either was committed in bad faith or was the result of active and deliberate dishonesty; (ii) Newell actually received an improper personal benefit in money, property or services; or (iii), in the case of any criminal proceeding, Newell had reasonable cause to believe that the act or omission was unlawful. In addition, Newell shall indemnify and hold harmless the Company and Pannick from and against damages for any action taken by him negligently or not in good faith in connection with the examination by the Internal Revenue Service of the Company's Federal partnership tax return or the determination, protest, adjustment or adjudication of any Federal or state income tax liability of any Member resulting from the Company during any tax year in which he was Manager.

    b.    Pannick shall indemnify, hold harmless and defend the Company and Newell from and against any and all losses, claims, damages, liabilities, joint or several, expenses (including, without limitation, attorneys fees and other legal fees and expenses), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, that relate to the business activities of the Company as set forth in the LLC Agreement during the period he served as Manager if it is established that (i) the act or omission of Pannick was material to the matter giving rise to the proceeding and either was committed in bad faith or was the result of active and deliberate dishonesty; (ii) Pannick

4

actually received an improper personal benefit in money, property or services; or (iii), in the case of any criminal proceeding, Pannick had reasonable cause to believe that the act or omission was unlawful. In addition, Pannick shall indemnify and hold harmless the Company and Newell from and against damages for any action taken by him negligently or not in good faith in connection with the examination by the Internal Revenue Service of the Company's Federal partnership tax return or the determination, protest, adjustment or adjudication of any Federal or state income tax liability of any Member resulting from the Company during any tax year in which he was Manager.

c.     Pannick and Newell each have provided personal non-competition agreements in connection with the Mid-City Development Company, LLC project. Each of them shall indemnify, hold harmless and defend the Company and each other from and against any and all losses, claims, damages, liabilities, joint or several, expenses (including, without limitation, attorneys fees and other legal fees and expenses), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings arising under or relating to a breach of such personal non-competition agreement by the indemnifying party. In addition, Pannick and Newell have provided U. S. Property Development Company Inc. ("USP"), a partner in Mid City, indemnification agreements covering certain guarantee agreements provided by USP to a lender under Company Projects. Pannick agrees to indemnify and hold Newell harmless with respect to Newell's obligations under the indemnification agreements in the event that (i) USP seeks to enforce its indemnification agreements against Pannick and Newell, (ii) such enforcement action arises with respect to any matter or event contemplated under USP's guarantees to the lender of a Company Project, and (iii) such matter or event occurs after the Effective Date.

9.     **Acknowledgements; Certain Waivers.** This Agreement and the Redemption Amount are the result of arms-length negotiations between the Company, Pannick and Newell and that each of them enters into this Agreement of their own free will, having had the opportunity to consult with independent legal counsel of their choosing and understands each and every one of the terms contained in this Agreement. Pannick and Newell each waives the requirements of Article XIII of the LLC Agreement with respect to Permitted Transfers, and acknowledge and agree that upon the consummation of the transaction contemplated in this Agreement, at which time Pannick will be the Company's sole Member, the Company's status as a partnership will be terminated for federal tax purposes. In addition, Pannick and Newell each waives any rights either of them may have under Article XIV of the LLC Agreement with respect to buy-sell.

10.     **No Implied Modifications.** Except as expressly modified herein, the LLC Agreement remains in full force and effect as originally signed, *provided, however,* that if any provision of this Agreement conflicts with the terms and conditions of the LCC Agreement, the provisions of this Agreement shall be controlling.

11.     **Entire Agreement.** Other than the Miscellaneous Issues described in Exhibit D hereto, there are no other oral or written agreements among the parties hereto with respect to the subject matter of this Agreement, and this Agreement constitutes the entire Agreement among

the Company, Pannick and Newell with respect to the termination of all of Newell's right, title and interest in and to the Company and the Company Projects.

12.    **Governing Law; Jurisdiction.**  This Agreement shall be governed by and interpreted in accordance with the laws of the District of Columbia, without regard to or application of the District's principles of conflict of laws.  The Company, Pannick and Newell hereby consent to the jurisdiction of the courts of the District of Columbia with respect to any dispute among them arising from or relating to this Agreement and the consummation of the transaction contemplated herein.

13.    **Counterparts; Facsimile.**  This Agreement may be executed in multiple counterparts, all of which when taken together shall be deemed to be one and the same instrument.  Facsimile signatures shall be deemed to be original signatures.

14.    **No Recordation.**  The Company, Pannick or Newell shall not attempt to record this Agreement or any memorandum or summary of this Agreement in the records of any jurisdiction in which the Company, directly or indirectly, does business.

15.    **Further Approvals.**  This Agreement shall be of no force and effect until such time as USP provides its written consent to this Agreement.

*[Signatures are on the next page.]*

6

IN WITNESS WHEREOF, the undersigned have executed and delivered this Agreement as of the date first set forth above.

METROPOLIS DEVELOPMENT COMPANY, LLC, a District of Columbia limited liability company

By: _____
Stewart P. Newell, Manager

ROBERT SCOTT PANNICK

_____

STEWART P. NEWELL

_____

7

## FIRST AMENDMENT TO REDEMPTION AGREEMENT

THIS FIRST AMENDMENT TO REDEMPTION AGREEMENT ("First Amendment") is signed and effective for all purposes as of February 7, 2004, by and among (i) METROPOLIS DEVELOPMENT COMPANY, LLC, a District of Columbia limited liability company ("Company"), (ii) ROBERT SCOTT PANNICK, an individual residing at 3204 Rowland Place, N.W., Washington, D.C. ("Pannick"), and (iii) STEWART P. NEWELL, an individual residing at 1425 Rhode Island Avenue, N.W., Washington, D.C. ("Newell").

### RECITALS:

A.    The Company, Pannick and Newell are parties to that certain Redemption Agreement dated September 29, 2003 ("Original Agreement"). A true and correct copy of the Original Agreement is attached to this Amendment as Exhibit A.

B.    Pursuant to the Original Agreement, the Company and Newell have agreed, among other things, that the Company will terminate all of Newell's right, title and interest in and to his Membership Interest and Percentage Interest in the Company on the terms and conditions set forth in the Original Agreement.

C.    The Company, Pannick and Newell desire to modify the terms of the Original Agreement as expressly set forth below in this First Amendment.

NOW, THEREFORE, in consideration of the Recitals set forth above, which hereby are incorporated into and made a material part of this First Amendment, the mutual premises contained below, and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, and intending to be legally bound, the Company, Pannick and Newell hereby agree as follows:

1.    Defined Terms. Each capitalized term used but not otherwise defined in this First Amendment shall have the meaning given to such term in the Original Agreement.

2.    Allocation of Profits and Losses. The fourth (4th) and fifth (5th) sentences of Paragraph 1 of the Original Agreement hereby are deleted, and the following is substituted in place thereof:

> "Commencing as of January 2, 2004, the Company will no longer allocate to Newell any share of the Company's Profits and Losses (as defined in the LLC Agreement). The LLC Agreement hereby is amended to allocate to Pannick one hundred percent (100%) of all Profits and Losses accruing or arising on and after January 2, 2004."



#1151594.4

EXHIBIT

2

Notwithstanding the foregoing, Newell hereby acknowledges that the Company has no obligation to make to Newell, and Newell is not entitled to receive from the Company, any distributions (whether in cash or in kind), except such distributions as are expressly required in the Original Agreement, as amended by this First Amendment, in connection with the payment of the Redemption Amount by the Company to Newell, and furthermore, Pannick agrees that Newell has no obligation to make any contributions to the Company whatsoever after the effective date hereof.

3.     **Redemption Amount.**

a.     Subsequent to the execution and delivery of the Original Agreement and prior to the date of this First Amendment, and pursuant to the provisions contained in Paragraph 3.b of the Original Agreement, the Company, Pannick and Newell agreed to adjust the Redemption Amount (as defined in the Original Agreement) by an amount equal to Five Hundred ninety Six Thousand Nine Hundred Seventy two and 00/100ths Dollars ($596,972). Accordingly, the parties hereby agree that the Redemption Amount is increased from One Million Six Hundred Eleven Thousand and 00/100ths Dollars ($1,611,000) to Two Million Two Hundred Seven Thousand Nine Hundred Seventy Two and 00/100ths Dollars ($2,207,972). From and after the date of this First Amendment, the term "Redemption Amount" shall mean Two Million Two Hundred Seven Thousand Nine Hundred Seventy Two and 00/100ths Dollars ($2,207,972), as the same may be adjusted pursuant to Section 5.h below.

b.     Paragraph 3.b of the Original Agreement hereby is deleted in its entirety, and the following is inserted in place thereof: "Intentionally Deleted."

4.     **Effective Date.**

a.     The third (3rd) sentence of Paragraph 5 of the Original Agreement hereby is deleted in its entirety, and the following is substituted in place thereof:

"For purposes of this Agreement, the term "Effective Date" shall mean February 7, 2004."

b.     The fifth (5th) sentence of Paragraph 5 of the Original Agreement hereby is deleted in its entirety.

5.     **Certain Matters Regarding USP.**

a.     The Company, Pannick and Newell acknowledge that certain of the transactions contemplated by the Original Agreement, as amended by this First Amendment, may require the consent of U.S. Property Development Corporation, a Delaware corporation ("USP"), pursuant to the terms of the Operating Agreement of Mid City Development Holding Company, LLC made as of December 24, 2002 ("Mid City Operating Agreement") by and between USP and the Company. The Company, Pannick and Newell further acknowledge that the Company and Pannick would suffer significant losses and damage, and irreparable harm, if USP were to remove the

- 2 -

Company as "Managing Member" of Mid City Development Holding Company, LLC ("Mid City") for Cause (as defined in the Mid City Operating Agreement) or otherwise, or if any of the terms of the Mid City Operating Agreement were to be breached. It is the express intent of the parties hereto that each of the Company, Pannick and Newell continue to comply in all respects with each and every covenant of and obligation imposed upon such parties pursuant to the Mid City Operating Agreement.

b.      Notwithstanding anything to the contrary contained in the Original Agreement or this First Amendment, Newell shall continue to actively participate in the management of the Company as and to the extent expressly set forth in this Section 5.b. The Company hereby retains Newell, and Newell hereby agrees to render services to the Company, as an independent consultant to provide the services described in the immediately succeeding sentence. In such capacity as consultant, Newell shall consult with Pannick and the Company regarding the management of the Company; provided, however, that Newell shall have no power or authority to bind or otherwise obligate the Company in any way without the express written consent of the Company and Pannick in each instance. In consideration for providing the consulting services required by this Section 5.b, Newell shall be entitled to compensation at the rate of $250.00 per hour. In addition, Newell shall be entitled to minimum compensation of five thousand dollars ($5000) per month (the Consulting Fee). Any hours spent by Newell providing consulting services under this Section 5 b shall first accrue toward the $5000 per month minimum compensation, and if that amount is exceeded in any particular month will be billed at the $250 per hour rate. Notwithstanding the immediately preceding sentence, Newell's right to receive the Minimum Compensation, and the Company's obligation to pay the Minimum Compensation to Newell, shall cease on and as of the date upon which USP provides its written consent to relieve Newell of the obligations set forth in this paragraph 5b and paragraphs 5 c and d below, and as required by the Mid City Operating Agreement and as contemplated by the Original Agreement (as amended by this First Amendment).

c.      Notwithstanding anything to the contrary contained in the Original Agreement or this First Amendment, Newell, in his capacity as consultant to the Company (as described in Section 5.b above), shall give the Project (as defined in the Mid City Operating Agreement) his first priority attention among all of his business activities, and shall remain primarily involved and devote as much time during all phases of the Project as may reasonably be required to ensure the success of the Project. To this end, Newell shall not take any full time employment until the earlier of i) USP agrees to delete this requirement from the Mid City Operating Agreements or ii) Project Completion as such is defined in the Mid City Operating agreements. Newell shall be permitted to enter into consulting agreements during this period as long as such agreements do not interfere with Newell's obligations herein ~~and ii) Newell discloses in such agreements his obligations herein.~~

d.      Notwithstanding anything to the contrary contained in the Original Agreement or this First Amendment, unless Mid City otherwise shall unconditionally agree in writing, Newell shall not (i) compete with the Project (as contemplated in

- 3 -

Paragraph 2(a)(iii) of the Mid City Operating Agreement) during any period prior to Project Completion (as defined in the Mid City Operating Agreement), or (ii) otherwise take on any new real estate construction or development project (as contemplated in Paragraph 2(a)(ii) of the Mid City Operating Agreement) prior to the end of the Development Phase (as defined in the Mid City Operating Agreement), either on his own behalf or on behalf of others, that materially interferes with his efforts to ensure the timely and successful completion of the Project.

e.    Notwithstanding anything to the contrary contained in the Original Agreement or this First Amendment, no Transfer (as defined in the Mid City Operating Agreement) of the Interest as contemplated by this Agreement shall occur unless and until such time as USP provides its written consent to the Transfer of the Interest as contemplated by this Agreement. In the event that USP fails for any reason to provide such consent prior to the date upon which the full amount of the Redemption Amount shall have been paid to Newell, then Newell shall continue to hold bare legal title to the Interest for the benefit of the Company.

f.    Paragraph 15 of the Original Agreement hereby is deleted in its entirety, and the following is substituted in place thereof:

> "The termination of the Interest as contemplated by this Agreement shall not occur unless and until such time as USP provides its written consent to the termination of the Interest."

g.    Each of the Company, Pannick and Newell hereby waives for itself or himself any and all right to recover damages (whether actual, consequential, punitive or otherwise) from the other parties, to the extent such damages are caused by the failure or default of such other party or parties to comply with the provisions of this Section 5.

h.    Notwithstanding anything to the contrary contained in the Original Agreement or this First Amendment (including, without limitation, Section 5.g above), in the event Newell fails to comply with any of his obligations set forth in this Section 5, or takes any act or action in breach of his obligations set forth in this Section 5 or otherwise commits a default under this Section 5, then in such event the Redemption Amount shall automatically be decreased by an amount equal to Two Hundred Thousand and 00/100ths Dollars ($200,000.00).

i.    In addition to the Consulting Services provided by Newell as outlined in paragraph 5b, above, Newell may provide additional services (the Additional Services) to the Company at the request of Pannick. Newell shall be paid for Additional Services at the rate of $250/hour.

6.    **Ratification.** As expressly amended by this First Amendment, the Original Agreement shall remain in full force and effect in accordance with its terms.

-4-

7.    **Counterparts; Facsimile Signatures.**  This First Amendment (i) may be executed in any number of counterparts which, when taken together, shall constitute a single binding instrument, and (ii) may be executed by facsimile.

[signatures on following page]

-5-

IN WITNESS WHEREOF, the Company, Pannick and Newell have executed this First Amendment in multiple originals on and as of the date first above written.

METROPOLIS DEVELOPMENT COMPANY,
LLC, a District of Columbia limited liability
company

By: _____ [SEAL]
Stewart P. Newell, Manager

_____ [SEAL]
Robert Scott Pannick

_____ [SEAL]
Stewart P. Newell

- 6 -

EXHIBIT "A"

<u>Company Projects</u>

| <u>Project Name</u> | <u>Project Description</u> | Company Interest |
|---|---|---|
| 1.  <u>Langston Lofts</u> | 80 condominium units and associated retail being developed at 1390 V Street, N.W., Washington, D.C. | 50% |
| 2.  <u>Mid-City Development I</u> | Commonly known as Parcel A, consisting of 84 condominium units at 1401 Church St., N.W., Washington, D.C., being developed by Mid-City Development Company, a subsidiary of Mid-City Development  Holding Company, LLC. | 20% |
| 3.  <u>Mid-City Development II</u> | Commonly known as Parcels B and C located at 1400 Church St., N.W. and 1401 P Street, N.W.. Washington, D.C., to be developed by a subsidiary of Mid-City Development Holding Company, LLC, to be formed by U.S. Property Holding Company. | 20% |

**Deleted:** Word 45647416.7

**Deleted:** Word 45647416.7

**Formatted:** Font: 8 pt

**Formatted:** Font: 8 pt

Word 45647416.7

**EXHIBIT**

**3**

# ASSIGNMENT AND ASSUMPTION AGREEMENT

   **THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "Agreement") dated this 19th day of November, 2004, between **MID CITY DEVELOPMENT HOLDING COMPANY, LLC**, a Delaware limited liability company (the "Assignor"), and **METROPOLIS DEVELOPMENT COMPANY, LLC**, a District of Columbia limited liability company ("Assignee").

## RECITALS

   **A.**     Assignor is a Delaware limited liability company formed by U.S. Property Development Corporation, a Delaware corporation ("USP"), and Assignee as sole members pursuant to that certain Operating Agreement of Mid City Development Holding Company, LLC dated December 24, 2002 (as amended from time to time, the "Operating Agreement"). Assignee owns an approximately 20-percent membership interest in Assignor and Assignor is taxable as a partnership for Federal income tax purposes.

   **B.**     Assignor owns certain real property located at 1401 Church Street, N.W. in the District of Columbia as more particularly described on **Exhibit A** attached hereto and made a part hereof (the "Property").

   **C.**     Currently, a historic building is located on the Property which Assignor is rehabilitating into a mixed-use residential and retail condominium project (the "Project"). In constructing the Project, Assignor has taken care to preserve the historic façade, and other protected elements included therewith, of the building so that the façade retains its historic character and intrinsic value (the "Façade"). The Project will include 83 residential condominium units and 2 commercial condominium units pursuant to that certain condominium declaration to be recorded with the District of Columbia (the "Condominium Declaration").

   **D.**     The Project is not complete as of the date of this Agreement. As of the Effective Date, the Property has certain unused density that is otherwise provided for the Property pursuant to District of Columbia Zoning Regulations and which may be increased or decreased in the future based on changes to the Zoning Regulations (the "Development Rights").

   **E.**     Notwithstanding the fact that construction of the Project is not complete, Assignor desires to distribute to Assignee and Assignee desires to take title to (i) the retail condominium unit within the Project identified as the C1 Unit (the "Sales Office Unit"), (ii) the Façade which is included within the legal description of the Sales Office Unit, and (iii) the Development Rights all as more particularly described on **Exhibit B** attached hereto and made a part hereof. The Sales Office Unit, the Façade and the Development Rights are collectively referred to herein as the "Sales Office."

   **F.**     The parties wish to set forth the terms of the distribution and assignment of the Sales Office to Assignee (the "Assignment").

EXECUTION COPY
Word 45663906.7

**EXHIBIT**

4

## ASSIGNMENT AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing Recitals, the mutual covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

**RECITALS, DEFINITIONS AND EFFECTIVE DATE.** The above Recitals are incorporated herein by reference and made a material part of this Agreement. Any capitalized terms used in this Agreement and not otherwise defined in this Agreement shall have the meaning ascribed to such terms in the Operating Agreement. Notwithstanding the date of execution of this Agreement, the parties hereto acknowledge and agree that they reached an agreement as to the terms, conditions and provisions set forth on this Agreement on October 20, 2004 and that such terms, conditions and provisions have not been altered as of October 20, 2004, therefore, the parties hereto acknowledge and agree that this Agreement shall take effect and shall be deemed effective for all intents and purposes as of October 20, 2004 (the "Effective Date").

1.    **ASSIGNMENT.** Assignor hereby distributes, assigns, transfers and conveys to Assignee, and Assignee hereby accepts, Assignor's entire right, title and interest in and to the Sales Office as more particularly described on **Exhibit B** and all of the rights, limitations and obligations associated therewith as follows:

(a)    **The Sales Office.** The Development Plan and the Development Budget provide a Fifteen Dollar ($15.00) per square foot allowance for the Sales Office Unit (the "Allowance"). It is the intent of the parties to have the Lender distribute the Allowance to Assignee no later than the date that the final draw is made under the Loan. In the event that the Lender does not agree to distribute the Allowance to Assignee, then the Base Value of the Sales Office will be reduced by the amount of the Allowance (in whatever amount the Lender has not agreed to distribute) for purposes of determining the amount of the distribution made to Assignee under Article V of the Operating Agreement. Neither party shall have any liability to the other in the event Lender, for any reason, does not agree to distribute the Allowance.

(b)    **Other Rights Acquired.** In addition to the foregoing and as part of the Sales Office, Assignor agrees to assign, transfer and deliver to Assignee and Assignee agrees to acquire:

(i)    All of Assignor's right, title and interest in and to all rights of way, tenements, hereditaments, easements, rights, interests, claims, utility capacity and appurtenances, with respect to the Sales Office;

(ii)    All of Assignor's right, title and interest in and to all adjoining streets, alleys, private roads, parking areas, curbs, sidewalks, landscaping, sewers and public ways; and

(iii)    To the extent assignable, all of Assignor's right, title and interest in and to all licenses, franchises, certificates, occupancy and use certificates, permits, authorizations, consents, variances, waivers and approvals from any federal, state, county or

EXECUTION COPY
Word 45663906.7

local government or quasi-governmental unit affecting the ownership, operation, management and maintenance of the Sales Office (collectively, the "Licenses").

3.    **VALUE AND DISTRIBUTION.**

(a)    **Value.** Assignor and Assignee hereby acknowledge and agree that the Assignment constitutes a distribution of partnership property in accordance with Section 731(a) of the Internal Revenue Code of 1986, as amended (the "Distribution"). The parties agree that the Distribution will be treated as an advance distribution of Net Proceeds from a Capital Transaction to Assignee pursuant to Article V of the Operating Agreement. The value of the Distribution to be taken into account for purposes of calculating the amount of the advance Distribution from Net Proceeds under Article V of the Operating Agreement shall be $1,097,321, based on a formula of $35.3334 per square foot of leaseable space, times 2,764 square feet, capitalized using an 8.9 percent capitalization rate (the "Base Value"). In no event shall the Base Value be less than One Million Ninety-Seven Thousand, Three Hundred and Twenty-One Dollars ($1,097,321). Assignor and Assignee shall each report the Assignment of the Sales Office on their respective Federal income tax returns as a distribution of property from a partnership in accordance with Section 731(a) of the Internal Revenue Code of 1986, as amended (the "Code"), except to the extent, if any, that the provisions of Section 751 of the Code are applicable to the distribution. The Allowance shall be distributed when, as, and to the extent the Lender distributes the same to Assignee.

(b)    **Loan Assumption.** The Property and the Project are subject to a $25,550,000 deed of trust (the "Loan") held in favor of Corus Bank, N.A. (the "Lender"). The Lender has approved the Assignment and the Distribution as set forth in this Agreement, as well as the corresponding modifications to the Operating Agreement of the Company. A copy of the Lender's consent is attached hereto as **Exhibit C**. It is the parties desire that Assignee take possession of the Sales Office free and clear of the Loan. The Lender will not release the Sales Office from the encumbrance of the deed of trust on the Property which secures repayment of the Loan (the "Deed of Trust") until such time as the entire amount of the Loan is repaid. According to the Lender, the Sales Office Unit secures Eight Hundred Eighty-Three Thousand Five Hundred Twenty Dollars ($883,520.00) of the Loan.

(c)    Assignee covenants not to take any action, or omit to take any action, as owner of the Sales Office, the result of which would cause a default under the Loan.

(d)    The obligations of Section 3 shall survive the Distribution hereunder and shall not merge with the Deed.

4.    **DUE DILIGENCE, TITLE EXCEPTIONS.**

(a)    **Due Diligence Completed.** Assignee acknowledges that Assignor is not making and has not at any time made any warranties or representations of any kind or character, express or implied, with respect to the Property or the Project, including, but not limited to, any warranties or representations as to habitability, merchantability, or fitness for a particular purpose. Assignee hereby acknowledges and agrees that Assignor distributes to Assignee, and Assignee accepts, the Sales Office "AS IS, WHERE IS, WITH ALL FAULTS." Assignee

acknowledges that it has (i) previously received, reviewed and approved the title to the Property and the Project, including the Sales Office Unit, and (ii) been given reasonable access to the Property, the Project and the Sales Office Unit for the purpose of conducting the physical tests Assignee deems necessary or desirable to satisfy itself as to the condition of the Property, including surveys and architectural, structural, engineering, geotechnical and environmental tests and inspections. Therefore, Assignee shall rely solely upon its own tests and studies and not upon any information provided by or on behalf of Assignor or its agents or employees with respect thereto. Assignee assumes the risk that adverse matters, including but not limited to, construction defects and adverse physical and environmental conditions may not have been revealed by Assignee's investigation, but Assignee nonetheless hereby elects to proceed to accept title to the Sales Office without any further due diligence period.

5.    **CLOSING.**

(a)    **Time and Place.** The consummation of the transaction contemplated hereby shall occur contemporaneously with the execution of this Agreement.

(b)    **Assignor's Obligations.** Concurrent with the execution of this Agreement, Assignor shall deliver to Assignee, the following documents, fully executed and acknowledged where appropriate and such other items as follows:

(i)    **Deed.** A special warranty deed (the "Deed"), in the form of **Exhibit D** attached hereto, conveying the Sales Office, in fee simple, to Assignee.

(ii)    The parties hereto acknowledge that the Condominium Declaration has not yet been recorded. Assignor hereby covenants and agrees that it will timely record the Condominium Declaration in a form substantially similar to the Condominium Declaration attached hereto as **Exhibit E.** In the event that Assignor fails to record the Condominium Declaration by June 30, 2005, Assignee shall have the absolute and unfettered right to record the Condominium Declaration and shall be reimbursed by Assignor for any costs, expenses or fees incurred by Assignee in connection with the recordation of the Condominium Declaration. The obligations of this Section 5(b)(ii) shall survive the Distribution hereunder and shall not merge with the Deed.

(iii)    **Possession.** Possession of the Sales Office, subject to all lawful encumbrances, whether or not of record, choate, or inchoate.

(iv)    **Additional Documents.** Such additional documents as may be reasonably necessary or as may be required by the Lender to consummate the transactions contemplated hereby.

(c)    **Assignee's Obligations.** Upon execution of this Agreement, Assignee shall deliver to Assignor such additional documents as may be reasonably necessary or as may be required by the Lender to consummate the transactions contemplated hereby.

(d)    **Closing Charges and Adjustments.** Upon execution of this Agreement, Assignor and Assignee shall each pay one half of all transfer and recordation costs for the transfer of the Sales Office to Assignee. Assignee covenants to promptly grant a conservation

4

easement with respect to the Façade and the Development Rights (the "Conservation Easement"). Assignee shall be responsible for the payment of any fees required by the grantee of the Conservation Easement and any transfer and recordation taxes associated with the recordation of the Conservation Easement. Real estate taxes, personal property taxes, assessments (general or special), utilities, rents, revenues and such other items customarily prorated in similar transactions in Washington, D.C. shall be prorated between the parties as of 11:59 p.m. on the Effective Date. All adjustments or prorations which could not be determined as of the Effective Date because of the lack of actual statements, bills or invoices for the current period or any other reason shall be made from time to time after the Effective Date; provided, however, that all such adjustments and prorations shall be made no later than ninety (90) days after the Effective Date. The obligations of this Section 5(d) shall survive the Distribution hereunder and shall not merge with the Deed.

6.    **TITLE.** Concurrent with the execution of this Agreement, Assignor shall convey to Assignee fee simple title to the Sales Office, subject to all lawful encumbrances, whether or not of record, choate, or inchoate.

7.    **COVENANTS.** Assignor covenants and agrees to maintain the appropriate level of casualty and property insurance on the base building of the Project at all times. Assignee will maintain the appropriate level of casualty and property liability insurance on the Sales Office at all times. The obligations of this Section 7 shall survive the Distribution hereunder and shall not merge with the Deed.

8.    **REMEDIES.** In the event either party to this Agreement fails to perform hereunder or breaches any of its representations or warranties or the covenants or obligations to be performed under this Agreement (the "Defaulting Party"), provided the non-Defaulting Party has provided the Defaulting Party with notice (in accordance with Section 11(a) hereof) and a ten (10) day period after receipt of such notice to cure such breach and the Defaulting Party fails to so cure, the non-Defaulting Party shall have all remedies available at law and in equity, including, without limitation, the remedy of specific performance. Notwithstanding anything to the contrary contained in this Agreement, however, if there is a breach of this Agreement by Assignor because of an act or omission of Assignee as Managing Member of Assignor, then such a breach shall be considered a breach of Assignee pursuant to this Agreement and not a breach of Assignor.

9.    **GENERAL PROVISIONS.**

(a)    **Notices.** Any and all notices, requests or other communications hereunder shall be deemed to have been duly given if in writing and transmitted (i) by facsimile with a copy sent by first class mail, postage prepaid or (ii) by hand delivery with receipt therefor, or (iii) by registered or certified mail, return receipt requested, or (iv) by Federal Express or other delivery service with guaranteed next-day delivery, with receipt therefor, as follows:

If to Assignee:    1327 14th Street, N.W.
Washington, D.C.  20005
Attention: Robert Scott Pannick
Phone No.: (202) 588-1870

Fax No.: (202) 588-1977

and a copy to:

Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C. 20006
Attention: Richard B. Nettler, Esq.
Phone No.: 202-736-2720
Fax No.: 202-223-8604

If to Assignor:

1327 14th Street, N.W.
Washington, D.C. 20005
Attention: Robert Scott Pannick
Phone No.: (202) 588-1870
Fax No.: (202) 588-1977

and a copy to:

U.S. Property Development Corporation
7777 Leesburg Pike Suite 402N
Falls Church, Virginia 22043
Attention: Richard R. Wojcik
Phone No.: 703-893-2340
Fax No.: 703-893-2327

and a copy to:

Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037
Attention: John Engel, Esq.
Phone No.: 202-663-8863
Fax No.: 202-663-8007

**(b)** **Entire Agreement**. This Agreement, including all Exhibits, contains the entire agreement between the parties concerning the subject matter hereof and supersedes all prior agreements and understandings.

**(c)** **Modification**. This Agreement may not be modified except by the written agreement of Assignor and Assignee.

**(d)** **Further Assurances**. Each party agrees to execute such documents as shall be reasonably necessary to consummate the transactions provided for in this Agreement, and to vest title to the Sales Office in Assignee.

**(e)** **Governing Law; Jurisdiction**. This Agreement shall be governed by and construed according to the laws of the District of Columbia (but without regard to the District of Columbia's conflicts of laws principles) and Assignee and Assignor hereby consent to and accept the jurisdiction of the courts of the District of Columbia.

**(f)** **Binding Effect**. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, legal representatives and permitted assigns.

6

(g)    **Severability.**  If any one or more of the provisions contained in this Agreement are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein.

(h)    **Headings.**  Any Section headings or captions contained in this Agreement shall be for convenience of reference only and shall not affect the construction or interpretation of any provision of this Agreement.

(i)    **Business Days.**  If any date upon which action is required under this Agreement shall be a Saturday, Sunday or federally recognized legal holiday in the District of Columbia, the date for such action shall be extended to the first business day after such date that is not a Saturday, Sunday or legal holiday.

(j)    **Counterparts.**  This Agreement may be executed in several counterparts, each of which shall be an original, but all of which when taken together shall constitute one and the same instrument.

(k)    **Waiver.**  Either party may, at any time, elect to waive any breach or default by the other party, provided that such waiver shall be in writing and signed by the waiving party.

(l)    **Waiver of Jury Trial.**  Assignor and Assignee waive trial by jury in any action, proceeding or counterclaim brought by either of them against the other on any matter arising out of or in any way connected with this Agreement.

(m)    **Effective Date.**  The "Effective Date" shall mean the date on which this Agreement has been executed by both Assignee and Assignor.

(n)    **UST Disclosure.**  In accordance with Section 3(g) of the District of Columbia Underground Storage Act of 1990, as amended, Assignor hereby informs Assignee that Assignor has  no knowledge of the existence or removal during Assignor's ownership of the Real Estate of any underground storage tanks as that term is defined in the referenced Act.

(o)    **D.C. Soil Disclosure.**  The characteristic of the soil of the Real Estate as described by the Soil Conversation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976, and as shown on the Soil Maps of the District of Columbia at the back of that publication is Ub Urban Land. For further information, Assignee can contact a soil testing laboratory, the District of Columbia Department of Environmental Services or the Soil Conservation Service of the United States Department of Agriculture.

*[Signatures Appear on Following Page]*

7

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first written above.

**WITNESS/ATTEST:**

**ASSIGNOR:**

**MID CITY DEVELOPMENT HOLDING COMPANY, LLC**

By: METROPOLIS DEVELOPMENT
COMPANY, LLC, Managing Member

By: _____
Robert Scott Pannick,
Managing Member

**WITNESS/ATTEST:**

**ASSIGNEE:**

**METROPOLIS DEVELOPMENT COMPANY, LLC**

By: _____
Robert Scott Pannick,
Managing Member

**SEEN AND AGREED TO:**

**U.S. PROPERTY DEVELOPMENT CORPORATION,**
a Delaware corporation

By: _____
Richard R. Wojcik, Senior Vice President

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

WITNESS/ATTEST:                         ASSIGNOR:

                                        MID CITY DEVELOPMENT HOLDING
                                        COMPANY, LLC

                                        By: METROPOLIS DEVELOPMENT
                                             COMPANY, LLC, Managing Member

_____             By:_____
                                             Robert Scott Pannick,
                                             Managing Member

WITNESS/ATTEST:                         ASSIGNEE:

                                        METROPOLIS DEVELOPMENT
                                        COMPANY, LLC

_____             By:_____
                                             Robert Scott Pannick,
                                             Managing Member

SEEN AND AGREED TO:

U.S. PROPERTY DEVELOPMENT CORPORATION,
a Delaware corporation

By:   _____
      Richard R. Wojcik, Senior Vice President

EXECUTION COPY
Word 45663906.7

8

## EXHIBIT D

[DEED]

(*attached hereto*)

EXECUTION COPY
Word 45663906.6

## SPECIAL WARRANTY DEED

   **THIS SPECIAL WARRANTY DEED,** dated as of the __ day of October, 2004 is made by and between **MID CITY DEVELOPMENT HOLDING COMPANY, LLC,** a Delaware limited liability company having a business address of 1327 14th Street, N.W., Washington, D.C. 20005 ("Grantor"), and **METROPOLIS DEVELOPMENT COMPANY, LLC,** a District of Columbia limited liability company having a business address of 1327 14th Street, N.W., Washington, D.C. 20005 ("Grantee").

   **WITNESSETH,** that for and in consideration of the mutual agreements and covenants of Grantor and Grantee as set forth in that certain Assignment and Assumption Agreement dated as of the __ day of October, 2004 (the "Assignment") entered into by and between Grantor and Grantee and other good and valuable consideration, Grantor does hereby grant and convey with special warranty unto the Grantee, in fee simple the following described land and premises, with improvements, including limited common elements, easements and appurtenances thereunto belonging, situate, lying and being in the District of Columbia, namely:

   Assessment and Taxation Lot _____ in Square _____, more particularly described as Condominium Unit C-1 in 1401 Church Street Condominium (hereinafter called the "Condominium") which was constituted and established under the District of Columbia Condominium Act of 1976, as amended, by the Condominium Declaration recorded _____, _____, as Instrument Number _____ in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Declaration"), and by the Condominium Bylaws recorded _____, _____ as Instrument Number _____ in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Bylaws"), and by the Condominium Subdivision recorded _____, _____, in Condominium Book _____ at page _____ in the Office of the Surveyor of the District of Columbia (hereinafter called the "Condominium Plat and Plans").

   **TOGETHER** with together with any present or future unused density allocated to the Condominium building and property, the Façade as more particularly described on Exhibit A attached hereto and made a part hereof, and all of the appurtenances incident to said Condominium Unit as contained in the Condominium Declaration.

   The Condominium Declaration allocates to the Condominium Unit an undivided interest (stated as a percentage) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration.

   This Deed is delivered and accepted subject to all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium Bylaws, the Condominium Subdivision, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of

Word 45664242.4

operation of the Condominium, which the Grantee(s) assume(s) and agree(s) to observe and perform as evidenced by the signature(s) on this instrument. These provisions shall be construed to run with the land and shall inure benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

This Deed is further delivered and accepted subject to the terms and conditions of that certain Assignment, which terms and conditions shall survive recordation of this Deed as between Grantor and Grantee.

**AND** the said Grantor hereby covenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

**IN WITNESS WHEREOF**, on this __ day of October, 2004, Grantor has caused this Deed to be executed by Metropolis Development Company, LLC., its Managing Member; and Grantor does hereby appoint Metropolis Development Company, LLC, acting by and through R. Scott Pannick as Managing Member, as its true and lawful attorney-in-fact and in its name and to appear before any officer authorized by law to take and certify acknowledgements of conveyances of land in the District of Columbia, and then and there to acknowledge and deliver these presents as the act and deed of the Grantor limited liability company, and Grantee has caused this Deed to be executed by R. Scott Pannick its Managing Member acting as its true and lawful attorney-in-fact and in its name and to appear before any officer authorized by law to take and certify acknowledgements of conveyances of land in the District of Columbia, and then and there to acknowledge and deliver these presents as the act and deed of the Grantee limited liability company.

<div style="text-align:center"><strong>GRANTOR:</strong></div>

WITNESS:

MID CITY DEVELOPMENT COMPANY, LLC.
a District of Columbia limited liability company

By:    Metropolis Development Company, LLC
Its:    Managing Member

_____
Name

By:    _____
        R. Scott Pannick, Managing Member

<div style="text-align:center"><strong>GRANTEE:</strong></div>

WITNESS:

METROPOLIS DEVELOPMENT COMPANY, LLC
a District of Columbia limited liability company

_____
Name

By:    _____
        R. Scott Pannick, Managing Member

Word 45664242.4

DISTRICT OF COLUMBIA          ) ss:

I, _____, a Notary Public in and for the jurisdiction aforesaid do hereby certify that R. Scott Pannick, who is personally well known to me as the person names as Managing Member of Metropolis Development Company, LLC, the Managing Member of the Grantor in the foregoing Deed bearing date on the ___ day of October, 2004, personally appeared before me, and as the Managing Member of the Managing Member of the Grantor and by virtue of the authority vested in the Manager by said instrument, acknowledged said instrument to be the act and deed of said Grantor limited liability company, and that he delivered the same as such.

WITNESS my hand and official seal this ___ day of October, 2004.

_____
Notary Public

[Notarial Seal]

My commission expires: _____

DISTRICT OF COLUMBIA          ) ss:

I, _____, a Notary Public in and for the jurisdiction aforesaid do hereby certify that R. Scott Pannick, who is personally well known to me as the person named as Managing Member of Metropolis Development Company, LLC the Grantee in the foregoing Deed bearing date on the ___ day of October, 2004, personally appeared before me, and as the Managing Member of the Grantee and by virtue of the authority vested in the Manager by said instrument, acknowledged said instrument to be the act and deed of said Grantee limited liability company, and that he delivered the same as such.

WITNESS my hand and official seal this ___ day of October, 2004.

_____
Notary Public

[Notarial Seal]

My commission expires: _____

Word 45664242.4

| A. | | B. TYPE OF LOAN: | | |
|---|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | | 1. ☐ FHA    2. ☐ FmHA    3. ☒ CONV. UNINS.    4. ☐ VA    5. ☐ CONV. INS. | | |
| **SETTLEMENT STATEMENT** | | 6. FILE NUMBER: 06440 | | 7. LOAN NUMBER: |
| | | 8. MORTGAGE INS CASE NUMBER: | | |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

10   309   (05440,PFD054054)

| D. NAME AND ADDRESS OF PURCHASER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| JONATHAN S. WEST<br>WILLIAM WEST<br>4 Park Avenue, 3rd Floor<br>New York, New York 10016 | MID-CITY DEVELOPMENT COMPANY II LLC<br>1327 14th Street, N.W.<br>Washington, D.C. 20005<br>Attn: Robert Scott Pannick | HSBC Bank USA, National Association |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT:   52-1612454 | I. SETTLEMENT DATE: |
|---|---|---|
| 1413 P Street, N.W., Commercial Units C1 & C2<br>Washington, DC | Regional Title Incorporated<br><br>PLACE OF SETTLEMENT<br><br>1620 L Street, N.W. # 900<br>Washington, DC 20036 | September 14, 2006 |

| J. SUMMARY OF PURCHASER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM PURCHASER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 1,616,370.00 | 401. Contract Sales Price | 1,616,370.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Purchaser (Line 1400) | 3,059,017.95 | 403. | |
| 104. Assignment Fee/$2,983,630.00 | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes   09/14/06 to 10/01/06 | 295.93 | 406. City/Town Taxes   09/14/06 to 10/01/06 | 295.93 |
| 107. County Taxes    to | | 407. County Taxes    to | |
| 108. Assessments    to | | 408. Assessments    to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM PURCHASER** | 4,675,683.88 | **420. GROSS AMOUNT DUE TO SELLER** | 1,616,665.93 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF PURCHASER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 100,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 2,300,000.00 | 502. Settlement Charges to Seller (Line 1400) | 17,860.07 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. (Deposit disb. as proceeds) | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes    to | | 510. City/Town Taxes    to | |
| 211. County Taxes    to | | 511. County Taxes    to | |
| 212. Assessments    to | | 512. Assessments    to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. Legal Fee Reimbursement Payment | 27,500.00 | 515. | |
| 216. Improvement Allowance | 102,750.00 | 516. | |
| 217. Rent Credit 9/14/06-10/04/06 | 15,370.32 | 517. Seller's Legal Fees to Greenstein DeLorme & Luchs | 5,000.00 |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR PURCHASER** | 2,545,620.32 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 22,860.07 |
| **300. CASH AT SETTLEMENT FROM/TO PURCHASER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Purchaser (Line 120) | 4,675,683.88 | 601. Gross Amount Due To Seller (Line 420) | 1,616,665.93 |
| 302. Less Amount Paid By/For Purchaser (Line 220) | 2,545,620.32 | 602. Less Reductions Due Seller (Line 520) | 22,860.07 |
| **303. CASH ( X FROM) (  TO) PURCHASER** | 2,130,063.68 | **603. CASH ( X TO) (  FROM) SELLER** | 1,593,805.85 |

EXHIBIT

5

Case 1:07-cv-02129-RCL    Document 17-2    Filed 04/09/2008    Page 30 of 43

L. SETTLEMENT CHARGES

| | | PAID FROM PURCHASER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price $ @ % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee % to | | | |
| 802. Loan Discount % to | | | |
| 803. Lender's Legal Fees to Holland & Knight LLP | | | |
| 804. Borrower's Local Counsel Fees to Golfin & Murphy LLP | 8,000.00 | |
| 805. Lender's Inspection Fee to | 3,130.00 | |
| 806. Mortgage Ins. App. Fee to | | | |
| 807. Assumption Fee to | | | |
| 808. Document Prep Fee to | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 09/14/06 to 10/01/06 @ $ 387.166670/day ( 17 days 6.0600%) | | | |
| 902. Mortgage Insurance Premium for months to | 6,581.83 | |
| 903. Hazard Insurance Premium for 1.0 years to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance months @ $ per month | | | |
| 1002. Mortgage Insurance months @ $ per month | | | |
| 1003. City/Town Taxes months @ $ per month | | | |
| 1004. County taxes months @ $ per month | | | |
| 1005. Assessments months @ $ per month | | | |
| 1006. months @ $ per month | | | |
| 1007. months @ $ per month | | | |
| 1008. Aggregate Adjustment months @ $ per month | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee to Regional Title Incorporated | | | |
| 1102. Abstract or Title Search to J & M Abstracts, Inc. | 500.00 | |
| 1103. Title Examination to | | | |
| 1104. Title Insurance Binder to | | | |
| 1105. Document Preparation to | | | |
| 1106. Notary Fees to | | | |
| 1107. Attorney's Fees to | | | |
| (includes above item numbers: | | | |
| 1108. Title Insurance to First American Title Insurance Company ) | 4,140.00 | |
| (includes above item numbers: ) | | | |
| 1109. Lender's Coverage $ 2,300,000.00 | | | |
| 1110. Owner's Coverage $ 1,616,370.00 | | | |
| 1111. Messenger/FedEx/Copy/Fax Fees to Regional Title Incorporated | | | |
| 1112. Release Preparation Fee Regional Title Incorporated | 80.00 | 80.00 |
| 1113. @ 50.00 each | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $ ; Mortgage $ ; Releases $ Recording Fees | 500.00 | |
| 1202. City/County Tax/Stamps: Deed ; Mortgage | | | |
| 1203. State Tax/Stamps: Revenue Stamps ; Mortgage | | | |
| 1204. Recordation Tax (1.1%) to DC Treasurer | | | |
| 1205. Transfer Tax (1.1%) to DC Treasurer | 50,600.00 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | 17,780.07 |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | | |
| 1303. Condominium Dues to The Cooper Lewis Condominium | | | |
| 1304. Working Capital Contribution to The Cooper Lewis Condominiums From 9/14/06-10/31/06 | 815.31 | |
| 1305. Assignment Fee to Metropolis Development Company | 1,040.81 | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** SEE ADDENDUM | 2,963,830.00 | |
| | 3,059,017.95 | 17,860.07 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

Certified to be a true copy

Regional Title Incorporated
Settlement Agent

4:35 PM
03/16/07
Accrual Basis

**Uptown Partners LLC**
**Trial Balance**
As of December 31, 2006

| | Dec 31, 06 | |
| --- | --- | --- |
| | Debit | Credit |
| Accrued DC franchise taxes | 0.00 | |
| City R.E. Tax liability | 0.00 | |
| Purchaser Deposits | 0.00 | |
| Retail Security Deposit | 0.00 | |
| CIG Loan | 0.00 | |
| Loan from MDC | 0.00 | |
| Due to S. P. Newell | 0.00 | |
| Billings in Excess of Costs | 0.00 | |
| Deferred Revenue | 0.00 | |
| Note Payable to Corus | 0.00 | |
| Note Payable to Corus:Note A | 0.00 | |
| Note Payable to Corus:Note B | 0.00 | |
| Distribution to MDC | 160,792.00 | |
| Distributions to Merrick Malone | 0.00 | |
| Distribution to Scott Pannick | 3,157,208.00 | |
| Member's Contribution | | 129,899.01 |
| 3900 · Retained Earnings | | 4,387,771.20 |
| Rev - L/T Construct contracts | | 759,863.00 |
| Interest Income | | 3,167.03 |
| Penalties | 750.00 | |
| Bad Debts | 32,463.72 | |
| Professional Fees | 1,300.00 | |
| Charitable Contribution | 0.00 | |
| Cost Constr - Long Term cntrct | 776,629.00 | |
| Contract Costs | | 10,947.50 |
| Marketing Expense:Marketing & Advertising | 5,682.20 | |
| Bank Fees | 141.15 | |
| Political Contributions | 1,500.00 | |
| Suspense | 0.00 | |
| Reimbursable Expense | 19,779.50 | |
| **TOTAL** | **26,838,212.74** | **26,838,212.74** |

EXHIBIT

6

Page 3 of 3

Metro-00097

# MILES & STOCKBRIDGE P.C.

Richard A. DeFan
rdefan@milesstockbridge.com
(410) 820-0224

May 8, 2007

## *VIA FACSIMILE AND FEDERAL EXPRESS*

Metropolis Development Company, LLC
Attention: Robert Scott Pannick, Managing Member
1327 14th Street N.W., Suite 300
Washington, DC 20005

Robert Scott Pannick
3204 Rowland Place N.W.
Washington, DC 20005

Re:    <u>Demand for Payment and Financial Records Pursuant to Redemption Agreement</u>

Dear Mr. Pannick:

Please be advised that we represent Stewart P. Newell ("Mr. Newell") in connection with the above-referenced Redemption Agreement and amendments thereto. As you know, both Metropolis Development Company, LLC (the "Company") and you are obligated to Mr. Newell under that Agreement.

Pursuant to Section 3.A. of the Agreement, payment in full was to be made to Mr. Newell "not later than December 31, 2005" (the "Outside Distribution Date"). The total amount originally due to Mr. Newell pursuant to the Redemption Agreement, as amended, was Two Million Two Hundred Seven Thousand Nine Hundred Seventy Two Dollars ($2,207,972). One Million Dollars ($1,000,000) has been paid to Mr. Newell as of this date. Consequently, a principal balance of One Million Two Hundred Seven Thousand Nine Hundred Seventy Two Dollars ($1,207,972) remains due and owing. In addition, pursuant to Section 4 of the Agreement interest accrues at the rate of ten percent (10%) per annum until Mr. Newell is paid in full, with interest compounding quarterly on the outstanding balance, starting on January 1, 2005. Accordingly, interest has accrued through May 8, 2007 in the amount of $482,702, leaving a total balance due and owing as of May 8, 2007 of One Million Six Hundred Ninety Thousand Six Hundred Seventy Four Dollars ($1,690,674) .

Please also be advised that pursuant to Section 3.A. of the Agreement you are required to cause the Company to: (i) keep monies received from the "Company Projects" separate and apart from monies received from other projects and (ii) maintain separate books for each Company Project and all other projects the Company may have. In addition, until such time as Mr. Newell is paid in full you are obligated to provide him with all reports and tax information required to be

**EXHIBIT**

**7**

Metropolis Development Company LLC
Robert Scott Pannick
5/8/2007
Page 2 of 2

M I L E S & S T O C K B R I D G E P.C.

and all other projects the Company may have. In addition, until such time as Mr. Newell is paid in full you are obligated to provide him with all reports and tax information required to be provided by the Manager to Members under the LLC Agreement and to provide him with copies of all reports provided to lenders or partners in Company Projects. To date, both the Company and you have failed and refused to provide this information.

We are well beyond the Outside Distribution Date; accordingly, demand is hereby made for payment in full within ten (10) days from the date of this letter. I note that Mr. Newell's prior efforts to communicate with you on this matter, directly and through agents, have been unsuccessful. Mr. Newell regrets that it has become necessary to retain my services to assert his rights, but at this point it is essential that you devote your full attention to this matter.

Sincerely,

Richard A. DeTar

RAD/aje
cc:     Gladstone Consulting, Inc.

Doc# 2007147890

THIS DEED EVIDENCES A TRANSFER FOR NO CONSIDERATION TO THE TRUSTEE OF A REVOCABLE TRUST WHERE THE TRANSFEROR IS THE BENEFICIARY OF THE TRUST AND IS THEREFORE EXEMPT FROM REAL PROPERTY TRANSFER AND RECORDATION TAXES PURSUANT TO DISTRICT OF COLUMBIA CODE SECTIONS 47-902 (12) AND 42-1102(17).

**WHEN RECORDED MAIL TO:**
Greenstein DeLorme & Luchs, P.C.
1620 L Street, N.W., Suite 900
Washington, D.C. 20036
Attn: Jeffrey H. Gelman, Esq.

## THIS DEED

Made this **27**ᵗʰ day of November, 2007, by and between Metropolis Development Company, LLC (the "Grantor"), and Robert Scott Pannick, as Trustee of the RSP I Revocable Trust (the "Grantee");

WITNESSETH, that for no consideration, Grantor does hereby grant and convey unto the Grantee, in fee simple, all of Grantor's right, title and interest to the following described land and premises, with *improvements, including limited common elements, easements and appurtenances* thereunto belonging, situate, lying and being in the District of Columbia, namely:

> *Lot 2347 (being part of Lot 105) in Square 209, more particularly described as Condominium Unit C-1 in 1400 Church Street Condominium (hereinafter called the "Condominium") which was constituted and established under the District of Columbia Condominium Act of 1976, as amended, by the Condominium Declaration recorded March 31, 2006, as Instrument Number 2006042259 in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Declaration"), and by the Condominium Bylaws recorded March 31, 2006 as Instrument Number 2006042260 in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Bylaws"), and by the Condominium Plat and Plans recorded March 31, 2006, in Condominium Plat Book 57 at page 31 in the Office of the Surveyor of the District of Columbia (hereinafter called the "Condominium Plat and Plans").*

TOGETHER with all of the *appurtenances incident to said Condominium Unit as* contained in the Condominium Declaration.

The Condominium Declaration *allocates to the Condominium Unit an undivided interest* (stated as a percentage) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration.

This Deed is delivered and accepted subject to all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium

mm



EXHIBIT

8

Bylaws, the Condominium Plat and Plans, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of operation of the Condominium, which the Grantee(s) assume(s) and agree(s) to observe and perform. This provision shall be construed to run with the land and shall inure to the benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

The conveyance is a transfer for no consideration to the trustee of a revocable trust where the Grantor is the beneficiary of the trust.

AND the said Grantor hereby covenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

IN WITNESS WHEREOF, on this 27th day of November, 2007, Metropolis Development Company, LLC has caused this Deed to be executed by Robert Scott Pannick, its Manager, as the act and deed of Metropolis Development Company, LLC.

Metropolis Development Company, LLC
a District of Columbia limited liability company

By: _____
    Robert Scott Pannick
    Manager

DISTRICT OF COLUMBIA ) ss:

I, Julian H. Nam_____, a Notary Public in and for the jurisdiction aforesaid do hereby certify that Robert Scott Pannick, who is personally well known to me as the person named as Manager of Metropolis Development Company, LLC, the Grantor in the foregoing Deed bearing date on the $27$ day of November 2007, personally appeared before me in the jurisdiction aforesaid and acknowledged said instrument to be the act and deed of Metropolis Development Company, LLC.

WITNESS my hand and official seal this 27th day of November, 2007.

_____
Notary Public

[Notarial Seal]

Julian H. Nam
Notary Public, District of Columbia
My Commission Expires 07-14-2010

My commission expires: _____

324770

Doc# 2007147090
Filed & Recorded
11/27/2007 3:51PM
LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS

| | | |
|---|---|---|
| RECORDING | $ | 20.00 |
| SURCHARGE | $ | 6.50 |
| Total: | $ | 26.50 |

**Record and Return to:**

Yvette Moore, Legal Assistant
c/o Greenstein DeLorme & Luchs, P.C.
1620 L Street, NW, Ste 900
Washington, DC 20036

Doc# 2007147891

THIS DEED EVIDENCES A TRANSFER FOR NO CONSIDERATION TO THE TRUSTEE OF A REVOCABLE TRUST WHERE THE TRANSFEROR IS THE BENEFICIARY OF THE TRUST AND IS THEREFORE EXEMPT FROM REAL PROPERTY TRANSFER AND RECORDATION TAXES PURSUANT TO DISTRICT OF COLUMBIA CODE SECTIONS 47-902 (12) AND 42-1102(17).

**WHEN RECORDED MAIL TO:**
Greenstein DeLorme & Luchs, P.C.
1620 L Street, N.W., Suite 900
Washington, D.C. 20036
Attn: Jeffrey H. Gelman, Esq.



### THIS DEED

Made this 27th day of November, 2007, by and between Metropolis Development Company, LLC (the "Grantor"), and Robert Scott Pannick, as Trustee of the RSP II Revocable Trust (the "Grantee");

WITNESSETH, that for no consideration, Grantor does hereby grant and convey unto the Grantee, in fee simple, all of Grantor's right, title and interest to the following described land and premises, with improvements, including limited common elements, easements and appurtenances thereunto belonging, situate, lying and being in the District of Columbia, namely:

> Lot 2231 (being part of Lot 98) in Square 209, more particularly described as Condominium Unit C-1 in 1401 Church Street Condominium (hereinafter called the "Condominium") which was constituted and established under the District of Columbia Condominium Act of 1976, as amended, by the Condominium Declaration recorded December 9, 2004, as Instrument Number 2004167843 in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Declaration"), and by the Condominium Bylaws recorded December 9, 2004 as Instrument Number 2004167844in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Bylaws"), and by the Condominium Plat and Plans recorded December 16, 2004, in Condominium Plat Book 51 at page 28 in the Office of the Surveyor of the District of Columbia (hereinafter called the "Condominium Plat and Plans").

TOGETHER with all of the appurtenances incident to said Condominium Unit as contained in the Condominium Declaration.

The Condominium Declaration allocates to the Condominium Unit an undivided interest (stated as a percentage) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration.

This Deed is delivered and accepted subject to all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium

*IL*
*ma,*

EXHIBIT

9

Bylaws, the Condominium Plat and Plans, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of operation of the Condominium, which the Grantee(s) assume(s) and agree(s) to observe and perform. This provision shall be construed to run with the land and shall inure to the benefit of and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

The conveyance is a transfer for no consideration to the trustee of a revocable trust where the Grantor is the beneficiary of the trust.

AND the said Grantor hereby covenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

IN WITNESS WHEREOF, on this 27ᵗʰ day of November, 2007, Metropolis Development Company, LLC has caused this Deed to be executed by Robert Scott Pannick, its Manager, as the act and deed of Metropolis Development Company, LLC.

Metropolis Development Company, LLC
a District of Columbia limited liability company

By: _____
Robert Scott Pannick
Manager

DISTRICT OF COLUMBIA ) ss:

I, _Julien H Nam_____, a Notary Public in and for the jurisdiction aforesaid do hereby certify that Robert Scott Pannick, who is personally well known to me as the person named as Manager of Metropolis Development Company, LLC, the Grantor in the foregoing Deed bearing date on the 27ᵗʰ day of November 2007, personally appeared before me in the jurisdiction aforesaid and acknowledged said instrument to be the act and deed of Metropolis Development Company, LLC.

WITNESS my hand and official seal this 27ᵗʰ day of November, 2007.

_____
Notary Public

[Notarial Seal]

Julien H. Nam
Notary Public, District of Columbia
My commission expires: My Commission Expires 07-14-2013

324786

```
Doc# 2007147891
Filed & Recorded
11/27/2007    3:51PM
LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
RECORDING          $        20.00
SURCHARGE          $         6.50
Total:             $        26.50
```

**Record and Return to:**
Yvette Moore, Legal Assistant
c/o Greenstein DeLorme & Luchs, P.C.
1620 L Street, NW, Ste 900
Washington, DC 20036

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STEWART P. NEWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-2129 (RCL) |
| | ) | |
| METROPOLIS DEVELOPMENT | ) | |
| COMPANY, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER</u>

Upon consideration of Plaintiff's Motion for Leave to File Amended Complaint, and any opposition thereto, and for good cause having been shown, it is on this _____ day of_____, 2008, by the United States District Court for the District of Columbia

ORDERED, that Plaintiff's Motion for Leave to File Amended Complaint be and the same is hereby GRANTED; and it is further

ORDERED, that the original Amended Complaint for Damages, Declaratory Judgment, and Injunctive Relief submitted with the Plaintiff's Motion for Leave to File Amended Complaint shall be deemed to have been filed and served by mail as of the date of this Order.

SO ORDERED.

_____
    Date

_____
ROYCE C. LAMBERTH
United States District Judge